IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BIMBO BAKERIES USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> LELAND SYCAMORE, TYLER SYCAMORE, WILD GRAINS BAKERY, LLC, and UNITED STATES BAKERY, INC., <br><br> Defendants. | **SEALED MEMORANDUM DECISION AND ORDER ON MOTIONS TO EXCLUDE EXPERT WITNESSES** <br><br> Case No. 2:13-cv-00749 <br><br> District Judge David Nuffer |

The parties have many motions to exclude expert testimony. Defendant United States Bakery (U.S. Bakery) moves to exclude testimony of Plaintiff Bimbo Bakeries, Inc. (Bimbo) expert, Dr. Glenn L. Christensen[1], Richard S. Hoffman[2] and Russell Carl Hoseney, Ph.D.[3] Bimbo moves to exclude testimony of Himanshu Mishra, Ph.D.,[4] and Larry Soter.[5]

This order will address the motions in the sequence they were filed.

---

[1] Motion to Exclude Expert Glenn L. Christensen, docket no. 104, filed May 16, 2016.

[2] Motion to Exclude Expert Richard S. Hoffman, docket no. 127, filed under seal May 17, 2016.

[3] Motion to Exclude Expert Russell C. Hoseney, docket no. 129, filed under seal May 17, 2016.

[4] Motion to Exclude Expert Himanshu Mishra, docket no. 105, filed May 16, 2016.

[5] Motion to Exclude Expert Larry Soter, docket no. 106, filed May 16, 2016.

# Contents

BACKGROUND FACTS ............................................................................................ 2
DISCUSSION .......................................................................................................... 3
    LEGAL STANDARD FOR ADMISSIBILITY OF EXPERT TESTIMONY ........... 3
Expert Dr. Glenn L. Christensen .......................................................................... 4
    (A)  Dr. Christensen is Qualified to Testify to Quantitative Surveys. ................. 5
    (B) Dr. Christensen's Testimony is Reliable .................................................... 6
        (1) The Internet is a Proper Method for Conducting Surveys. ..................... 7
        (2) The Surveys are a Representative Enough Sample for the Jury to Weigh the
            Credibility. ....................................................................................... 8
        (3) Dr. Christensen's Survey Questions Do Not Make the Results Unreliable. ..... 9
    Conclusion ...................................................................................................... 12
Expert Himanshu Mishra ..................................................................................... 12
    Conclusion ...................................................................................................... 14
Expert Larry Soter ............................................................................................... 14
    Conclusion ...................................................................................................... 16
Expert Richard S. Hoffman ................................................................................. 16
    (A) Mr. Hoffman's Unjust Enrichment Testimony Is Not Unreliable. ............. 17
        (1) Mr. Hoffman's Product Return Rate Was Not Unreliable. ..................... 18
        (2) Mr. Hoffman's Variable Costs Are Not Unreliable. ............................... 19
    (B) Hoffman's Lost Profit Analysis Is Not Unreliable ...................................... 20
    (C) Mr. Hoffman's Testimony Has Adequate Causation .................................. 21
    (D) Dr. Hoffman's Testimony as to Geography is Excluded in Part ................. 22
    (E) Corrective Advertising Expenses Are Relevant to the Issue of Damages. ......... 23
    (F) Dr. Christensen's Testimony is Admissible. ............................................... 23
    Conclusion ...................................................................................................... 24
Expert Russell Carl Hoseney ............................................................................... 24
    (A) Dr. Hoseney is Qualified. ......................................................................... 24
    (B) Dr. Hoseney's Testimony is Reliable ........................................................ 25
        (1) Dr. Hoseney's Testimony Is Not Inconsistent. ...................................... 25
        (2) Dr. Hoseney's Testimony Is Not Solely Based On Secondhand Knowledge. 25
        (3) Dr. Hoseney Is Not Testifying to Common Knowledge and His Testimony Is
            Not Unreliable .................................................................................. 26
        (4) Dr. Hoseney Is Testifying To A Matter On Which He Is Not An Expert ....... 27
    Conclusion ...................................................................................................... 27
ORDER ................................................................................................................ 27

## BACKGROUND FACTS

This matter centers on Bimbo's allegations that U.S. Bakery, Sycamore, and Wild Grains

misappropriated its trade secret for making Grandma Sycamore's Home-Maid bread, and

infringed on its trade dress related to the packaging of its bread. The motions concern the

qualifications and reliability of the testimony given by Bimbo's and U.S. Bakery's experts.

## DISCUSSION

## LEGAL STANDARD FOR ADMISSIBILITY OF EXPERT TESTIMONY

Fed. R. Evid. 702 addresses the standard for the admissibility of expert testimony.

A witness who is qualified as an expert by knowledge, skill, experience, training,
or education may testify in the form of an opinion or otherwise if: (a) the expert's
scientific, technical, or other specialized knowledge will help the trier of fact to
understand the evidence or to determine a fact in issue; (b) the testimony is based
on sufficient facts or data; (c) the testimony is the product of reliable principles
and methods; and (d) the expert has reliably applied the principles and methods to
the facts of the case.[6]

"Under the Rules the trial judge must ensure that any and all scientific testimony or

evidence admitted is not only relevant, but reliable."[7] The inquiry of scientific reliability is a

flexible and focuses on principles and methodology.[8] The Supreme Court has offered several

non-exhaustive factors that a court may rely on for determining reliability such as, whether the

testimony can be tested, has been peer reviewed, has a known or potential rate of error, and has

attracted acceptance in the relevant scientific community.[9]

District courts are tasked with the responsibility of serving as the gatekeepers of expert

evidence, and must therefore decide which experts may testify and present evidence before the

jury.[10] Courts are given "broad latitude" in deciding "how to determine reliability" and in

making the "ultimate reliability determination."[11] The Federal Rules of Evidence, however,

---

[6] Fed. R. Evid. 702

[7] *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993).

[8] *See Id.* at 595

[9] *See Id.*

[10] *See Daubert,* 509 U.S. at 579.

[11] *Kuhmo,* 526 U.S. at 142, (citing General Electric Co. v. Joiner, 522 U.S. 135 (1997)).

generally favor the admissibility of expert testimony.[12] Excluding expert testimony is the exception rather than the rule[13], and often times the appropriate means of attacking shaky but admissible evidence is through vigorous cross-examination, and the presentation of contrary evidence.[14] "[T]he Federal Rules of Evidence favor the admissibility of expert testimony, and [courts'] role as gatekeeper is not intended to serve as a replacement for the adversary system."[15]

The inquiry into whether an expert's testimony is reliable is not whether the expert has a general expertise in the relevant field, but whether the expert has sufficient specialized knowledge to assist jurors in deciding the particular issues before the court.[16]

Expert testimony is subject to Federal Rule of Evidence 403. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[17]

## EXPERT DR. GLENN L. CHRISTENSEN[18]

U.S. Bakery seeks to exclude the expert testimony of Dr. Glenn L. Christensen because he is not qualified to testify to quantitative surveys, and because his surveys are not reliable under Federal Rule of Evidence 702. Bimbo retained Dr. Christensen to give an expert report and testimony based on quantitative surveys analyzing consumers' reactions as support for Bimbo's claim of trade dress infringement and false advertising. Dr. Christensen has prepared three surveys that are the subject of his testimony.

---

[12] *See Daubert,* 509 U.S. at 588.

[13] *See* Fed. R. Evid. 702 Advisory Notes

[14] *See Daubert,* 509 U.S. at 596.

[15] *THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 230 (S.D.N.Y. 2010).

[16] *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999).

[17] Fed. R. Evid. 403

[18] Motion to Exclude Expert Glenn L. Christensen, docket no 104, filed May 16, 2016.

In determining whether expert testimony is admissible the first step is to determine whether the expert is qualified, and then if the expert is qualified determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology.[19]

This order will first address the reasons Dr. Christensen is qualified to testify to quantitative surveys, and then will address the reasons why the surveys Dr. Christensen conducted are reliable enough for the jury to weigh the evidence.

### (A)  Dr. Christensen is Qualified to Testify to Quantitative Surveys.

U.S. Bakery argues that Dr. Christensen is unfit to testify to quantitative research studies because his training and experience is in qualitative research. U.S. Bakery's rebuttal expert, Dr. Mishra, put Dr. Christensen in "the bottom 2 percentile" of quantitative surveyors based on the methodological errors across the three surveys he reported.[20]

The evidence supports the determination that Dr. Christensen is qualified to testify quantitative surveys. Dr. Christensen is an Associate Professor of Marketing at Brigham Young University.[21] He holds a Ph.D from Pennsylvania State University in the field of consumer psychology and marketing, a MBA with emphasis in marking management and research from Brigham Young University, and a Bachelor's degree in communications from Brigham Young University.[22] Dr. Christensen has authored four peer reviewed papers concerning trademarks and the likelihood of consumer confusion.[23]

---

[19] *U.S. v. Nacchio*, 555 F.3d 1234, 1241(10th Cir. 2009).

[20] Potential errors in Dr. Christensen's surveys are an issue of reliability, not one of whether he is qualified. The analysis will look at the surveys he conducted to determine whether they are reliable, but to determine whether he is qualified will look to his knowledge, skill, experience, training, and education.

[21] Declaration of Glenn. L. Christensen ¶ 3, underline docket no. 104-1, filed May 16, 2016.

[22] *Id.* at ¶¶ 4-13.

[23] "Sophisticated by Confused: Brand Extension and Motivation as Factors Increasing the Likelihood of Confusion," (2011), with Eric DeRosia and Thomas R. Lee, *Psychology and Marketing*, 28 (5), 457-478; "An Empirical and Consumer Psychology Analysis of Trademark Distinctiveness," (2009), with Sterling A. Bone and

Dr. Christensen has designed Lanham Act surveys and offered opinions concerning those surveys on numerous occasions since 2005.[24] Dr. Christensen possesses training and experience in both qualitative and quantitative survey research, and his prior Lanham Act surveys have involved the type of quantitative survey research he performed in this case.[25]

Based on Dr. Christensen's education, experience, and qualifications he is sufficiently credentialed to be considered an expert in the area of quantitative surveying. The next step is to review whether Dr. Christensen used appropriate methodological standards in his surveys as applied to this case.

### (B) Dr. Christensen's Testimony is Reliable.

Dr. Christensen conducted his surveys over the Internet using pre-screened panels of respondents provided by a third-party vendor. He used digital images of the parties' respective products as the basis for his questions.

U.S. Bakery argues that Dr. Christensen's survey design departs significantly from the marketplace conditions under which most consumers make purchasing decisions about bread. U.S. Bakery's expert, Himanshu Mishra, specifically attacks the surveys' credibility on three bases: (1) The internet is not a proper method for conducting a survey about consumers' decision making process when buying bread because consumers rarely buy bread online; (2) The surveys are not a representative sample of the population; and (3) The questions asked improperly deviate from the patterns approved by the leading cases and are designed to prompt bias responses. Each of the objections to the reliability of the surveys is discussed below.

---

Jerome D. Williams, *Journal of Marcomarketing*, 30 (4), 419; "Trademarks, Consumer Psychology , and the 'Sophisticated' Consumer," (2008), with Thomas R. Lee and Eric D. DeRosia, *Emory Law Review*, 57 (3), 575- 650; "Sophistication, Bridging the Gap, and the Likelihood of Confusion: An Empirical and Theoretical Analysis," (2008), with Thomas R. lee and Eric D. DeRosia, *The Trademark Reporter*, 98 (4), 913-949.
[24] *See* Expert Report of Glenn L. Christensen, docket no. 136-14, filed May 23, 2016.
[25] *See* Declaration of Glenn Christensen at ¶12, docket no. 104-1, filed May 16, 2016.

### (1) The Internet is a Proper Method for Conducting Surveys.

U.S. Bakery argues that the consumer surveys do not effectively recreate the consumer experience because the bread buying surveys were conducted online. Because consumers rarely buy bread online, U.S. Bakery contends that asking consumers to simulate a buying decision based on online images does not effectively re-create the buying experience. U.S. Bakeries further argues that the Internet may not be a reliable surveying form because it screens out responses from those who buy bread, but who do not use the internet.

U.S. Bakery is unable to cite authority holding or to explain why Internet surveys are unreliable. It is likely true consumers typically do not buy bread online and conducting an online survey may not be the best way to most accurately simulate the bread buying experience. U.S. Bakery, however, has come forth with no evidence other than speculation that the results may be different if the surveys were conducted in person. There is also no evidence in the record showing a substantial disparity in the number of people who have internet access and complete surveys online, and those who buy bread but do not use the internet.

Conducting surveys online for the purposes of a trade dress claim in this case does not render the surveying method unreliable. As here, where the overall look of the product is at issue, online surveys can be relevant to issues involving the look of the product.[26] Arguments as to the validity of the survey and whether conducting the survey online is the most effective means can be argued to the jury. (And if U.S. Bakeries had evidence supporting the argument, it would have been admissible.) To prove that a survey technique is unreliable the party must do more than speculate that there may have been a better way of completing the survey. The surveys will therefore not be excluded because it was not unreliable to conduct them online.

---

[26] If the central issue at the heart of the case were the smell or touch of the product then it may be proper to exclude an online survey. In a case where the look of the product is at issue, the party seeking to exclude must show what makes the method of online surveying unreliable.

7

### (2) The Surveys are a Representative Enough Sample for the Jury to Weigh the Credibility.

U.S. Bakery argues that the surveys conducted by Dr. Christensen are not reliable because they are not representative of the universe they are intended to reflect. The surveys are alleged to not be representative because: (1) The surveys only include the areas of Utah and Southern Idaho when Bimbo's claims include areas extending beyond the surveyed areas; (2) The survey panels selected may be skewed because panelists frequently complete surveys on a regular basis; (3) Dr. Christensen screens out respondents using smartphones; and (4) There is a question as to whether the parameters of Survey 3 included appropriate randomization. Each of these concerns will be briefly discussed.

### (a) Bimbo Does Not Seek to Use the Surveys for Information Outside of Utah and Southern Idaho.

Bimbo states that its "trade dress claims are focused solely on Utah and southern Idaho so these two geographic areas are the only appropriate areas for Christiansen's trade dress surveys".[27] Because Bimbo claims to only use the surveys for Utah and southern Idaho, the question as to whether Bimbo intends to extrapolate the surveys to draw conclusions about other geographical areas not surveyed is not present. Because Dr. Christensen does not intend to testify to places other than Utah and southern Idaho, the determination of whether the surveys can be extrapolated to other jurisdictions is not necessary.

### (b) There is No Evidence the Survey Panels Selected May Be Skewed.

U.S. Bakery claims that the use of online panels is highly prone to self-selection bias because these panelists often complete surveys on a regular basis. U.S. Bakery says Dr. Christensen should have therefore validated the responses from the panel provider.

---

[27] Memorandum in Opposition to Motion to Exclude Expert Glenn L. Christensen p. 11, docket no. 162, filed June 3, 2016.

This objection is without merit because U.S. Bakery has failed to explain how people who participate in surveys on a regular basis may skew the results. U.S. Bakery's conclusory statement is not supported by evidence. The evidence will therefore not be excluded for being unreliable.

### (c) Screening Out Smartphone Users Does Not Render the Surveys Unreliable.

U.S. Bakery argues that it was improper for Dr. Christensen to screen out people who completed the survey on a smartphone. U.S. Bakery, however, fails to explain how screening out smartphones might render the results of the survey unreliable.

Dr. Christensen explains he screened out smartphones because the smaller screen size on some smartphones makes the visual stimuli smaller than desired. U.S. Bakery has failed to show how screening out smartphones renders the results unreliable. It appears that screening out smartphones likely made the results more reliable because it ensures that participants in the survey are able to see the image on a larger screen. The surveys will therefore not be excluded for smartphones being screened out.

### (d) There is No Evidence of Improper Randomization.

U.S. Bakery makes a conclusory allegation that the parameters of Survey 3 may not have included appropriate randomization. There is no explanation as to how U.S. Bakery reached this conclusion. Because there is no evidence that the results were not properly randomized the objection is denied.

### (3) Dr. Christensen's Survey Questions Do Not Make the Results Unreliable.

U.S. Bakery makes several objections to the questions Dr. Christensen asked, and the way he asked the questions. U.S. Bakery claims that the questions Dr. Christensen asked deviate

from the *Eveready* Questions.[28] U.S. Bakery claims the survey questioning was improper because Dr. Christensen: (1) improperly made it easier to identify the actual maker of the bread; (2) asks follow-up questions only to respondents who answer a certain way and then reinforces the surveyor's answers in the follow-up question and then screened out respondents who completed the surveys too quickly; (3) failed to ask the most consequential question - which is whether the respondent would have bought the bread if it was not made locally. Each of these issues will be discussed.

### (a) Failure to Remove an Identifying Mark Did Not Render the Survey Unreliable.

Dr. Christensen's first survey showed respondent's the trade dress of Grandma Sycamore's bread with the words "Grandma Sycamore's removed."[29] Dr. Christensen did not, however, omit the unique spelling of the words "HomeMaid" from the image.[30] U.S. Bakery argues that phrase "Home-Maid Bread" is readily associated with Grandma Sycamore due to the unique spelling of "Maid". They therefore argue that leaving "Home-Maid Bread" in the survey stimulus improperly influenced responses. U.S. Bakery argues that by leaving an identifiable marker on the stimulus, Dr. Christensen made it easier to identify the actual maker of the bread.

Leaving an identifying marker on the packaging may make it easier for the respondents to identify the maker of the bread. U.S. Bakery, however, did not state how respondents being able to identify the maker of the bread make the results unreliable. . Whether leaving an identifying mark on the package skews the results may be proper for the jury to weigh.

---

[28] *See Union Carbide Corp. v. Ever-Ready, Inc.,* 531 F.2d 366, 385-88 (7th Cir. 1976).

[29] Expert Report of Glenn L. Christensen at ¶¶ 47-52, docket no. 157-2, filed June 3, 2016.

[30] *Id.*

**(b) Follow-Up Questions and Screening Out Results From Those Who Answered Too Quickly Did Not Render the Results Unreliable.**

U.S. Bakery argues that the first two surveys are unreliable because only respondents who answered the questions in a particular way were asked follow-up questions. U.S. Bakery believes the follow-up questions were deliberately leading because they require only certain respondents to substantiate their answers. Dr. Christensen also would repeat the respondents answer back to the respondent when asking them to substantiate their answer. U.S. Bakery argues that repeating the answer back and requiring the respondent to justify the answer increases the likelihood of confirmation bias. Furthermore, Dr. Christensen would screen out respondents who completed the surveys too quickly.

In this circumstance the follow-up questions and screening out answers given too quickly do not render the results unreliable. Although it may not have been the best survey technique to ask follow-up questions, U.S. Bakery has not shown how the questions render the underlying surveying method unreliable. The questions asked were open-ended questions that were not leading. This issue should go to the weight the jury gives the surveys and not to their reliability.

It is also not convincing that screening out respondents who answered too quickly rendered the results invalid. U.S. Bakery has come forth with no evidence showing that the screening of results of those who answered too quickly had a disparate impact on those respondents who answered a particular way. If U.S. Bakery was able to demonstrate that screening the results of those who answered too quickly improperly changed the results to benefit Bimbo's position then it may be valid to exclude the results. The results are not unreliable because there is no evidence that the screening out cell phones skewed the results. It is equally possible to speculate on reasons why excluding these responses is appropriate.

**(c) The Failure to Ask Whether the Respondent Would Have Bought the Bread if it Was Not Made Locally Did Not Render the Previous Questions Unreliable.**

U.S. Bakery, in promoting its products, used the tagline "Fresh. Local. Quality." Dr. Christensen sought to show that this tagline suggested that these items were "local" products. In developing survey 3, Dr. Christensen attempted to test whether these advertisements created "a false or misleading impression and whether this impression was material to whether the respondent purchased bread. U.S. Bakery argues that Dr. Christensen failed to ask the most consequential question in his survey to respondents which was "Would you have bought the bread if it wasn't made locally." U.S. Bakery therefore argues that the results are unreliable and should be excluded.

The omission of asking whether the consumers would buy the bread again if it was not made locally does not change the reliability of the preceding questions. There is no basis to find that the method used in asking the questions that were asked were unreliable. Therefore the third survey will not be excluded on the basis of not asking whether the consumers would have purchased the bread again.

### Conclusion

U.S. Bakery's motion to exclude the expert testimony of Dr. Christensen is denied in its entirety.[31]

### EXPERT HIMANSHU MISHRA[32]

Rebuttal expert testimony is permitted after the parties' initial disclosures only where it "is intended solely to contradict or rebut evidence on the same subject matter identified by

---

[31] Motion to Exclude Expert Glenn L. Christensen, docket no. 104, filed May 16, 2016.

[32] Motion to Exclude Expert Himanshu Mishra, docket. no. 105, filed May 16, 2016.

another party."[33] Rebuttal testimony must "explain, repel, counteract, or disprove evidence of the adverse party."[34]

Bimbo seeks an order excluding the expert testimony of Himanshu Mishra, Ph.D. because Dr. Mishra testified to unreliable opinions that are not based on scientific testing. Dr. Mishra is a professor of marketing at the University of Utah and has been involved in over 250 consumer surveys for academic and industry purposes.[35] He teaches courses on research methods and consumer decision-making. Dr. Mishra wishes to testify in rebuttal to Dr. Christensen's surveys.

The crux of Bimbo's argument is that Dr. Mishra did not conduct surveys of his own. Dr. Mishra offers criticism to many aspects of Dr. Christensen's survey techniques, but is uncertain whether changes in Dr. Christensen's questions would have changed the results because Dr. Mishra did not conduct surveys without the claimed flaws. Bimbo argues that Dr. Mishra's testimony is purely speculative because he did not include his own surveys that applied what he claims to be the correct methodology. Rebuttal experts need not produce extrinsic evidence to be able to testify to perceived surveying flaws.

Rule 702 expressly allows experts to testify in the form of an opinion based on their knowledge if the testimony complies with the requirements set forth in the rule.[36] Bimbo does not show that the conclusions drawn by Dr. Mishra were unreliable. Dr. Mishra's testimony is more speculative and theoretical than Dr. Christensen's actual surveys because Dr. Mishra did not produce surveys of his own. But the rule does not require the exclusion of expert testimony

---

[33] *Larson v. Wisc. Cent. Ltd.,* No. 10-C-446, 2012 WL 368379, at *4 (E.D. Wisc. 2012).

[34] *United States v. Lamoreaux,* 422 F.3d 750, 755 (8th Cir. 2005).

[35] Memorandum in Opposition to Motion to Exclude Expert Glenn L. Christensen p. 5, <u>docket no. 162</u>, filed June 3, 2016.

[36] Federal Rules of Evidence 702

that lacks one hundred percent certainty. The rule only requires the exclusion of expert testimony

if the expert's testimony is not the product of reliable principles and methods. Dr. Mishra

adequately explains why he believes some of Christensen's questions were improper. Dr. Mishra

may therefore testify to perceived flaws in Dr. Christensen's questions.[37]

Bimbo also argues that Dr. Mishra should not be allowed to testify that Dr. Christensen's

failure to secure Institutional Review Board approval prior to conducting his surveys violates the

law. Bimbo believes that IRB approval is not legally required. Neither party has adequately

briefed the law on this issue. If lack of approval does not violate the law then Dr. Mishra cannot

testify that it does. Within fourteen days, Bimbo may file a new motion addressing whether (1)

the lack of approval violates the law, and (2) whether Dr. Mishra wishes to testify that on that

point.

## Conclusion

For the reasons discussed, Bimbo's motion to exclude the expert testimony of Dr. Mishra

is DENIED.[38] Dr. Mishra is within his right as a rebuttal expert to testify to his knowledge of

proper surveying techniques and questions. Dr. Mishra however, may not testify to the wrong

legal standard if the standard is in fact wrong.

## EXPERT LARRY SOTER[39]

Bimbo seeks an order to exclude expert opinions and testimony of Larry Soter. U.S.

Bakery seeks to offer Mr. Soter as an expert in the "baking industry" and have Mr. Soter testify

---

[37] Bimbo argues that although Dr. Mishra has experience in conducting consumer surveys, he does not have experience in conducting surveys in the litigation context. This argument is not persuasive. Dr. Mishra need not be an expert in litigation surveys. Proper surveying techniques should apply whether it is in the litigation context or not.

[38] Motion to Exclude Expert Himanshu Mishra, docket no. 105, filed May 16, 2016.

[39] Motion to Exclude Expert Larry Soter, docket no. 106, filed May 16, 2016.

that Bimbo's ingredients that are used to manufacture Grandma Sycamore's Home Maid Bread

do not constitute trade secrets.

Bimbo's alleged trade secret in this action consists of the use of

 Bimbo's alleged trade secret

includes:

[40]

Mr. Soter wants to offer his opinion on each individual element of the alleged trade

secret, as well as the elements collectively. Bimbo argues that it is improper for Mr. Soter to

testify that each individual element does not comprise a trade secret because the alleged trade

secret is the combination of all the steps and ingredients. Bimbo claims that Mr. Soter's

piecemeal analysis of Bimbo's trade secret does not follow the correct legal standard and

encourages the jury to similarly apply an improper legal analysis.

To be clear, "a trade secret can exist in a combination of characteristics and components,

each of which, by itself, is in the public domain, but the unified process, design and operation of

which, in unique combination, affords a competitive advantage and is a protectable secret."[41]

Even though a trade secret can be a combination of otherwise generally known processes, this

does not mean that analyzing the individual processes is irrelevant. "While the finder of fact is

required to consider the claimed trade secret as a whole, it may, in addition, consider whether the

---

[40] Motion to Exclude Larry Soter Ex. A ¶¶ 24-25, <u>docket no. 106-1</u>, filed May 16, 2016.

[41] *Rivendell Forest Products, Ltd. v. Georgia-Pacific Corp.*, 28 F.3d 1042, 1045 (10th Cir. 1994).

individual components are publicly known."[42] A finding that some of the individual components are secret may aid the fact finder in determining whether the combination of the individual processes is a trade secret.[43] Likewise, it may be relevant to the fact finder to have some knowledge about how common the individual components of the claimed trade secret are. The fact finder will still be required to view the alleged trade secret collectively, but having knowledge of how common the individual trade secrets are is relevant to the analysis.

Mr. Soter's testimony as to the individual steps that are required to make Grandma Sycamore's bread is relevant to whether the steps in combination qualify as a protectable trade secret. Mr. Soter cannot mislead the jury by claiming that the combination of individually publicly known components is not protectable because such a statement would be informing the jury of the wrong legal standard. But the testimony is admissible to the extent the testimony of the individual components helps the fact finder determine whether the compilation of components is protected. Mr. Soter does not claim to have an intention of instructing the jury that a combination of publicly known processes cannot qualify as a trade secret.

### Conclusion

Bimbo's motion to exclude the expert testimony of Mr. Soter is therefore denied in its entirety.[44]

### EXPERT RICHARD S. HOFFMAN[45]

U.S. Bakery seeks an order to exclude the expert testimony of Richard S. Hoffman. Mr. Hoffman has over twenty years of experience in public accounting and is accredited in business

---

[42] *Hertz v. Luzenac Group,* 576 F.3d 1103, 1110 (10th Cir. 2009).

[43] *Id.*

[44] Motion to Exclude Expert Larry Soter, docket no. 106, filed May 16, 2016.

[45] Motion to Exclude Expert Richard S. Hoffman, docket no. 127, filed under seal May 17, 2016.

valuations through the American Institute of Certified Public Accountants.[46] He has co-authored a book on performing damages calculations and as an adjunct professor taught a course in damage calculations at the University of Utah.[47]

Bimbo offers Mr. Hoffman to testify to the damages Bimbo suffered from the alleged trade dress infringement, trade secret infringement and dilution, and false advertising causes of action. U.S. Bakery seeks to exclude Mr. Hoffman's testimony because U.S. Bakery claims the method he used to calculate damages is unreliable. Specifically, U.S. Bakery seeks to exclude the expert testimony from Mr. Hoffman as to the following subjects: (1) alleged unjust enrichment U.S. Bakery derived from their sale of Grandma Emilie's[48] due to trade dress and trade secret infringement; (2) increases to alleged lost profit estimates based on the assumption that Bimbo would have sold existing inventories of Grandma Sycamore's products rather than incur additional incremental costs; (3) alleged unjust enrichment of U.S. Bakery due to false advertising; (4) alleged extra advertising expenses Bimbo incurred; and (5) reliance on Dr. Christensen's inadmissible testimony. Each of these issues is discussed below.

**(A) Mr. Hoffman's Unjust Enrichment Testimony Is Not Unreliable.**

U.S. Bakery argues that Mr. Hoffman improperly concluded that Grandma Emilie's generated a profit of $353,549 when in fact Grandma Emilie's lost money. U.S. Bakery claims that Mr. Hoffman arrived at the conclusion that Grandma Emilie was profitable by (a) increasing Grandma Emilie's net sales by unjustifiably excluding a significant portion of actual product returns and promotional discounts that should have been calculated in determining U.S. Bakery's net profits and (b) reducing Grandma Emilie's incremental costs by assuming a greater than

---

[46] Hoffman Expert Report ¶ 3, docket no. 139-1, filed May 5, 2016.

[47] *Id.* at ¶¶ 3-8.

[48] U.S. Bakery owns Grandma Emilie's Bread.

17

actual fixed cost percentage. U.S. Bakery believes that these errors in methodology cause Mr.

Hoffman's expert testimony to be unreliable. A discussion of the reasons for denying the

exclusion of the expert testimony of Mr. Hoffman as to his unjust enrichment testimony is

below.

### (1) Mr. Hoffman's Product Return Rate Was Not Unreliable.

U.S. Bakery claims that after its re-introduction in 2013 of Grandma Emilie's bread, the

product was slow to gain success in the marketplace. Grandma Emilie's therefore had few sales

and many returns of unsold product. Grandma Sycamore, which is owned by Bimbo, had an

average return rate of ███████. U.S. Bakery claims it was improper for Mr. Hoffman to apply a

██████ average return rate in his analysis because there are numerous differences between

Grandma Emilie and Grandma Sycamore.

Bimbo claims that Mr. Hoffman did not include U.S. Bakery's high rate of returns and

accompanying net losses in his calculations because they are indicative of U.S. Bakery's

business strategy unrelated to actual cost. Specifically, Bimbo claims that U.S. Bakery's business

strategy was to purposefully flood the market with more infringing product than could be sold to

establish more shelf space and visibility for new products; to engender goodwill with customers

by selling at a loss; and to sell the infringing products as a loss-leader to encourage customers to

buy U.S. Bakery's more profitable products.

§ 1117 of the Lanham Act states "If the court shall find that the amount of the recovery

based on profits is either inadequate or excessive the court may in its discretion enter judgment

for such sum as the court shall find to be just, according to the circumstances of the case. Such

sum in either of the above circumstances shall constitute compensation and not a penalty."[49]

---

[49] 15 U.S.C. § 1117(a).

Some courts have allowed the plaintiff to recover profits even though the defendant lost money on the theory that the plaintiff should not be prejudiced by the defendant's inefficiency.[50]

Because Grandma Emilie did not receive a profit, it is proper in the interest of justice to look at alternative views for compensation. If the fact finder finds that Grandma Emilie was unjustly enriched even though they did not receive a profit, then it is relevant to look at Grandma Sycamore's return rate of ███ as evidence of what would be a proper rate of return had Grandma Emilie not been inefficient. Mr. Hoffman's testimony as to the rate of return is relevant if the fact finder finds that Grandma Emilie has been unjustly enriched.

### (2) Mr. Hoffman's Variable Costs Are Not Unreliable.

U.S. Bakery claims that Mr. Hoffman deems 100% of the costs allocated to administration, manufacturing overhead, and equipment for Grandma Emilie's to be fixed. The CFO of U.S. Bakery, Michael Petit, testified without evidentiary support that approximately 50% of manufacturing overhead costs is variable and 50% is fixed, and repairs are predominant within the variable costs of equipment items. Due to this gross disparity, U.S. Bakery believes that Mr. Hoffman's testimony regarding variable costs is unreliable.

Under the Lanham Act, plaintiffs in trademark infringement cases may recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction."[51] "To assist the court in arriving at the appropriate award for disgorgement of profits, the plaintiff is "required to prove defendant's sales only, while the defendant has the burden of

---

[50] Callman, Unfair Competition, § 22.49 at 258 n. 95.

[51] 15 U.S.C. § 1117(a)

proving all elements of cost or deduction claimed."[52] "Although plaintiffs must generally establish damages with specificity, some estimation is acceptable if necessitated in part by the Defendants' poor record keeping."[53]

U.S. Bakery has come forward with only unsupported and conclusory assertions as support for its claim that costs should be deducted. If U.S. Bakery is able to comply with its burden of coming forth with reliable evidence of its costs and deductions, it will then be proper to address whether Mr. Hoffman's estimates are invalid in light of the new evidence. As it stands it is appropriate for Mr. Hoffman to provide some estimation because U.S. Bakery has not come forth with specific reliable evidence of its deductions. Mr. Hoffman's testimony will not be excluded because of his variable cost estimations.

### (B) Hoffman's Lost Profit Analysis Is Not Unreliable.

Mr. Hoffman determined that Bimbo had the capacity to make all of the identified lost sales. U.S. Bakery claims that Mr. Hoffman improperly concluded that "Bimbo had already produced and incurred all of the costs of more than enough loaves of Grandma Sycamore's to fulfill all of the sales that are believed to have been lost to a sale of Grandma Emilie's." Mr. Hoffman's conclusion that Bimbo already absorbed the production cost boosts Mr. Hoffman's lost profits analysis. U.S. Bakery argues that it is improper to make the assumption that sufficient quantities of Grandma Sycamore's units were located at the same grocery store as Grandma Emilie's and BreadLover's White[54] to make these sales without backing this claim with data.

---

[52] *Klein-Becker USA LLC v. Englert*, 711 F.3d 1153, 1163 (10th Cir. 2013) (internal quotations omitted); *see also Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993) (explaining that, under the Lanham act, the "plaintiff has only the burden of establishing the defendant's gross profits from the infringing activity with reasonable certainty," and the "defendant thereafter bears the burden of showing which, if any, of its total sales are not attributable to the infringing activity, and, additionally, any permissible deductions for overhead.").

[53] *Klein-Becker USA LLC*, 711 F.3d at 1163 (quoting *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1242 (10th Cir. 2006) (Internal Quotations Omitted).

[54] BreadLover White is also owned by U.S. Bakery.

Even if the fact finder finds that some portion of the existing inventory could not be transported to the stores where it was needed, Mr. Hoffman addressed that situation by conducting an alternative calculation of lost profits under which Bimbo had to produce these additional units and ship them to stores. This alternative calculation was more conservative because it included 100% of the incremental costs associated with the production of additional loaves to cover U.S. Bakery's sales. U.S. Bakery does not dispute that Bimbo had the ability to produce additional loaves in the event a current store did not have enough.

It is proper for Mr. Hoffman to present both damage alternatives to the jury. Mr. Hoffman does not appear to claim that 100% of Bimbo's lost sales would not require additional production costs. Hoffman says it is likely that some of the lost sales would require increased production cost, while some lost sales would not. It is proper to allow Mr. Hoffman to provide damage calculations under both theories and allow the jury to allocate the percentages.

### (C) Mr. Hoffman's Testimony Has Adequate Causation.

U.S. Bakery objects to Mr. Hoffman's analysis of profits that were not local. Bimbo asserts that U.S. Bakery's "Fresh. Local. Quality." tagline constitutes false advertising because certain grocery stores that sold U.S. Bakery bread were too far from where the bread was baked to be deemed local. Mr. Hoffman seeks to proffer calculations of U.S. Bakery's profits for products he deems were not local. U.S. Bakery argues that Mr. Hoffman made no effort to link the tagline's effect to U.S. Bakery's profit or to apportion his figures according to market share.

U.S. Bakery has not clearly stated what exactly is unreliable about Mr. Hoffman's testimony. It appears that U.S. Bakery is arguing that causation cannot be established unless Mr. Hoffman conducted his own surveys showing the consumer deception from the tagline. U.S. Bakery has failed to provide evidence that Mr. Hoffman carries this burden.U.S. Bakery must

show that Mr. Hoffman's testimony is unreliable, not that it could be more reliable had he

conducted his own surveys.

### (D) Dr. Hoffman's Testimony as to Geography is Excluded in Part.

To prove damages, Mr. Hoffman calculated U.S. Bakery's total revenues for products

sold in a given state that were baked in a different state. U.S. Bakery claims that Mr. Hoffman

fails to account for where loaves of bread are actually sold and that he instead only focuses on

where the bread was made.

U.S. Bakery does not have precise data on the number of bread loaves sold that were not

local. Mr. Hoffman therefore used the limited data available to calculate the average distance

from U.S. Bakery facilities to the ten most populous zip codes in the relevant states. U.S. Bakery

claims that Mr. Hoffman includes a McMinnville, Oregon facility in the report that does not

make bread.

U.S. Bakery appears to argue that because Mr. Hoffman's testimony as to geography is

not accurate that he is not qualified. U.S. Bakery is conflating the distinct qualification and

reliability standards. The Supreme Court in *Daubert* instructed the courts to first determine

whether the expert is qualified and then to determine whether the testimony is reliable. It is

therefore not proper to look to the report to determine whether the expert is qualified.

The exclusion of Mr. Hoffman's testimony is granted to the extent that he includes a

factory that does not make bread because the testimony is not reliable.[55] However, other than the

Oregon facility, there is nothing that challenges the reliability of Mr. Hoffman's testimony. Any

further challenges to Mr. Hoffman's geographic testimony go to the weight of the evidence and

---

[55] The fact that Mr. Hoffman included unreliable testimony does not change the decision of whether or not he is qualified.

not to the admissibility. Mr. Hoffman's testimony as to his geographic calculations is granted as it relates to the Oregon facility and denied as to the other geographic objections.

### (E) Corrective Advertising Expenses Are Relevant to the Issue of Damages.

Mr. Hoffman includes in his reports "extra marketing and advertising expenses" that Bimbo incurred in response to U.S. Bakery's actions. U.S. Bakery claims that he performed no analysis to arrive at these figures, and only copied and pasted an unsourced schedule into his analysis. U.S. Bakery also argues that Mr. Hoffman should have analyzed whether the advertising efforts provided any mitigating revenues. U.S. Bakery objects that the calculations will not assist the jury to better understand the evidence or determine a fact in issue. U.S. Bakery further argues that the reports are unduly duplicative, but does not state in what way. This objection is therefore based on relevance and not on the reliability of the reports.

The damages calculations for corrective advertising expenditures are relevant to the issue of damages and there is no evidence that the reports are unduly duplicative. The motion to exclude based on corrective advertising is therefore denied.

### (F) Dr. Christensen's Testimony is Admissible.

U.S. Bakery argued that testimony from Mr. Hoffman should be excluded to the extent that it relies on inadmissible testimony from Dr. Christensen. There is nothing inadmissible in Dr. Christensen's reports and therefore this argument is moot. The motion to exclude on this issue is therefore denied.

## Conclusion

U.S. Bakery's Motion to Exclude the Expert Testimony of Mr. Hoffman is granted as to excluding testimony from Mr. Hoffman as it relates to the Oregon facility making bread, and denied on all other grounds.[56]

## EXPERT RUSSELL CARL HOSENEY[57]

Bimbo seeks to offer the testimony of Russell Carl Hoseney as an expert to aid the jury in the trade secret claim by testifying to how ingredients, proofing processes, and baking processes chemically interact and influence baked foods. U.S. Bakery moves to exclude the expert testimony of Dr. Hoseney based on lack of qualifications, and because the testimony he gives is unreliable. The order will first discuss the reasons why Dr. Hoseney is qualified and then will discuss the reasons why his testimony is not unreliable.

### (A) Dr. Hoseney is Qualified.

Dr. Hoseney holds a Ph.D. in grain science; is a Professor Emeritus of Kansas State University's Department of Grain Science; has over 25 years of teaching experience; served as a research chemist for the U.S. Department of Agriculture; consulted with baking companies on the creation of new breads; and has published over 300 peer reviewed papers on a wide variety of baking topics.

U.S. Bakery largely argues that Dr. Hoseney is not knowledgeable in trade secret law, and that he is a chemist, not a baker. Both these arguments are not persuasive. Dr. Hoseney does not need to be a legal expert in trade secret law to testify about a trade secret matter. Furthermore, Dr. Hoseney is a world renowned baking chemist, and based on his education,

---

[56] Motion to Exclude Expert Richard S. Hoffman, docket no. 127, filed under seal May 17, 2016.
[57] Motion to Exclude Expert Russell C. Hoseney, docket no. 129, filed under seal May 17, 2016.

skills, and training is extremely qualified to testify as to the chemical elements involved in baking bread. U.S. Bakery's claim that Dr. Hoseney is not qualified is therefore denied.

### (B) Dr. Hoseney's Testimony is Reliable.

U.S. Bakery states four reasons that Dr. Hoseney's testimony is not reliable: (a) Dr. Hoseney's shifting definition of Bimbo's trade secrets creates inconsistencies in this case that generate more confusion than clarity; (b) Dr. Hoseney bases his opinions on unverified, secondhand sources; (c) Dr. Hoseney did not apply any scientific method in drawing his conclusions that would satisfy *Daubert*, and is testifying to common knowledge; and (d) Dr. Hoseney's opinions are based on a faulty understanding of Jeremy Faull's involvement in this case. Each of these issues will be discussed below.

### (1) Dr. Hoseney's Testimony Is Not Inconsistent.

U.S. Bakery argues that Dr. Hoseney's testimony should be excluded on the basis that it is inconsistent because at times he has said each individual element of the baking process is a trade secret, and other times has said only the combination of the individual elements constitutes a trade secret. On this basis U.S. Bakery believes that Dr. Hoseney has little understanding of what constitutes a trade secret and therefore is unable to provide reliable testimony.

Dr. Hoseney has most recently stated that the trade secret is the collective use of all the baking ingredients and steps.[58] Dr. Hoseney's most recent statements only clarify, narrow, and provide more specificity to the trade secret Bimbo is alleging. Exclusion of the testimony of Dr. Hoseney on the basis of his testimony being inconsistent is denied.

### (2) Dr. Hoseney's Testimony Is Not Solely Based On Secondhand Knowledge.

U.S. Bakery claims that Dr. Hoseney relies on information provided to him from, Joe Robinson, a retired Bimbo employee. Because Dr. Hoseney relies on information from a

---

[58] Expert Report of Russell Carl Hoseney at ¶¶24-25, docket no. 106-1, filed May 16, 2016.

secondhand source, and Mr. Robinson is going to speak at trial, U.S. Bakery argues that Dr.

Hoseney's testimony should be excluded.

Dr. Hoseney did not merely rely on information given by Mr. Robinson. Although Dr.

Hoseney consulted with Mr. Robinson, he also did much more. Dr. Hoseney visited a Bimbo

facility to observe production, asked current employees questions regarding the production

processes, examined the finished bread, examined competing companies' breads, considered the

ingredients on the labels of all the breads, considered the feel and texture of the breads, and also

tasted them.[59] Dr. Hoseney is basing his testimony on much more than conversations with Mr.

Robinson and therefore the exclusion of his testimony on the basis of him improperly and solely

relying on conversations with a single person is denied.

### (3) Dr. Hoseney Is Not Testifying to Common Knowledge and His Testimony Is Not Unreliable.

U.S. Bakery argues that (1) there is nothing scientific about Dr. Hoseney's report,

opinions, or testimony, and (2) Dr. Hoseney claims Grandma Sycamore's white bread is different

from other commercially produced white breads, but does not specify what types of white breads

it is different from.

As to the first argument, Dr. Hoseney wishes to testify to the commercial production and

chemical interactions that occur when baking bread. This is an expert opinion. Lay witnesses

would not have knowledge of the chemical baking process of different types of breads.

The second argument fails because Dr. Hoseney is testifying that Grandma Sycamore's

white bread is different from all other white breads, not only a specific category of white bread.

Exclusion of the testimony of Dr. Hoseney based on his testimony being common knowledge

and not being reliable is denied.

---

[59] Opposition to Motion to Exclude Expert Russell Carl Hoseney p. 8-9, <u>docket no. 167</u>, filed June 3, 2016.

**(4) Dr. Hoseney Is Testifying To A Matter On Which He Is Not An Expert.**

U.S. Bakery argues that Dr. Hoseney's reports claim the linchpin in Bimbo's trade secret claim was when Jeremy Faull came to work for U.S. Bakery and that this testimony has nothing to do with Dr. Hoseney's expertise as a cereal chemist and is unrelated to anything outside of his personal knowledge. This argument is valid. It is improper for Dr. Hoseney to testify that he believes Jeremy Faull misappropriated trade secrets. The motion to exclude the expert testimony of Dr. Hoseney is therefore granted as far as the testimony regards to Jeremy Faull being the person who misappropriated the trade secrets.

## Conclusion

U.S. Bakery's Motion to Exclude the Expert Testimony of Dr. Hoseney is granted in part as to the testimony relating to claims of Jeremy Faull misappropriating the trade secrets. The motion to exclude is denied on all other grounds.[60]

## ORDER

Defendant United States Bakery's motion to exclude testimony of Plaintiff Bimbo Bakeries, Inc.'s expert, Dr. Glenn L. Christensen[61] is DENIED in its entirety.

Defendant United States Bakery's motion to exclude testimony of Plaintiff Bimbo Bakeries, Inc.'s expert Richard S. Hoffman[62] is GRANTED as to his testimony of the Oregon facility, and DENIED on all other grounds.

Defendant United States Bakery's motion to exclude testimony of Plaintiff Bimbo Bakeries, Inc.'s expert Russell Carl Hoseney, Ph.D is GRANTED in part as to the testimony

---

[60] Motion to Exclude Expert Russell C. Hoseney, <u>docket no. 129</u>, filed under seal May 17, 2016.

[61] Motion to Exclude Expert Glenn L. Christensen, <u>docket no. 104</u>, filed May 16, 2016.

[62] Motion to Exclude Expert Richard S. Hoffman, <u>docket no. 127</u>, filed under seal May 17, 2016.

relating to claims of Jeremy Faull misappropriating the trade secrets DENIED on all other grounds.[63]

Bimbo's motion to exclude testimony of U.S. Bakery's expert Himanshu Mishra, Ph.D., is DENIED, with the stipulation that Dr. Mishra may not testify to the wrong legal standard.[64]

Bimbo's motion to exclude testimony of U.S. Bakery's expert Larry Soter is DENIED in its entirety.[65]

Within fourteen days after filing of this order, the parties shall send a redacted version of this document to dj.nuffer@utd.uscourts.gov. The redacted version shall obscure all protected information and shall be a text-based PDF. If the redactions are acceptable, the redacted version will be placed on the docket.

Signed March 2, 2017.

BY THE COURT

_____
District Judge David Nuffer

---

[63] Motion to Exclude Expert Russell C. Hoseney, docket no. 129, filed under seal May 17, 2016.

[64] Motion to Exclude Expert Himanshu Mishra, docket no. 105, filed May 16, 2016.

[65] Motion to Exclude Expert Larry Soter, docket no. 106, filed May 16, 2016.

28

United States District Court
for the
District of Utah
March 2, 2017

******MAILING CERTIFICATE OF THE CLERK******

RE:   Bimbo Bakeries USA v. Sycamore et al
      2:13cv749 DN-DBP

Charles A. Burke
WOMBLE CARLYLE SANDRIDGE & RICE (WINSTON-SALEM)
ONE W FOURTH ST
WINSTON-SALEM, NC 27101

Raymond J. Etcheverry
PARSONS BEHLE & LATIMER (UT)
PO BOX 45898
SALT LAKE CITY, UT 84145-0898

Sean N. Egan
PARKSIDE TOWER STE 950
215 S STATE ST
SALT LAKE CITY, UT 84111-2374

Andrew G. Deiss
DEISS LAW PC
10 W 100 S STE 425
SALT LAKE CITY, UT 84101

Christopher S. Hill
KIRTON MCCONKIE
PO BOX 45120
SALT LAKE CITY, UT 84145-0120

Eric C. Beach
TONKON TORP LLP
888 SW FIFTH AVE STE 1600
PORTLAND, OR 97204

Aimee Trujillo,