IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BIMBO BAKERIES USA, INC., <br><br>Plaintiff,<br>v.<br><br>LELAND SYCAMORE, TYLER SYCAMORE, WILD GRAINS BAKERY, LLC, and UNITED STATES BAKERY, INC.,<br><br>Defendants. | **SEALED MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:13-cv-00749 DN<br><br>District Judge David Nuffer |

Plaintiff Bimbo Bakeries (Bimbo) filed this case against multiple Defendants principally alleging that the Defendants misappropriated Bimbo's trade secrets for making bread. Two of the Defendants, Tyler Sycamore (Tyler), and his business, Wild Grains Bakery, LLC (Wild Grains), (collectively referred to as Defendants), moves for summary judgment on all of Bimbo's claims against them. These claims include: (1) trade secret misappropriation, (2) trade dress infringement, and (3) trade dress dilution. For the reasons stated in this order, Defendants' motion for summary judgment is DENIED in its entirety.

UNDISPUTED FACTS ................................................................................................................. 2
LEGAL STANDARD .................................................................................................................... 5
DISCUSSION ................................................................................................................................. 5
   Trade Secret Misappropriation ................................................................................................. 5
     1.   The Defendants Have Not Shown Bimbo's Purported Trade Secret is Generally Known.
        .................................................................................................................................... 6
     2.   Bimbo's Combination of Well-Known Processes is Specific and Unique. .................... 7
     3.   There Are Disputed Facts About Whether Tyler Misappropriated the Trade Secret. ...... 8
   Trade Dress Infringement and Dilution ................................................................................... 9
ORDER ......................................................................................................................................... 11

## UNDISPUTED FACTS

Leland Sycamore ("Leland") invented the process and formula – including the elements constituting the alleged trade secrets at issue – for making Grandma Sycamore's Home-Maid Bread ("Grandma Sycamore's") in 1979 at Aaron Bakery.[1] Leland used packaging for Grandma Sycamore's that was substantially similar to packaging his successor, Bimbo, still uses to sell the bread today.[2] Leland received federal trademark protection for part of the packaging's design in 1999.[3]

When Leland's son, Tyler, was 14 years old, he worked for his father's company.[4] It is, however, disputed whether Tyler was actually involved in making Grandma Sycamore's bread.[5] Bimbo claims that, through years of working at the company, Tyler was well aware of the process for baking Grandma Sycamore's bread. Tyler, however, asserts that he was merely involved in simple tasks such as slicing bread and has no knowledge of the process for making the bread.[6]

In 1998, Leland sold Grandma Sycamore's rights to one of Bimbo's predecessors-in-interest for ▮▮▮▮▮▮[7] The purchase was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] Statement of Elements and Undisputed Material Facts (SOF) at ¶ 1; docket no. 115.

[2] May 16, 2016 Declaration of Christopher D. Smith in Support of Bimbo's Motion for Partial Summary Judgment ["5/16/16 Smith Dec."] at ¶ 3; docket no. 199-9.

[3] Docket no. 157-7.

[4] Ex. G, Deposition of Tyler Sycamore as Rule 30(b)(6) witness for Wild Grains, dated October 30, 2013 ("Tyler Dep"); docket no. 199-11 at 11:14-16, 12:10-13.

[5] Id. at 12:14-21, 14:15 – 15:1.

[6] Id. at 14:1-10.

[7] SOF at ¶ 2; Ex. H, Aaron Bakery Asset Purchase Agreement [Bimbo 1495-1521], at Bimbo 1499-500; docket no. 199.

███████████████████████████.[8] As part of the transaction, Leland executed a nondisclosure agreement, which requires, among other things, him to keep confidential and refrain from using Grandma Sycamore's production formulations, manufacturing processes, and trade secrets.[9]

Bimbo asserts trade secret protection over the production process of Grandma Sycamore's white bread.[10] Bimbo claims that the production process is composed of the compilation of ████████



---

[8] *Id.*
[9] Docket no. 199-13; Ex. H at 1516.
[10] Docket no. 37; Amend. Compl.
[11] Docket no. 199-2; Ex. A, Hoseney Rep. at ¶ 24.
[12] *Id.*
[13] *Id.* at ¶ 25(a).

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████[14]
████████████████████████████████

Bimbo claims that Tyler, through his previous business Wild Grains, misappropriated its trade secrets and trademarks associated with Grandma Sycamore's white bread.[15] Tyler claims he could not misappropriate Grandma Sycamore's alleged trade secret because he had no knowledge of the production process for making the bread.[16] Although it is disputed whether Tyler had this knowledge, there is evidence that Jeremy Faull, the production manager at Wild Grains, learned the process for making the bread from the previous owner of Grandma Sycamore's, Leland.[17]

For a period of three months, Wild Grains sold bread named Grandma Emilie's to United States Bakery (U.S. Bakery).[18] Bimbo asserts that U.S. Bakery infringed on Grandma Sycamore's trade dress and that the Defendants are also liable as contributory infringers.[19]

In May 2013, Faull went to work for U.S. Bakery.[20] Bimbo also claims that Faull improperly misappropriated Grandma Sycamore's recipe for making white bread to U.S. Bakery.[21]

---

[14] *Id.* at ¶ 25(b).
[15] Docket no. 37; Amend. Compl.
[16] Docket no. 115; Mot. Summ. J. p. 25.
[17] *Id.*
[18] *Id.* at p. 29.
[19] Docket no. 37; Amend. Compl.
[20] Docket no. 199-17; Faull Dep. 8:19-25 to 9:1-6.
[21] Docket no. 37; Amend. Compl.

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[22] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[23] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[24]

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[25]

## DISCUSSION

Defendants move for summary judgment on Bimbo's claims for (1) trade secret misappropriation, (2) trade dress infringement, and (3) trade dress dilution. As the moving party, it is the Defendants' burden to show that there are no disputes of material facts and that they are entitled to judgment as a matter of law. Each challenged claim will be addressed in this order, as well as the reasoning for denying summary judgment.

### Trade Secret Misappropriation

The Defendants raise three arguments for dismissal of Bimbo's trade secret misappropriation claim. They argue first that Bimbo does not have a protectable trade secret; second, that Bimbo has not defined its trade secret with specificity; and third, that even if Bimbo has a trade secret, Tyler and Wild Grains did not misappropriate it. The order will address each of the Defendants' arguments and the reasons the arguments fail on summary judgment.

---

[22] Fed. R. Civ. P. 56(a).
[23] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).
[24] *Id.*
[25] *Id.* at 670-71.

1. **The Defendants Have Not Shown Bimbo's Purported Trade Secret is Generally Known.**

Bimbo asserts trade secret protection over the compilation of ████████████ ████████████████████████████████████████████ █ ████ ████████ ██████████████████████████████

Utah has adopted the Uniform Trade Secrets Act. Under the act, a trade secret can be a "compilation" that "derives independent value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use."[26] "A compilation can be made up of known elements, if the combination itself is outside the general knowledge and not ascertainable by proper means."[27] The Tenth Circuit has been clear that when the plaintiff asserts trade secret protection under a compilation theory, an analysis of the individual trade secret components in isolation is improper.[28]

The Defendants analyze each individual element of Bimbo's purported trade secret and argue that the elements in isolation are generally known. While viewing each individual element may be helpful in determining whether the compilation of the elements is generally known, the fact that an individual element is generally known in isolation otherwise proves very little.

Even if Defendants' piecemeal analysis were valid and it was found that each individual step in the process of producing Grandma Sycamore's bread was generally known, judgment still could not be entered in their favor. As the moving party, it is the Defendants' burden to show that the compilation of individually generally known processes is also otherwise generally known. Because the Defendants have not met this burden, summary judgment cannot be granted.

---

[26] Utah Code Ann. § 13-24-2(4)(a).
[27] *Brigham Young Univ. v. Pfizer, Inc.*, 861 F. Supp. 2d 1320, 1323 (D. Utah 2012).
[28] *See Rivendell Forest Prods, Ltd. v. Georgia-Pacific Corp.*, 28 F.3d 1024, 1045 (10th Cir. 1994).

Whether each individual element of the trade secret is generally known need not be discussed because the Defendants do not argue that the compilation of elements is generally known. Furthermore, the facts in the record show that despite Grandma Sycamore's existence in the market for many years, competitors have tried to replicate the production process and have failed.[29] At a minimum, this is a material fact that is evidence that the production process of Grandma Sycamore's bread is not generally known.

### 2. Bimbo's Combination of Well-Known Processes is Specific and Unique.

The Defendants only argument about the trade secret process in compilation is that the process Bimbo claims is not specific or unique. To establish the existence of a trade secret in compilation, the claimant must specifically "explain how the combination of elements is sufficiently different, or special, to merit protection."[30] A plaintiff may not point to a mass of information and claim that a secret lies somewhere within.[31]

The Defendants argue that Bimbo has not provided detailed disclosures of information or protocols for its purported trade secret, and commercial farm bread in general does not qualify as a trade secret. This argument is misplaced. Bimbo does not point to a mass of information, nor does Bimbo claim trade secret protection in farm bread in general. Bimbo points to ▮▮▮▮ ▮▮▮ in the production of Grandma Sycamore's bread and argues that the steps, in compilation, qualify as a protectable trade secret.

There is nothing vague about Bimbo's description of its trade secret. The description is included in the fact section above and is clear. The description does not point to a mass of information; rather the purported trade secret only spans one to two pages in length. The

---

[29] Docket no. 199-6; Ex. DD, 1/14/14 Faull Dep. At 19:14-20:20
[30] *Brigham Young Univ. v. Pfizer, Inc.*, 861 F. Supp. 2d 1320, 1324 (D. Utah 2012).
[31] *See Id.*

Defendants have failed to show that Bimbo was not specific in its description of the purported trade secret.

### 3. There Are Disputed Facts About Whether Tyler Misappropriated the Trade Secret.

Bimbo has the burden at trial of proving that its alleged trade secrets were disclosed by Wild Grains and Tyler.[32] On summary judgment, however, the moving party has the burden of proving that there are no disputes of material fact about whether the trade secret was misappropriated.

Tyler first argues that he could not have misappropriated the trade secret for making bread because he never made bread at his father's bakery, and he otherwise has no knowledge about Grandma Sycamore's process for making bread. This fact, however, is disputed. Bimbo argues that Tyler had full knowledge of the process for making Grandma Sycamore's bread. Summary judgment cannot be entered finding that Tyler could not have misappropriated the trade secret. It is disputed whether Tyler had knowledge of Grandma Sycamore's production process..

Tyler then argues that Wild Grains uses a different recipe than the one used by Grandma Sycamore. Faull, the production manager at Wild Grains, added ▮▮▮▮▮ and ▮▮▮▮▮ to the basic recipe he learned from Leland. Tyler claims that because the recipes have some differences, then the trade secret was not misappropriated as a matter of law. The Defendants have not included any citations for the proposition that making a minor change to a trade secret is enough to avoid liability. Summary judgment therefore cannot be granted on this basis.

The Defendants' last argument is that if Faull did in fact misappropriate the alleged trade secret for making Grandma Sycamore's white bread, then he did so as an employee of U.S.

---

[32] *See Storagecraft Tech. Corp. v. Persistent Telecom Sols., Inc.,* 2015 WL 9692517, *8 (D. Utah 2015).

Bakery, and not as an employee of Wild Grains. This fact, however, is also disputed. Bimbo claims that Tyler and Wild Grains sold the allegedly infringing bread to U.S. Bakery prior to Faull's employment with U.S. Bakery.[33] In any event, even if the trade secret was not misappropriated to U.S. Bakery, it still could have been misappropriated through Wild Grains use in making the competing bread.[34]

For the aforementioned reasons, because disputed material facts exist, summary judgement cannot be granted on Bimbo's trade secret claim.

## Trade Dress Infringement and Dilution

Tyler and his company Wild Grains seek summary judgment on Bimbo's trade dress infringement and trade dress dilution claims. Their principal argument is that Wild Grains had no role in developing the packaging of Grandma Emilie's bread. Wild Grains only made the bread, and U.S. Bakery did the packaging and sales. It is undisputed that Wild Grains has never owned the Grandma Emilie's mark.

As support for Tyler's argument that he is entitled to summary judgment because he had no role in developing the packaging, he cites the following elements discussed in *General Motors Co. v. Urban Gorilla, LLC,* 2010 WL 5395065 (D. Utah 2010): "(3) the defendant began using its mark or trade name after the plaintiff's mark became famous; (4) the defendant's use of his mark is in commerce; and (5) the defendant's mark must be likely to cause dilution to the plaintiff's mark."[35] Tyler argues that the language used in *General Motors Co.* creates a

---

[33] U.S. Bakery referred to the bread it bought from Wild Grains in internal documents as Grandma Sycamore's bread

[34] . Ex. R, PX 92, 93, 147, 149, 150; Ex. Q, Deposition of Marc Albers as Rule 30(b)(6) witness for U.S. Bakery, May 18, 2015 (Albers 5/18/15 Dep.) at 15:4 – 40:10.

[35] *General Motors Co. v. Urban Gorilla, LLC,* 2010 WL 5395065 (D. Utah 2010).

requirement that an infringer must own a mark in order to be liable. This argument runs counter to binding Supreme Court precedent.[36]

In *General Motors Co.* the court was paraphrasing 15 U.S.C. § 1125(c)(1) of the Lanham Act. It appears that the *General Motors* court was not intending to impose a requirement that one must own an infringing trademark in order to be liable. The *General Motors* court was not addressing whether ownership of the trademark is a necessary requirement.

Bimbo correctly argues that there is no requirement that one must own a mark in order to be liable for trade dress infringement or trade dress dilution. Bimbo points to the language of the applicable Lanham Act provision that states that trade dress dilution occurs when a "person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark."[37] The language of the statute does not expressly impose an ownership requirement. Use is enough.

Bimbo further asserts that it does not matter that Wild Grains did not sell the infringing product because it is still liable as a contributory infringer. Bimbo claims that Wild Grains is liable under the "tools of infringement" doctrine which holds that when "use is known to the manufacturer or is reasonably foreseeable," " the courts have imputed the distributors' infringing use of the trademark to the initial manufacturer."[38]

The Defendants argue that the cases Bimbo cites dealing with the tools of infringement doctrine deal with drastically different factual scenarios than the facts in our case. For example, Bimbo cites *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013) as its

---

[36] *See Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844 (1982).
[37] 15 U.S.C. § 1125(c)(1).
[38] 3-11 Gilson on Trademarks § 11.02(h)(ii) (2015).

primary support.[39] This case, however, found the Defendant, Lens.com, liable as a contributory infringer based on the infringing acts of affiliates that Lens.com hired to do its marketing. The *1-800 Contacts* case held Lens.com liable based on the acts of its agents. In our case, there is no claim that Tyler and Wild Grains were acting as U.S. Bakery's agents. The Defendants therefore argues that because Bimbo has not pointed to a case with similar facts they are therefore entitled to summary judgment.

However, the Supreme Court in *Inwood Laboratories* held:

> [L]iability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another. Even if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances. Thus, if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit.[40]

Whether Wild Grains had knowledge that they were supplying bread to a company that was infringing on Bimbo's trademark rights is in genuine dispute. Tyler's long history and familiarity with the marks and packaging associated with Grandma Sycamore is evidence that Tyler may have known that U.S. Bakery was infringing on Bimbo's trademark. Summary judgment therefore cannot be granted on Bimbo's trade dress claims.

## ORDER

Defendants', Tyler Sycamore and Wild Grains, motion for summary judgment is DENIED in its entirety.[41]

Within fourteen days after filing of this order, the parties shall send a redacted version of this document to dj.nuffer@utd.uscourts.gov. The redacted version shall obscure all protected

---

[39] *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013).

[40] See *Inwood Laboratories, Inc.*, at 854.

[41] Docket no. 115.

information and shall be a text-based PDF. If the redactions are acceptable, the redacted version will be placed on the docket.

Signed March 29, 2017.

BY THE COURT

_____
District Judge David Nuffer

United States District Court
for the
District of Utah
March 29, 2017

******MAILING CERTIFICATE OF THE CLERK******

RE: Bimbo Bakeries USA v. Sycamore et al
2:13cv749 DN-DBP


Charles A. Burke
WOMBLE CARLYLE SANDRIDGE & RICE (WINSTON-SALEM)
ONE W FOURTH ST
WINSTON-SALEM, NC 27101

Raymond J. Etcheverry
PARSONS BEHLE & LATIMER (UT)
PO BOX 45898
SALT LAKE CITY, UT 84145-0898

Sean N. Egan
PARKSIDE TOWER STE 950
215 S STATE ST
SALT LAKE CITY, UT 84111-2374

Andrew G. Deiss
DEISS LAW PC
10 W 100 S STE 425
SALT LAKE CITY, UT 84101

Christopher S. Hill
KIRTON MCCONKIE
PO BOX 45120
SALT LAKE CITY, UT 84145-0120

Eric C. Beach
TONKON TORP LLP
888 SW FIFTH AVE STE 1600
PORTLAND, OR 97204

---

Aimee Trujillo,