IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BIMBO BAKERIES USA, INC., <br><br>    Plaintiff, <br>v. <br><br>LELAND SYCAMORE, TYLER SYCAMORE, WILD GRAINS BAKERY, LLC, and UNITED STATES BAKERY, INC., <br><br>    Defendant. | SEALED MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S [119] MOTION FOR SUMMARY JUDGMENT <br><br> Case No. 2:13-cv-00749 DN <br><br> District Judge David Nuffer |

Plaintiff Bimbo Bakeries (Bimbo) filed this case against multiple Defendants, principally alleging that the Defendants misappropriated Bimbo's trade secrets for making bread.[1] The trade secrets were originally developed by Defendant Leland Sycamore and acquired by Bimbo. One of the Defendants, United States Bakery (U.S. Bakery), moves for summary judgment on all of Bimbo's claims against it.[2] These claims include: (1) trade secret misappropriation, (2) trade dress infringement, (3) trade dress dilution, and (4) false designation of origin, advertising, and unfair competition.[3]

For the reasons stated in this order, Defendant's motion for summary judgment is GRANTED as to Bimbo's trade dress infringement claims that pertain to whole grain bread, and possible infringement after January 2014. The motion is DENIED on all other claims.

---

[1] Am. Compl.; docket no. 37.
[2] Mot. for Summ. J.; docket no. 119.
[3] Am. Compl. at p. 15-21; docket no. 37.


BACKGROUND FACTS ................................................................................................... 2
UNDISPUTED FACTS ..................................................................................................... 4
LEGAL STANDARD ........................................................................................................ 6
DISCUSSION .................................................................................................................... 7
Trade Secret Misappropriation .......................................................................................... 8
    1.    U.S. Bakery Has Not Shown Bimbo's Purported Trade Secret is Generally Known. ................................................................................................................ 8
    2.    The Use of Additional Ingredients Does Not Absolve U.S. Bakery From Trade Secret Misappropriation Liability. ...................................................................... 9
    3.    Faull Owed a Duty to Bimbo Not to Acquire Information By Improper Means .. 10
    4.    Whether U.S. Bakery Used Bimbo's Purported Trade Secret Is Disputed ........... 11
Trade Dress Infringement and Dilution .......................................................................... 12
    1.    Bimbo Does Not Assert Trade Dress Claims As To Multigrain Bread. .............. 12
    2.    Dr. Christensen's Surveys Are Admissible. ......................................................... 12
    3.    Summary Judgment Is Granted Only as to Possible Infringement After January 2014. ..................................................................................................................... 13
    4.    Damages Will Not Be Limited for Grandma Emilie's Failure to Make a Profit .. 14
False Designation of Origin, False Advertising, and Unfair Competition .................... 15
    1.    The Fresh. Local. Quality. Tagline is Sufficiently Definite. ................................ 15
    2.    Whether U.S. Bakery Wrongly Used Its Shelf Liners Is Disputed ...................... 16
    3.    The Admissibility of Damages Has Been Decided .............................................. 17
ORDER ............................................................................................................................ 17

## BACKGROUND FACTS[4]

Leland Sycamore ("Leland") invented the process and formula – including the elements constituting the alleged trade secrets at issue – for making Grandma Sycamore's Home-Maid Bread ("Grandma Sycamore's") in 1979 at Aaron Bakery.[5] Leland used packaging for Grandma Sycamore's that was substantially similar to packaging his successor, Bimbo, still uses to sell the bread today.[6] Leland received federal trademark protection for part of the packaging's design in 1999.[7]

---

[4] These helpful background facts are taken from previous briefing and a prior order; Sealed Memorandum Decision and Order Denying Defendants' Mot. for Summ. J.; docket no. 245.

[5] Statement of Elements and Undisputed Material Facts (SOF) at ¶ 1; docket no. 115.

[6] May 16, 2016 Declaration of Christopher D. Smith ("5/16/16 Smith Decl.") at ¶ 3; docket no. 133.

[7] Docket no. 157-7.

When Leland's son, Tyler, was 14 years old, he worked for his father's company.[8] It is, however, disputed whether Tyler was actually involved in making Grandma Sycamore's bread.[9] Bimbo claims that, through years of working at the company, Tyler was well aware of the process for baking Grandma Sycamore's bread. Tyler, however, asserts that he was merely involved in simple tasks such as slicing bread and has no knowledge of the process for making the bread.[10]

In 1998, Leland sold Grandma Sycamore's rights to one of Bimbo's predecessors-in-interest for ▓▓▓▓▓▓.[11] The purchase was a complete transfer of all assets of the business, including all intellectual property, trade secrets, machinery, and equipment relating to the production of Grandma Sycamore's products.[12] As part of the transaction, Leland executed a nondisclosure agreement, which requires, among other things, him to keep confidential and refrain from using Grandma Sycamore's production formulations, manufacturing processes, and trade secrets.[13]

Bimbo asserts trade secret protection over the production process of Grandma Sycamore's white bread.[14] Bimbo claims that the production process is composed of the compilation of ▓▓▓▓▓▓:

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[8] Ex. G, Deposition of Tyler Sycamore, taken October 30, 2013 at p. 11:14-16, 12:10-13; docket no. 199-11.
[9] Id. at p. 12:14-21, 14:15 – 15:1.
[10] Id. at p. 14:1-10.
[11] SOF at ¶ 2; Ex. H, Aaron Bakery Asset Purchase Agreement [Bimbo 1495-1521], (Asset Purchase Agreement), at Bimbo p. 1499-500; docket no. 199.
[12] Id.
[13] Asset Purchase Agreement at p. 1516; docket no. 199-13.
[14] Am. Compl. at ¶¶ 13-14; docket no. 37.
[15] Ex. A, Expert Report of Dr. Russell Carl Hoseney (Hoseney Report) at ¶ 24; docket no. 199-2.



### UNDISPUTED FACTS

U.S. Bakery bought Grandma Emilie's bread brand from Hostess when Hostess went through bankruptcy.19 To re-introduce the Grandma Emilie's brand, U.S. Bakery used Tyler Sycamore's company, Wild Grains Bakery, LLC (Wild Grains), as a contract baker until it could

---

16 *Id.*

17 *Id.* at ¶ 25(a).

18 *Id.* at ¶ 25(b).

19 Mot. for Summ. J. p. i; <u>docket no. 119</u>.

expand its Nampa, Idaho bakery to handle the production.[20] For a period of three months starting in May 2013, Wild Grains baked and wholesaled Grandma Emilie's to U.S. Bakery.[21]

U.S. Bakery re-introduced Grandma Emilie's to the market on May 13, 2013.[22] In June 2013, Bimbo's counsel wrote to U.S. Bakery complaining that Grandma Emilie's packaging infringed on Grandma Sycamore's trade dress.[23] After June 2013 U.S. Bakery changed its labels and informed Bimbo of the change. Bimbo did not respond to U.S. Bakery's letter informing Bimbo of the change in packaging.[24]

The last order of Grandma Emilie's made by Wild Grains was produced on August 10, 2013.[25] U.S. Bakery's facility in Nampa, Idaho then took over production. U.S. Bakery had to develop a new recipe because Wild Grains did not disclose the recipe it was using. U.S. Bakery also changed its labels to avoid infringing on Grandma Sycamore's trade dress.[26]

In May 2013, Jeremy Faull went to work for U.S. Bakery.[27] In November 2013, Faull transferred to the Nampa location and helped U.S. Bakery develop its bread recipe.[28] Although Faull never worked for a company that produced Grandma Sycamore's bread, Faull learned the basic recipe for producing the bread from Leland.[29] Bimbo claims that Faull improperly

---

[20] *Id.*

[21] *Id.* at p. 29.

[22] *Id.*

[23] *Id.* at p. vii; Declaration of Christopher D. Erickson in Support of Defendant U.S. Bakery's Mot. for Summ. J. (Erickson Dec.), docket no. 121.

[24] *Id.*

[25] Ex. I, Deposition of Joseph Robinson, taken on Jan. 14, 2014, at p. 31:22-32:6; docket no. 199-15.

[26] *Id.*

[27] Ex. DD, Deposition Jeremy Faull I, taken January 14, 2014 (Faull I Dep.) at p. 8:19-25 to 9:1-6; docket no. 199-6.

[28] Ex. J, Deposition of Jeremy Faull II, taken December 1, 2015 (Faull II Dep.) at p. 26:19-23; docket no. 199-17.

[29] *Id.* at p. 42:16-24.

misappropriated Grandma Sycamore's recipe for making white bread in transferring it to U.S. Bakery.30

Toward the end of 2015, the Grandma Emilie's brand was discontinued due to poor sales.31 In February 2015, U.S. Bakery relaunched its BreadLover's White product using the same formula and process that it had been using for Grandma Emilie's.32

U.S. Bakery currently has bakeries in Alaska, Idaho, Montana, Oregon, and Washington, and bakery outlets and depots in Northern California, Utah, and Wyoming.33 In July 2012, U.S. Bakery adopted a new tagline for its products, "Fresh. Local. Quality."34 In the spring of 2015, U.S. Bakery began phasing out the tagline from its product packaging.35

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."36 A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."37 In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."38

---

30 Am. Compl at ¶ 24.; docket no. 37.

31 Mot. for Summ. J at p. ix.; docket no. 119.

32 Ex. HH, Deposition of Aaron Whalen II (Whalen II Dep.), taken on May 12, 2015, at p. 36:7-12; docket no. 199-14.

33 Ex. Q, Deposition of Mike Petitt II (Petitt II Dep.) at p. 44:2-6; docket no. 65-17.

34 Ex. 10, Ken Waltos Dep. at p. 60:16-61:5; docket no. 195-10.

35 Ex. Q, Petitt II Dep. at p. 27:8-12; docket no. 65-17.

36 Fed. R. Civ. P. 56(a).

37 *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

38 *Id.*

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[39]

## DISCUSSION

Bimbo claims: (1) U.S. Bakery misappropriated its trade secrets by hiring a competitor's employee and by use of confidential methods of making Grandma Sycamore's bread disclosed by that employee, (2) U.S. Bakery is liable for trade dress infringement because U.S. Bakery mimicked the Grandma Sycamore's trade dress in an effort to confuse consumers into buying Grandma Emilie's when the consumers meant to purchase Grandma Sycamore's, and (3) U.S. Bakery is liable for false advertising based on its "Fresh. Local. Quality" tagline when the products were produced in out of state bakeries and were therefore not local.

U.S. Bakery moves for summary judgment on each claim on the following bases: (1) The individual elements of Bimbo's purported trade secret are generally known; (2) U.S. Bakery uses additional ingredients in its bread recipe; (3) Faull did not owe a duty to Bimbo not to misappropriate trade secrets; (4) U.S. Bakery did not use the trade secret process Faull provided; (5) Bimbo has no evidence of infringement as to multigrain bread; (6) Secondary meaning cannot be established because surveys used by expert Dr. Christensen are inadmissible; (7) U.S. Bakery changed its design and therefore did not infringe on Bimbo's trade dress after January 2014; (8) U.S. Bakery did not receive a profit from its alleged trade dress infringement because its product was not profitable; (9) the term "local" cannot constitute false advertising because it is indefinite and not measurable; (10) U.S. Bakery's "Freshly Baked in Utah" shelf-liners were only used in connection with products baked in Utah; and (11) Bimbo only has evidence of damages suffered in Utah.

---

[39] *Id.* at p. 670-71.

# TRADE SECRET MISAPPROPRIATION

## 1. U.S. Bakery Has Not Shown Bimbo's Purported Trade Secret is Generally Known.

Bimbo asserts trade secret protection over the compilation of ▮▮▮▮▮ in the production process of Grandma Sycamore's bread. These steps include: (▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮).

Utah has adopted the Uniform Trade Secrets Act. Under the act, a trade secret can be a "compilation" that "derives independent value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use."[40] "A compilation can be made up of known elements, if the combination itself is outside the general knowledge and not ascertainable by proper means."[41] The Tenth Circuit has been clear that when the plaintiff asserts trade secret protection under a compilation theory, an analysis of the individual trade secret components in isolation is improper.[42]

U.S. Bakery analyzes each individual element of Bimbo's purported trade secret and argues that the elements in isolation are generally known. While viewing each individual element may be helpful in determining whether the compilation of the elements is generally known, the fact that an individual element is generally known in isolation otherwise proves very little.

Even if U.S. Bakery's piecemeal analysis was valid and it was found that each individual step in the process of producing Grandma Sycamore's bread was generally known, judgment still could not be entered in U.S. Bakery's favor. As the moving party, it is U.S. Bakery's burden to show that the compilation of individually generally known processes is also generally known.

---

[40] Utah Code Ann. § 13-24-2(4)(a).
[41] *Brigham Young Univ. v. Pfizer, Inc.*, 861 F. Supp. 2d 1320, 1323 (D. Utah 2012).
[42] See *Rivendell Forest Prods, Ltd. v. Georgia-Pacific Corp.*, 28 F.3d 1042, 1045 (10th Cir. 1994).

Because U.S. Bakery has not met this burden, summary judgment cannot be granted. Whether each individual element of the trade secret is generally known need not be discussed because U.S. Bakery does not argue that the compilation of elements is generally known. Furthermore, the facts in the record show that despite Grandma Sycamore's existence in the market for many years, competitors have tried to replicate the production process and have failed.[43] At a minimum, that the fact that competitors have not been able to replicate the production process is evidence that the process for making Grandma Sycamore's bread is not generally known.

### 2. The Use of Additional Ingredients Does Not Absolve U.S. Bakery From Trade Secret Misappropriation Liability.

U.S. Bakery argues that even if Bimbo has a protectable trade secret, U.S. Bakery did not misappropriate it because it used different ingredients and processes. For example, U.S. Bakery argues that Grandma Emilie's/BreadLover's White uses ingredients that Grandma Sycamore's does not. Such ingredients include: (1) unsalted butter, (2) soybean oil, (3) honey, (4) wheat gluten, (5) mono/di GMS 90, (6) SSL Emplex, (7) calcium propionate, (8) ICS Softase 699P, and (9) vinegar.[44]

Additionally, U.S. Bakery argues that its bread uses a sponge and dough process, where approximately 60% of the ingredients are mixed together and allowed to ferment for approximately four hours before the remaining ingredients are added and mixed to full development.[45]

"The user of another's trade secret is liable even if he uses it with modifications or improvements upon it effected by his own efforts, so long as the substance of the process used by

---

[43] Ex. DD, Faull I Dep. at p. 19:14-20:20; docket no. 199-6.
[44] Ex. D, Deposition of Larry Soter at ¶ 15; USB0002867-68; docket no. 199-5.
[45] Ex. HH, Whalen II Dep. at p. 47:5-48:21, May 12, 2015; docket no. 199-14.

the actor is derived from the other's secret."[46] "[I]f trade secret law were not flexible enough to encompass modified or even new products that are substantially derived from the trade secret of another, the protections that law provides would be hollow."[47]

Bimbo's purported trade secret is the combination of ███████████████ ████████████████████. Bimbo argues that even though U.S. Bakery may have used additional ingredients, U.S. Bakery still used Bimbo's trade secret. Summary judgment is denied because adding additional ingredients to an otherwise protectable trade secret does not necessarily absolve U.S. Bakery from liability.

U.S. Bakery further argues that the recipe used by Wild Grains for the few months it was wholesaling Grandma Emilie's was also different from Bimbo's purported trade secret. U.S. Bakery states that it wishes to incorporate the arguments made in Wild Grains' motion for summary judgment. Summary judgment is denied because disputed facts remain concerning whether Wild Grains' recipe infringed on Bimbo's purported trade secret.[48]

### 3. Faull Owed a Duty to Bimbo Not to Acquire Information By Improper Means.

U.S. Bakery argues that Faull did not owe Bimbo a duty of confidentiality as to the purported trade secret. U.S. Bakery says Leland had confidentiality obligations, but Faull did not because Faull never worked for Bimbo or any company it acquired.

Faull signed a contract obligating him to maintain confidentiality concerning the production process of Leland's bread.[49] It is, however, unclear whether Faull knew that Leland was under an obligation not to use the trade secret Bimbo acquired.

---

[46] *In re Innovative Constr. Sys., Inc.*, 749 F.2d 875, 887 (7th Cir. 1986).
[47] *Id.*; *Mangren Research & Dev. Corp. v. Nat'l Chem. Co.*, 87 F.3d 937, 944 (7th Cir. 1996).
[48] Sealed Memorandum Decision and Order Denying Defendants' Mot. for Summ. J. at p. 5-9; docket no. 245.
[49] Ex. J, Faull II Dep. at p. 18:2-22, 54:15-24, 66:24-67:5; docket no. 199-6.

Under Utah law, a third party has a duty not to knowingly acquire information by improper means.[50] A party may be liable if the information was "acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use … or derived from or through a person who owed a duty to maintain its secrecy or limit its use."[51] Utah defines misappropriation by improper means as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means."[52]

Whether Faull, and U.S. Bakery, knew that they learned Bimbo's trade secret through improper means is disputed. Although it appears that Faull did not have an express agreement with Bimbo not to use Grandma Sycamore's trade secret, he could have acquired the trade secret through improper means because Leland was under an obligation not to share the recipe. Even though Faull never worked at Bimbo, Utah law prevents a person from knowingly acquiring information through improper means.[53] Summary judgment cannot be granted because even though Faull did not have an express agreement with Bimbo, he had a duty not to knowingly acquire information by improper means. Even in the absence of an express agreement, a duty not to acquire information by improper means nonetheless exists.[54] Whether Faull knew that the information he acquired may have been a protected trade secret is disputed.

### 4. Whether U.S. Bakery Used Bimbo's Purported Trade Secret Is Disputed.

U.S. Bakery argues that whatever process or recipe Faull disclosed to U.S. Bakery, U.S. Bakery did not use it because Faull's recipe did not yield bread that could be put on the market. Bimbo, however, argues that Faull disclosed the four elements of its trade secret and U.S. Bakery

---

[50] Utah Code Ann. § 13-24-2(2).
[51] *CDC Restoration & Const., LC v. Tradesman Contractors, LLC,* 369 P.3d 452, 459 (Utah 2016).
[52] Utah Code Ann. § 13-24-2(2)(a).
[53] *Id.*
[54] *Id.*

ultimately made Grandma Emilie's bread using the four factors.[55] Whether U.S. Bakery used the purported trade secret is disputed and material so summary judgment must be denied on this issue.

## TRADE DRESS INFRINGEMENT AND DILUTION

U.S. Bakery moves for summary judgment on Bimbo's trade dress infringement and dilution claims arguing that: (1) Bimbo has no evidence of infringement as to multigrain bread; (2) Grandma Sycamore's trade dress has not acquired secondary meaning; and (3) potential remedies, if any, should be limited.

### 1. Bimbo Does Not Assert Trade Dress Claims As To Multigrain Bread.

U.S. Bakery argues that Bimbo has no evidence of trade dress infringement as it relates to multigrain bread. Bimbo claims that it never asserted trade dress infringement relating to U.S. Bakery's use of multigrain bread.[56] While the Amended Complaint does refer to multigrain bread,[57] because Bimbo agrees U.S. Bakery did not infringe on Bimbo's trade dress through its use of multigrain bread, summary judgment is granted on this issue.

### 2. Dr. Christensen's Surveys Are Admissible.

To merit protection under the Lanham Act a trade dress must (1) be inherently distinctive, or (2) have acquired distinctiveness through secondary meaning.[58] Proof of secondary meaning requires "direct evidence, such as consumer surveys or testimony from consumers."[59]

---

[55] Ex. A, Hoseney Report at ¶ 30; docket no. 199-2.
[56] Opp. to Summ. J. at p. 14-15; docket no. 200.
[57] Am. Compl. at ¶ 15; docket no. 37.
[58] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992).
[59] *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1148 (10th Cir. 2016).

U.S. Bakery argues that summary judgment should be granted on the issue of secondary meaning because Dr. Christensen's secondary meaning surveys that were conducted for Bimbo are inadmissible. U.S. Bakery's sole argument is that if Dr. Christensen's surveys are inadmissible then summary judgment must be granted.

U.S. Bakery's motion to exclude expert Dr. Christensen's surveys was denied. Therefore, summary judgment because his testimony is inadmissible cannot be granted.[60]

### 3. Summary Judgment Is Granted Only as to Possible Infringement After January 2014.

U.S. Bakery argues that Bimbo only has a claim for trade dress infringement from May through June 2013. After June 2013 U.S. Bakery changed its labels and informed Bimbo of the change. Bimbo did not respond to U.S. Bakery's letter informing Bimbo of the change in packaging.[61] U.S. Bakery argues that Bimbo's failure to respond precludes Bimbo from claiming infringement for the new design.

U.S. Bakery's asserts the common-law defense of estoppel by acquiescence.[62] Under the defense of estoppel by acquiescence, "a plaintiff loses his rights against a defendant if he committed some act amounting to an assurance he would not assert his rights."[63]

U.S. Bakery has not cited authority standing for the proposition that silence can create a successful defense of estoppel by acquiescence.[64] The cases dealing with this defense typically involve an affirmative statement that the plaintiff will not assert its rights.[65]

---

[60] Memorandum Decision and Order Denying Motion to Exclude; docket no. 245.

[61] Mot. for Summ. J. at p. vii; docket no. 119; *See also* Erickson Dec.; docket no. 121.

[62] *See N.A.A.C.P. v. N.A.A.C.P. Legal Def. & Educ. Fund, Inc.,* 753 F.2d 131, 137 (D.C. Cir. 1985).

[63] *Mile High Indus. v. Cohen,* 222 F,3d 845, 858 (10th Cir. 2000) (quoting *Zivich v. Mentor Soccer Club, Inc.,* 1997 WL 203646 at *12 (Ohio Ct. App. 1997).

[64] Mot. for Summ. J. at p. 16-17; docket no. 119.

[65] *See Mile High Indus.,* at 858.

U.S. Bakery has not shown that it was entitled to rely on Bimbo's silence. Bimbo's failure to respond was not an assurance that it would not enforce its rights. U.S. Bakery's letter[66] stated that although it did not believe that it infringed on Bimbo's trade dress, it will change its packaging.[67] Because Bimbo did not give its assurance that it would not assert its rights after receiving the letter, U.S. Bakery is not entitled to summary judgment on its affirmative defense of estoppel by acquiescence. Summary judgment is denied for U.S. Bakery's trade dress infringement after June 2013.

In January 2014, U.S. Bakery changed its product further to make it look more similar to its other products. Bimbo states that it does not claim U.S. Bakery infringed on Bimbo's trade dress after January 2014.[68] Because the Amended Complaint does not have an ending date for the trade dress claims, summary judgment will be entered that U.S. Bakery did not infringe on Bimbo's trade dress after January 2014.

### 4. Damages Will Not Be Limited for Grandma Emilie's Failure to Make a Profit.

U.S. Bakery argues that Bimbo is not entitled to any disgorgement of profits because the Grandma Emilie's bread line was not profitable. Whether alternative damage calculations are appropriate was discussed in the order to exclude expert testimony.[69] That order considered alternative valid calculations of damages other than disgorgement of profits.[70] Summary judgment is therefore denied due to Grandma Emilie's lack of profit.

---

[66] Letter, Christopher D. Erickson to Randel S. Springer, June 18, 2013, Ex. A to Erickson Dec.; docket no. 121-1.
[67] Opp. to Mot. for Summ. J. at p. 15; docket no. 200.
[68] *Id.* at p. 14.
[69] Memorandum Decision and Order Denying Motion to Exclude; docket no. 245.
[70] *Id.*

## FALSE DESIGNATION OF ORIGIN, FALSE ADVERTISING, AND UNFAIR COMPETITION

Bimbo contends that the U.S. Bakery tagline "Fresh. Local. Quality." is false because U.S. Bakery neither maintains a baking facility in the state of Utah nor contracts with a Utah facility to manufacture its bread products. U.S. Bakery argues that it is entitled to summary judgment because the tagline is not sufficiently definite and is not attributable to the product, and because Bimbo lacks admissible evidence to support the claim.

### 1. The Fresh. Local. Quality. Tagline is Sufficiently Definite.

"The Lanham Act prohibits the false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."[71] To succeed on this claim the plaintiff must show: (1) a false or misleading description of fact or representation of fact in a commercial advertisement about its product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the false advertisement was placed in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.[72]

The Lanham Act also bars statements involving the false designation of origin of a product.[73] Words in advertisements that constitute a statement of opinion that are not subject to

---

[71] *Zoller Laboratories LLC v. NBTY Inc.*, 111 Fed. Appx. 978, 982 (10th Cir. 2004) (quoting *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir. 2002).

[72] *See Id.*

[73] 15 U.S.C. 1125.

an objectively ascertainable meaning are, however, generally not actionable as literally false because truth or falsity cannot be measured.[74]

Bimbo only challenges the word "local" in the tagline. U.S. Bakery claims that "local" falls within the category of non-actionable words because the term is vague and not measurable and is therefore merely an opinion. A claim for false designation of origin is often clear. For example, if a company marketed its potatoes as Idaho potatoes, when in fact the potatoes were grown in Utah, then a claim for false designation of origin would exist. Such a claim can easily be proven false.

The United States Department of Agriculture has concluded "[t]hough 'local' has a geographic connotation, there is no consensus on a definition in terms of the distance between production and consumption."[75] Bimbo has provided surveys showing that the tagline "local" was misleading and material to potential purchasers. Because the term local does not carry a set definition, whether the term is false or misleading is a question appropriate for the fact finder. Summary judgment is denied because whether "local" is misleading is a factual question.

### 2. Whether U.S. Bakery Wrongly Used Its Shelf Liners Is Disputed.

In its Amended Complaint, Bimbo claims that U.S. Bakery violated the Lanham Act by using shelf-liners saying "Freshly Baked in Utah" on products that were not baked in Utah.[76] U.S. Bakery claims that this only happened in one instance after one of the products got mis-shelved.[77] U.S. Bakery claims that in all other circumstances those shelf liners were used with its bun products that were baked in Utah. U.S. Bakery therefore claims that it is entitled to summary

---

[74] See Proctor & Gamble Co. v. Kimberly-Clark Corp., 569 F.Supp.2d 796, 802 (E.D. Wis. 2008).
[75] U.S. Dep't of Agriculture, Steve Martinez, Michael Hand, et al., Local Food Systems: Concepts, Impacts, and Issues iii (May 2010), http://www.ers.usda.gov/media/122868/err97_1_.pdf.
[76] Am. Compl. at ¶¶ 29-35.
[77] Mot. for Summ. J. at p. 20; docket no. 119.

judgment because Bimbo cannot prove that U.S. Bakery engaged in this behavior on a systematic basis.

Chris Smith, the director of sales for Bimbo, testifies that he has seen the shelf liners used in Utah in 2014 during a time that he understood that U.S. Bakery did not have a bakery in the state.[78] Smith's testimony creates a genuine dispute as to a material fact and precludes summary judgment on this issue.

### 3. The Admissibility of Damages Has Been Decided.

U.S. Bakery moves for summary judgment seeking that the issue of damages be limited to the state of Utah. This issue has been addressed in detail in the Order on Motions to Exclude Expert Witnesses which found that Dr. Christensen's damage calculations are limited to Utah and southern Idaho.[79]

### ORDER

Defendant U.S. Bakery's motion for summary judgment is GRANTED as to the Trade Dress Infringement claims pertaining to U.S. Bakery's whole grain bread, and its packaging after January 2014. The remainder of U.S. Bakery's motion for summary judgment is DENIED.[80]

Within fourteen days after filing of this order, the parties shall send a redacted version of this document to dj.nuffer@utd.uscourts.gov. The redacted version shall obscure all protected information and shall be a text-based PDF. If the redactions are acceptable to the court, the

---

[78] 5/16/16 Smith Decl. at ¶ 8; docket no. 133.
[79] Order on Motion to Exclude at p. 8; docket no. 244.
[80] Docket no. 119.

redacted version will be placed on the docket.

Signed April 28, 2017.

<div style="text-align: right;">

BY THE COURT

_____
District Judge David Nuffer

</div>

United States District Court
for the
District of Utah
April 28, 2017

\*\*\*\*\*\*MAILING CERTIFICATE OF THE CLERK\*\*\*\*\*\*

RE: Bimbo Bakeries USA v Leland Sycamore, et al.
2:13cv749 DN-DBP

Charles A. Burke
WOMBLE CARLYLE SANDRIDGE & RICE (WINSTON-SALEM)
ONE W FOURTH ST
WINSTON-SALEM, NC 27101

Raymond J. Etcheverry
PARSONS BEHLE & LATIMER (UT)
PO BOX 45898
SALT LAKE CITY, UT 84145-0898

Sean N. Egan
PARKSIDE TOWER STE 950
215 S STATE ST
SALT LAKE CITY, UT 84111-2374

Andrew G. Deiss
DEISS LAW PC
10 W 100 S STE 425
SALT LAKE CITY, UT 84101

Christopher S. Hill
KIRTON MCCONKIE
PO BOX 45120
SALT LAKE CITY, UT 84145-0120

Eric C. Beach
TONKON TORP LLP
888 SW FIFTH AVE STE 1600
PORTLAND, OR 97204

Aimee Trujillo,