Christopher S. Hill
chill@kmclaw.com
Matthew Richards
mrichards@kmclaw.com
KIRTON McCONKIE
36 S. State Street, #1900
Salt Lake City, UT  84111
Telephone:  (801) 328-3600
Facsimile:  (801) 212-2019

Steven M. Wilker (Admitted *Pro Hac Vice*)
steven.wilker@tonkon.com
Christopher J. Pallanch (Admitted *Pro Hac Vice*)
Chris.pallanch@tonkon.com
Eric C. Beach (Admitted *Pro Hac Vice*)
eric.beach@tonkon.com
TONKON TORP LLP
1600 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204
Telephone:  (503) 221-1440
Facsimile:  (503) 274-8779

*Attorneys for Defendant United States Bakery, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH CENTRAL DIVISION

---

| | |
|---|---|
| **BIMBO BAKERIES USA, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) **DEFENDANTS TYLER SYCAMORE,** |
| | ) **WILD GRAINS BAKERY, LLC., AND** |
| | ) **UNITED STATES BAKERY, INC.** |
| **v.** | ) **PROPOSED JURY INSTRUCTIONS** |
| | ) |
| **LELAND SYCAMORE, TYLER** | ) |
| **SYCAMORE, WILD GRAINS BAKERY,** | ) **Case No. 2:13-cv-00749-DN-DBP** |
| **LLC, AND UNITED STATES BAKERY,** | ) |
| **INC.,** | ) **Judge David Nuffer** |
| | ) |
| **Defendants.** | ) **Magistrate Judge Dustin B. Pead** |
| | ) |

---

Defendant Tyler Sycamore ("Sycamore"), Wild Grains Bakery, LLC ("Wild Grains"), and United States Bakery ("USB") by and through undersigned counsel, hereby submit the following proposed Jury Instructions.

| No. | Title | Source | Status |
|-----|-------|--------|--------|
| 25 | Misappropriation of Trade Secrets – Essential Elements | Wild Grains Instruction No. 1 | |
| 26 | "Trade Secrets" - Defined | (Combination of) USB Instruction No. 28 Bimbo Instruction No. 25 Wild Grains Instruction No. 4 | |
| 27 | Secrecy | Bimbo Instruction No. 26 (modified) | |
| 28 | Reasonable Measures to Protect Secrecy | Bimbo Instruction No. 27 (modified) | |
| 29 | Misappropriation | Bimbo Instruction No. 28 (modified) | |
| 30 | Improper Means | Wild Grains Instruction No. 2 | |
| 31 | Damages for Trade Secret Misappropriation | (Combination of) Bimbo Instruction No. 32 Wild Grains Instruction No. 6 | |
| 32 | Damages for Trade Secret Misappropriation – Actual Losses | Bimbo Instruction No. 33 (modified) | |
| 33 | Damages for Trade Secret Misappropriation – Defendants' Benefit | Bimbo Instruction No. 34 (modified) | |
| 34 | Trade Secret Misappropriation – Willfulness | Bimbo Instruction No. 36 (modified) | |
| 35 | Theory of Unfair Competition & False Advertising | (Combination of) USB Instruction No. 33 Bimbo Instruction No. 28 | |
| 36 | False Advertising – Essential Elements | Bimbo Instruction No. 39 (modified) | |
| 37 | Materiality | Bimbo Instruction No. 40 (modified) | |
| 38 | Damages for False Advertising | Bimbo Instruction No. 41 (modified) | |
| 39 | Damages for False Advertising - Profits | Bimbo Instruction No. 42 (modified) | |
| 40 | False Advertising – Willfulness | Bimbo Instruction No. 43 (modified) | |
| 41 | Subsequent Remedial Measures | USB Instruction No. 36 | |
| 42 | Damages for Trade Secret Misappropriation – Profits | USB Instruction No. 34 | |

| No. | Title | Source | Status |
|-----|-------|--------|--------|
| 43 | Damages for Trade Secret Misappropriation – Time Period for Damages | USB Instruction No. 36 | |

**TYLER SYCAMORE, WILDGRAINS, AND USB PROPOSED INSTRUCTION NO. 25**

**MISAPPROPRIATION OF TRADE SECRETS**

**ESSENTIAL ELEMENTS[1]**

**(Source: Wild Grains Instruction No. 1)**

Plaintiff Bimbo Bakeries USA, Inc. ("Plaintiff") claims that Leland Sycamore, Tyler Sycamore, Wild Grains, and USB misappropriated Plaintiff's recipe and process for making Grandma Sycamore's white bread.

To recover on its misappropriation of trade secret claim, Plaintiff must prove *each* of the following elements by a preponderance of the evidence:

1.       Plaintiff's recipe and process is a trade secret;

2.       Each defendant misappropriated Plaintiff's trade secret

(a)       By acquiring the trade secret when that defendant knew or had reason to know that it was acquired by improper means; or

(b)       By disclosing or using the trade secret without express or implied consent

(i)       using improper means to acquire the trade secret; or

(ii)       when, at the time of disclosure or use, the defendant knew or had reason to know the trade secret was derived from or through a person who used improper means to acquire it, or acquired it under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from a person who owed a duty to Plaintiff to maintain its secrecy or limit its use; or

(iii)       when the defendant knew or had reason to know that Plaintiff's recipe and process was a trade secret and that they acquired knowledge of it by accident or mistake and used it anyway.

---

[1] Reference: Utah Code Ann. § 13-24-2(2).

     3.      Plaintiff suffered harm as a direct and proximate result of a defendant's use of the trade secret, or a defendant obtained benefit from the use of the trade secret.

**TYLER SYCAMORE, WILDGRAINS, AND USB PROPOSED INSTRUCTION NO. 26**

**"TRADE SECRETS" -- DEFINED[2]**

**(Source: Combination of USB Instruction No. 28, Bimbo instruction No. 25, and Wild Grains Instruction No. 4)**

For purposes of Plaintiff's claim, you must first decide whether Plaintiff possessed protectable trade secrets.  A trade secret means information, including a formula, pattern, compilation, program, device, method, technique, or process that:

a.     Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

b.     Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

A compilation of information that is made up of known elements can be a trade secret, so long as the combination itself is outside the general knowledge and not ascertainable by proper means.  In determining whether a compilation of information is a trade secret, it is improper to analyze whether each individual component of the compilation is a trade secret in isolation.

Whether something is generally known or readily ascertainable does not mean that the information is generally known and readily ascertainable to the general public, but, based on the Defendants' knowledge and experience, whether the information was generally known or readily ascertainable in the industry.

---

[2] *Utah Code Ann.* § 13-24-2(4); *Cordell v. Berger,* 2001 U.S. Dist. LEXIS 20049 (D. Utah Nov. 27, 2001); *Brigham Young Univ. v. Pfizer, Inc.,* 861 F. Supp. 2d 1320, 1323 (D. Utah 2012); *Utah Med. Prods. Inc. v. Clinical Innovations Assocs., Inc.,* 79 F.Supp.2d 1290, 1311-12 (D. Utah 1999); *Rivendell Forest Prods., Ltd., v. Georgia-Pacific Corp*., 28 F.3d 1042, 1045 (10th Cir. 1994); *CDC Restoration & Constr. LC v. Tradesmen Contractors, LLC,* 274 P.3d 317, 325 (Utah Ct. App. 2012); *Microbial Research v. Muna,* 625 P.2d 690, 700 (Utah 1981); *Medspring Grp., Inc. v. Feng,* 368 F. Supp. 2d 1270, 1278-79 (D. Utah 2005); *Farm Bureau Life Ins. Co. v. Am. Nat'l Ins. Co.*, 505 F. Supp. 2d 1178, 1185 (D. Utah 2007); Order on Motion for Summary Judgment, March 29, 2017.

Whether information is generally known in the industry depends upon the Defendants' knowledge and experience, and whether a Defendant could have ascertained the alleged trade secret through proper means.

Certain information loses protection as a trade secret if it has been merged into a person's own faculties, skill, and experience. There must be a delineation between the general knowledge and experience of USB, Wild Grains, Tyler Sycamore, and Leland Sycamore and Plaintiff's confidential information.[3]

If a defendant could reverse-engineer the components of a formula or process by performing basic research, or if the information is available from public sources, it cannot constitute a trade secret.[4]

The burden of demonstrating the existence of a trade secret is on Plaintiff, and there is no presumption in its favor.[5]

---

[3] *CDC Restoration & Construc., LC v. Tradesmen Contractors, LLC*, 2012 UT App 60, ¶ 23, 274 P.3d 317.
[4] *Microbial Research v. Muna*, 625 P.2d 690, 700 (Utah 1981); *Medspring Group, Inc. v. Feng*, 368 F. Supp. 2d 1270, 1278-79 (D. Utah 2005).
[5] *Farm Bureau Life Ins. Co. v. Am. Nat' Ins. Co.*, 505 F. Supp. 2d 1178, 1185 (D. Utah 2007).

**TYLER SYCAMORE, WILDGRAINS, AND USB PROPOSED INSTRUCTION NO. 27**

**SECRECY[6]**

**(Source: Bimbo Instruction No. 26 (modified))**

To determine that a claimed trade secret exists you must first decide whether the information was indeed secret.  Matters that are generally known to the public at large or to people in a trade or business are not trade secrets.  Nor can information be considered a trade secret if it would be ascertainable with reasonable ease from publicly available information.  In addition, a trade secret must possess enough originality so that it can be distinguished from everyday knowledge.  A former employee may use general knowledge, experience, and skill gained during his or her work for the former employer, as long as she or he does not disclose or use any the former employer's trade secrets.

Plaintiff must demonstrate that the information was known only to it or a few others who have also treated the claimed information as a trade secret.  Absolute secrecy is not necessary.

In determining whether Plaintiff has proven by a preponderance of the evidence that it possessed specific, identifiable protectable trade secrets, you may consider the following factors:

a.      The extent to which the information was known outside of Plaintiff's business;

b.      The extent to which the information was known by employees and other involved in Plaintiff's business;

c.      The extent of measures taken by Plaintiff to guard the secrecy of the information;

d.      The value of the information to Plaintiff and their competitors;

e.      The amount of effort or money expended in developing the information; and

f.      The ease or difficulty with which the information could be properly acquired or duplicated by others.

---

[6] *Synthesis of ABA Model Instructions* §§ 8.3, 8.3.1 and *FJPI* § 127.11; *Environtech Corp. v. Callahan*, 872 F.2d 487, 496-97 (Utah Ct. App. 1994)..

**TYLER SYCAMORE, WILDGRAINS, AND USB PROPOSED INSTRUCTION NO. 28**

**REASONABLE MEASURES TO PROTECT SECRECY[7]**

**(Source: Bimbo Instruction No. 27 (modified))**

Plaintiff must prove that it took reasonable measures to protect the secrecy of its claimed trade secrets.  Factors you may wish to consider in evaluating this point include:

1.      Whether Plaintiff made it a practice to inform their employees or others involved with their business, that the information was a trade secret and/or was to be kept confidential;

2.      Whether Plaintiff required employees or others involved with their business, to sign confidentiality agreements regarding the claimed information;

3.      Whether Plaintiff restricted access to the information on a "need to know" basis; and

4.      Whether Plaintiff generally maintained tight security to protect the alleged trade secrets, including restrictions as to non-employee and employee access, and did not voluntarily disclose it to others, except in confidence.

---

[7] *ABA Model Instructions* § 8.3.2  (modified by adding the term "claimed" in the first sentence, omitting the second and last sentence in paragraph 1, and added the first clauses in the first and second paragraphs of the instructions and the first clause in the fourth paragraph of the instruction.

**TYLER SYCAMORE, WILDGRAINS, AND USB PROPOSED INSTRUCTION NO. 29**

**MISAPPROPRIATION[8]**

**(Source: Bimbo Instruction No. 28 (modified))**

"Misappropriation" means:

(a) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b) disclosure or use of a trade secret of another by a person who used improper means to acquire knowledge of the trade secret; or

(c) disclosure or use of a trade secret of another by a person who , at the time of the disclosure, or use knew or had reason to know that his knowledge of the trade secret was:

   (1) derived from or through a person who had utilized improper means to acquire it;

   (2) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

   (3) derived from or through a person who owed a duty to Plaintiff to maintain its secrecy or limit its use.

---

[8] *Utah Code Ann.* § 13-24-2(a).

**TYLER SYCAMORE, WILDGRAINS, AND USB PROPOSED INSTRUCTION NO. 30**

**IMPROPER MEANS**

**(Source: Wild Grains Instruction No. 2)**

"Improper means" includes theft, bribery, misrepresentation, breach or a duty to maintain secrecy, or inducement of a breach of duty to maintain secrecy, or espionage through electronic or other means.[9]

---

[9] Utah Code Ann. 13-24-2(1).

**TYLER SYCAMORE, WILDGRAINS, AND USB PROPOSED INSTRUCTION NO. 31**

**DAMAGES FOR TRADE SECRET MISAPPROPRIATION[10]**

**(Source: Combination of Bimbo Instruction No. 32 and Wild Grains Instruction No. 6)**

If you should find by the preponderance of the evidence presented that one or more of the defendants have misappropriated Plaintiff's trade secrets, you must then determine the amount of damages, if any, Plaintiff is entitled to receive.

The fact that I am instructing you on the subject of damages does not mean that Plaintiff is or is not entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you if you find from a fair preponderance of the evidence Plaintiff is entitled to recover damages.

Plaintiff has the burden of establishing the amount of actual damages, if any, that were suffered. Damages must be determined with reasonable certainty from the evidence presented. Mathematical precision need not be shown, but you are not to guess or speculate as to damages.

You may only award an amount that would fairly compensate Plaintiff for damages proximately caused by a defendant's use of trade secrets. You may consider, in awarding such actual damages, the cost the defendant would have incurred in acquiring the same information or trade secrets through its own experimentation or through other lawful means.

If you decide that any defendant is liable for misappropriating Plaintiff's recipe and process, then you should consider whether Plaintiff has suffered monetary damages as a result of each defendant's misappropriation. If you determine a defendant caused Plaintiff to suffer damages, you must determine the amount of damages that defendant individually caused

---

[10] 3 FED. JURY PRAC. & INSTR. § 127:14 (6th ed.).

Plaintiff. You should address the issue of damages, however, only if you first determine that the individual defendant is liable to Plaintiff on any of bases we have discussed previously.

As with liability, Plaintiff has the burden to prove that it has suffered harm due to the wrongful conduct of one or more of the defendants and the amount of damages it has suffered due to the acts of each defendant individually.[11]

---

[11] Reference: Model Utah Jury Instructions, Second Edition (MUJI 2d) CV2001 (modified); Model Jury Instruction § 8.6 (ABA 2005) (modified).

**TYLER SYCAMORE, WILDGRAINS, AND USB PROPOSED INSTRUCTION NO. 32**

**DAMAGES FOR TRADE SECRET MISAPPROPRIATION – ACTUAL LOSSES[12]**

**(Source: Bimbo Instruction No. 33 (modified))**

Plaintiff claims that it has suffered actual monetary loss from misuse of its trade secrets. This actual loss can include both out-of-pocket expenses and lost profits. If you find, for example, that Plaintiff would have realized profits from using trade secrets in its business that it has lost due to the wrongful conduct of a defendant, then you may measure damages by the amount of such lost profits for the particular periods of time the trade secret was improperly used or disclosed.

---

[12] *ABA Model Instructions* § 8.6.1.

**TYLER SYCAMORE, WILDGRAINS, AND USB PROPOSED INSTRUCTION NO. 33**

**DAMAGES FOR TRADE SECRET MISAPPROPRIATION –
DEFENDANTS' BENEFIT[13]**

**(Source: Bimbo Instruction No. 34 (modified))**

In measuring plaintiff's damages, you may also consider what benefit a defendant may have gained from misuse of Plaintiff's trade secrets. Regardless of whether you find that Plaintiff itself suffered losses, if you find that a defendant benefited from using a trade secret belonging to Plaintiff, then you may award (against that defendant) the monetary value that you attribute to those benefits as the measure of plaintiff's damage.

It may be that only one of these measures of damages (i.e., plaintiff's losses or defendants' benefit) is necessary to fully compensate Plaintiff. However, you are also entitled to combine both Plaintiff's losses and a defendant's gains in determining the measure of damages to award plaintiff, so long as you follow the guidelines I am about to give you.

These two approaches to damages—plaintiff's losses and a defendant's gains—while different in some respects, may overlap. That is, it may be that a defendant profited from particular sales that Plaintiff would have made had defendant not competed using the trade secrets. In that situation, the two ways of approaching damages that I have just described would measure the identical damages--whether viewed as Plaintiff's loss or a defendant's gain. The law does not permit a plaintiff to recover twice for the same damages. Thus, you may include as damages *both* plaintiff's lost profits *and* a defendant's gain *only* if and to the extent that they do not overlap in this way. Stated in other words, if you were to include lost sales in calculating

---

[13] *ABA Model Instructions* § 8.6.2.

14

Plaintiff's losses because a defendant made the sales, then the value of those same sales should

be excluded from any calculation of any defendant's gains that you may make.

**TYLER SYCAMORE, WILDGRAINS, AND USB PROPOSED INSTRUCTION NO. 34**

**TRADE SECRET MISAPPROPRIATION – WILLFULNESS[14]**

**(Source: Bimbo Instruction No. 36 (modified))**

Plaintiff also claims that each defendant willfully committed trade secret misappropriation.  A defendant commits "willful" trade secret misappropriation when that defendant knowingly and purposefully misappropriates a trade secret for itself, or when the defendant reasonably should have known that the information it used from the plaintiff was a trade secret still and used that information.

An act is willfully done if done voluntarily and intentionally and with the specific intent to commit such an act. An act is maliciously done if prompted or accompanied by ill will or such gross indifference to the rights of others as to amount to a willful act done intentionally without just cause or excuse.

Plaintiff must prove "willfulness" by clear and convincing evidence.[15]  "Clear and convincing" evidence means that the party must persuade you, by the evidence, to the point that there remains no serious or substantial doubt as to the truth of the fact.  Proof by clear and convincing evidence requires a greater degree of persuasion than proof by a preponderance of the evidence but less than proof beyond a reasonable doubt.[16]

---

[14] Civil Pattern Jury Instructions, § 10.1 (11th Cir. 2013) (modified).

[15] Reference: Utah Code Ann. § 13-24-4(2); Utah Dept. of Transp. v. Osguthorpe, 892 P.2d 4, 8 (Utah 1995); Golding v. Ashely Cent. Irr. Co., 793 P.2d 897, 901 (Utah 1990); Smith v. Fairfax Realty, Inc., 2003 UT 41, ¶ 27, 82 P.3d 1064.

**[16]** MUJI 2d CV 118.

**TYLER SYCAMORE, WILDGRAINS, AND USB PROPOSED INSTRUCTION NO. 35**

**THEORY OF FALSE ADVERTISING**

**(Source: Combination of USB Instruction No. 33 and Bimbo Instruction No. 28)**

In this case, the Plaintiff seeks to recover money damages from United States Bakery, Inc. ("USB"), for what Plaintiff claims to be unfair competition and false advertising (1) in the use of the word "local," in connection with a company tagline saying "Fresh. Local. Quality."; and (2) in the use of the term "Freshly Baked in Utah" in connection with shelf liners on display in grocery store aisles.  Plaintiff contends that the use of the word "local" in the company tagline caused consumer confusion.  Plaintiff also contends that the use of shelf liners saying "Freshly Baked in Utah" was literally false.  USB denies those contentions.

17

**TYLER SYCAMORE, WILDGRAINS, AND USB PROPOSED INSTRUCTION NO. 36**

**FALSE ADVERTISING -- ESSENTIAL ELEMENTS[17]**

**(Source: Bimbo Instruction No. 39 (modified))**

To prove its claim, Plaintiff must prove the following facts by a preponderance of the evidence:

1.   USB made material false or misleading representations of fact in connection with the advertising or promotion of its products;

2.   the representations were made in commerce;

3.   the representations are likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the products; and

4.   Plaintiff has been, or is likely to be, injured as a result of the representations.

There are two ways in which USB's advertisement could be false or misleading:  it may be literally false (which is what Plaintiff alleges with the "Freshly Baked in Utah" shelf-liners), either on its face or be necessary implication; or it may be literally true or ambiguous and likely to mislead or confuse consumers (which is what Plaintiff alleges with the "Fresh. Local. Quality." tagline).

Additionally, Plaintiff must prove the materiality of any advertising by showing that USB's deception is likely to influence consumers' purchasing decisions.

---

[17] Civil Pattern Jury Instructions, § 10.8 (11th Cir. 2013);*see also Intermountain Stroke Center, Inc. v. Intermountain Health Care, Inc.*, 638 Fed. Appx. 778, 785 (10th Cir. 2016); *General Steel Domestic Sales, LLC v. Chumley*, 627 Fed. App'x. 682, 685-86 (10th Cir. 2015); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819-20 (7th Cir. 1999); *Zoller Laboratories, LLC, v. NBTY, Inc.*, 111 Fed. Appx. 978, 982 (10th Cir. 2004); *Vitamins Online, Inc. v. Hartwise, Inc.*, 2016 WL 538458, at *5-8 (D. Utah Feb. 9, 2016); *Procter & Gamble Co. v. Haugen*, 627 F. Supp. 2d 1287, 1290-93 (D. Utah 2008).

**TYLER SYCAMORE, WILDGRAINS, AND USB PROPOSED INSTRUCTION NO. 37**

**MATERIALITY[18]**

**(Source: Bimbo Instruction No. 40 (modified))**

In the context of a false advertising claim, "materiality" means that the false or misleading statement is likely to influence the purchasing decision of a customer.

If you find that USB's advertisements were literally false, you are to presume that USB's representations are material for those statements only, unless USB rebuts the presumption.

There is no such presumption of "materiality" in connection with statements that are misleading in context or that result in consumer confusion.

---

[18] *See Gen. Steel Domestic Sales, LLC v. Chumley*, 627 F. App'x 682, 685 (10th Cir. 2015); *Pizza Hut, Inc. v. Papa John's Int'l*, Inc. 227 F.3d 489, 495 (5th Cir. 2000); *see also Vincent v. Utah Plastic Surgery Soc.*, 621 F.App'x 546, 549 n. 6 (10th Cir. 2015) (citing Pizza Hut in noting that whether a statement is literally false or misleading is "relevant because a plaintiff proceeding under an implied falsity theory 'must also introduce evidence of the statement's impact on consumers'").

**TYLER SYCAMORE, WILDGRAINS, AND USB PROPOSED INSTRUCTION NO. 38**

**DAMAGES FOR FALSE ADVERTISING[19]**

**(Source: Bimbo Instruction No. 41 (modified))**

If you should find by the preponderance of the evidence presented that USB has committed false advertisement, you must then determine the amount of damages, if any, Plaintiff is entitled to receive.  These damages, if any, must be separated depending upon whether they came from the "Freshly Baked in Utah" shelf-liners or the "Fresh. Local. Quality." tagline.

The fact I am instructing you on the subject of damages does not mean that Plaintiff is or is not entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you if you find from a fair preponderance of the evidence Plaintiff is entitled to recover damages.

Plaintiff has the burden of establishing the amount of actual damages, if any, that were suffered. Damages must be determined with reasonable certainty from the evidence presented. Mathematical precision need not be shown, but you are not to guess or speculate as to damages.

You may only award an amount that would fairly compensate Plaintiff for damages proximately caused by USB's false advertisements. You may consider, in awarding such actual damages, the cost USB would have incurred in using accurate advertisements or advertising through other lawful means, or you may consider the actual view of what Plaintiff was not able to sell due to USB's false advertisement.

---

[19] 3 FED. JURY PRAC. & INSTR. § 127:14 (6th ed.) ); *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1161-62 (10th Cir. 2013); *Procter & Gamble Co. v. Haugen*, 627 F. Supp. 2d 1287, 1290-91 (D. Utah 2008); *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 525 (10th Cir. 1987); *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1241 (10th Cir. 2006)..

20

**TYLER SYCAMORE, WILDGRAINS, AND USB PROPOSED INSTRUCTION NO. 39**

**DAMAGES FOR FALSE ADVERTISING – PROFITS[20]**

**(Source: Bimbo Instruction No. 42 (modified))**

In addition to actual damages Plaintiff may be entitled to any profits earned by USB that are attributable to the unfair competition and false advertising, which the plaintiff proves by a preponderance of the evidence.  You may not, however, include in any award of profits any amount that you included in determining actual damages.

Profit is determined by deducting all appropriate expenses from gross revenue.

Gross revenue is all of a defendant's receipts from using false advertising in the sale of a product.  Plaintiff has the burden of proving USB's gross revenue by a preponderance of the evidence.

Expenses to be deducted from gross revenue are all production costs incurred in producing the gross revenue.  USB has the burden of proving any deductible expenses by a preponderance of the evidence.

---

[20] 3 FED. JURY PRAC. & INSTR. § 159:92 (6th ed.) (modified).

21

**TYLER SYCAMORE, WILDGRAINS, AND USB PROPOSED INSTRUCTION NO. 40**

**FALSE ADVERTISING – WILLFULNESS[21]**

**(Source: Bimbo Instruction No. 43 (modified))**

Plaintiff also claims that USB's false advertising was willful.  USB denies that claim.  A defendant commits "willful" false advertising when that defendant knowingly and purposefully made the statements constituting false advertising, or when the defendant reasonably should have known that the statements constituted false advertising.

---

[21] Civil Pattern Jury Instructions, § 10.1 (11th Cir. 2013) (modified).

**TYLER SYCAMORE, WILDGRAINS, AND USB PROPOSED INSTRUCTION NO. 41**

**SUBSEQUENT REMEDIAL MEASURES[22]**

**(Source: USB Instruction No. 36)**

When measures are taken that would have made an earlier alleged injury or ham less likely to occur, evidence of the subsequent measures does not establish negligence or culpable conduct.

---

[22] Fed Rule of Evidence 407.

**TYLER SYCAMORE, WILDGRAINS, AND USB PROPOSED INSTRUCTION NO. 42**

**DAMAGES FOR TRADE SECRET MISAPPROPRIATION -- PROFITS[23]**

**(USB Proposed Instruction No. 34)**

In addition to actual damages, Plaintiff may be entitled to any profits earned by a defendant that are attributable to the misappropriation.  However, you may not include in an award of profits any amount that you included in determining actual damages.

Profit is determined by deducting all appropriate expenses from gross revenue.

Gross revenue is all of the revenue received from the sale of bakery products which rely upon a defendant's use of trade secrets.  Plaintiff has the burden of proving each defendant's gross revenue by a preponderance of the evidence.

Expenses to be deducted from gross revenue are all production costs incurred in producing the gross revenue.  Each defendant has the burden of proving its deductible expenses by a preponderance of the evidence.

---

[23] 3 FED. JURY PRAC. & INSTR. § 159:92 (6th ed.) (modified).

**TYLER SYCAMORE, WILDGRAINS, AND USB PROPOSED INSTRUCTION NO. 43**

**DAMAGES FOR TRADE SECRET MISAPPROPRIATION –
TIME PERIOD FOR DAMAGES[24]**

**(Source: USB Instruction No. 36)**

Plaintiff would be entitled to damages running only for as long as (1) you find that plaintiff's trade secret would be entitled to protection, plus (2) an additional period, if any, that you find that the trade secret afforded defendant a competitive advantage, such as providing defendant a head start in its business.

---

[24] *ABA Model Instructions* § 8.6.4.

CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of August, 2017, the foregoing **DEFENDANTS TYLER SYCAMORE, WILD GRAINS BAKERY, LLC., AND UNITED STATES BAKERY, INC. PROPOSED JURY INSTRUCTIONS** was electronically filed with the Clerk of the Court, District of Utah, using the CM/ECF system and served on the following:

Charles A. Burke
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
One West Fourth Street
Winston-Salem, NC  27101
cburke@wcsr.com
*Pro Hac Vice Attorneys for Plaintiff Bimbo Bakeries USA, Inc.*

David R. Boaz
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
555 Fayetteville St., Suite 1100
Raleigh, NC 27601
dboaz@wcsr.com
*Pro Hac Vice Attorneys for Plaintiff Bimbo Bakeries USA, Inc.*

Raymond J. Etcheverry
Margaret N. McGann
Juliette P. White
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
P.O. Box 45898
Salt Lake City, UT  84145-0898
ecf@parsonsbehle.com
retcheverry@parsonsbehle.com
mmcgann@parsonsbehle.com
jwhite@parsonsbehle.com
*Attorneys for Plaintiff Bimbo Bakeries USA, Inc.*

Sean N. Egan
Parkside Tower – Suite 950
215 S State Street
Salt Lake City, UT 84111-2374
seannegan@sneganlaw.com
*Attorney for Defendant Leland Sycamore*

[CONTINUED ON NEXT PAGE]

1

Andrew G. Deiss
Diana F. Bradley
Billie Siddoway
DEISS LAW PC
10 W. 100 S Ste 700
Salt Lake City, UT 84101
adeiss@deisslaw.com
dbradley@deisslaw.com
bsiddoway@deisslaw.com
   *Attorney for Defendants Tyler Sycamore and Wild Grains Bakery, LLC*


                              */s/ Ruth Betancourt Ortiz, Legal Assistant*


000632/00249/8298555v3

2