RAYMOND J. ETCHEVERRY (1010)
MARGARET NIVER MCGANN (7951)
JULIETTE P. WHITE (9616)
PARSONS BEHLE & LATIMER
One Utah Center
201 South Main Street, Suite 1800
Salt Lake City, UT  84111
Telephone:  (801) 532-1234
Facsimile:  (801) 536-6111

CHARLES A. BURKE (Admitted *pro hac vice*)
DAVID R. BOAZ (Admitted *pro hac vice*)
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
One West Fourth Street
Winston-Salem, NC  27101
Telephone:  (336) 721-3625
Facsimile:  (336) 733-8416

*Attorneys for Plaintiff Bimbo Bakeries USA, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| **BIMBO BAKERIES USA, INC.,** | ) |
| | ) |
| | ) **PLAINTIFF'S PROPOSED JURY** |
| **Plaintiff,** | ) **INSTRUCTIONS** |
| | ) |
| **v.** | ) |
| | ) **Case No. 2:13-cv-00749-DN-DBP** |
| **LELAND SYCAMORE, TYLER** | ) |
| **SYCAMORE, WILD GRAINS BAKERY,** | ) **Judge David Nuffer** |
| **LLC, AND UNITED STATES BAKERY,** | ) |
| **INC.,** | ) **Magistrate Judge Dustin B. Pead** |
| | ) |
| **Defendants.** | ) |
| | ) |

1

| No. | Title | Source | Status |
|-----|-------|--------|--------|
| 1 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 2 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 2 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 3 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 3 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 5 | The parties have not reached an agreement. |
| 4 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 6 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 5 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 7 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 6 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 8 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 7 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 9 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 8 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 10 | The parties have not reached an agreement. |
| 9 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 11 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 10 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 12 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 11 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 13 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |

| No. | Title | Source | Status |
|-----|-------|--------|--------|
| 12 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 14 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 13 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 15 | The parties have not reached an agreement. |
| 14 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 16 (modified) | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 15 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 17 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 16 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 19 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 17 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 20 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 18 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 21 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 19 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 22 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 20 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 23 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 21 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 24 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 22 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 25 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |

| No. | Title | Source | Status |
|---|---|---|---|
| 23 | Misappropriation of Trade Secrets – Essential Elements | Utah Code Ann. § 13-24-2(2) | The parties have not reached an agreement. |
| 24 | "Trade Secrets" - Defined | Utah Code Ann. § 13-24-2(4); and cited cases | The parties have not reached an agreement. |
| 25 | Secrecy | ABA Model Instructions §§ 8.3, 8.3.1; and Federal Jury Practice Instructions § 127.11 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 26 | Reasonable Measures to Protect Secrecy | ABA Model Instructions § 8.3.2 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 27 | Acquisition by Defendant | Utah Code Ann. § 13-24-2(a); and ABA Model Instructions § 8.4 | BBUSA and USB agree to this instruction. Tyler Sycamore and Wild Grains do not. Leland Sycamore has not provided a position. |
| 28 | Improper Means | Utah Code Ann. §13-24-2(1) | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 29 | Improper Means – Other Circumstances where Duty Imposed by Law | ABA Model Instructions § 8.4.3. | The parties have not reached an agreement. |
| 30 | Damages for Trade Secret Misappropriation | Federal Jury Practice Instructions § 127:14; Model Utah Jury Instructions, Second Edition (MUJI 2d) CV2001 (modified); Model Jury Instruction § 8.6 (ABA 2005) (modified) | The parties have not reached an agreement. |
| 31 | Damages for Trade Secret Misappropriation – Actual Losses | ABA Model Instructions § 8.6.1 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 32 | Damages for Trade Secret Misappropriation – Defendants' Benefit | ABA Model Instructions § 8.6.2 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 33 | Damages for Trade Secret Misappropriation – Profits | Federal Jury Practice and Instructions §159.92(modified) | The parties have not reached an agreement. |

| No. | Title | Source | Status |
|---|---|---|---|
| 34 | Trade Secret Misappropriation – Willfulness | Pattern Jury Instructions, § 10.1 (11th Cir. 2013); Utah Code Ann. § 13-24-4(2); MUJI 2d CV 118; and cases cited | The parties have not reached an agreement. |
| 35 | Damages for Trade Secret Misappropriation – Time Period for Damages | ABA Model Instructions § 8.6.4 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 36 | Theory of Unfair Competition & False Advertising | Proposed Instruction for case | The parties have not reached an agreement. |
| 37 | False Advertising – Essential Elements | Pattern Jury Instructions, § 10.8 (11th Cir. 2013); and cases cited | The parties have not reached an agreement. |
| 38 | Materiality | Cases cited | The parties have not reached an agreement. |
| 39 | Damages for False Advertising | Federal Jury Practice Instructions § 127:14; and cases cited | The parties have not reached an agreement. |
| 40 | Damages for False Advertising - Profits | Federal Jury Practice and Instructions §159.92 (modified) | The parties have not reached an agreement. |
| 41 | False Advertising – Willfulness | Pattern Jury Instructions, § 10.1 (11th Cir. 2013) (modified) | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 42 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 27 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 43 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 28 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 44 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 29 (modified) | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 45 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 30 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |

| No. | Title | Source | Status |
|-----|-------|--------|--------|
| 46 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 32 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 47 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 33 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |
| 48 | [No title] | Judge Nuffer's Standard Civil Jury Instructions, Civil Cases, p. 34 | All parties agree, except for Leland Sycamore, who has not provided a proposal. |

## JOINT INSTRUCTION NO. 1

MEMBERS OF THE JURY:

I will now read some preliminary instructions about the process we will follow.  At the end of the trial, I will provide more instructions about the law that governs the issues in this case.  During the trial you should focus your attention on the facts of this case, as shown by the evidence presented.

It will be your duty to find the facts from the evidence presented in court.  You, and you alone, are the judges of the facts.  You will then have to apply those facts to the law as I will later instruct you.  It will be my responsibility to instruct you on the applicable law, while it is your duty to find the facts.  You must follow the instructions on the law whether you agree with them or not.

Nothing I may say or do during the course of the trial is intended to indicate that I have any opinion about the facts of the case nor should anything I say or do be taken as indicating what your verdict should be.

Justice through trial by jury always depends upon the willingness of each individual juror to seek the truth as to the facts from the same evidence presented to all the jurors, and to arrive at a verdict by applying the rules of law as given in the instructions.

**JOINT INSTRUCTION NO. 2**

The evidence from which you will find the facts will consist of the sworn testimony of witnesses, documents and other things received into the record as exhibits, and any facts the lawyers agree or stipulate to, or that I may instruct you to find.

In your consideration of the evidence, you are not limited to the statements of the witnesses. On the contrary, you are permitted to draw reasonable inferences from the facts which you find have been proven. An inference is a deduction or conclusion which reason and common sense would lead you to draw from facts which are established by the evidence in the case.

Certain things are not evidence and must not be considered by you. I will list them for you now:

1. Statements, arguments and questions by lawyers are not evidence. However, when the attorneys on both sides stipulate or agree as to the existence of a fact and that stipulation is presented to you by the court, you must accept the stipulation and regard that as a conclusively proven fact.

2. Objections to questions are not evidence. Lawyers have an obligation to make an objection when they believe evidence being offered is improper under the rules of evidence. You should not be influenced by an objection or by the Court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

3. Testimony that I have excluded or told you to disregard is not evidence and must not

be considered.

4.  Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded.  You are to decide the case solely on the evidence presented here in the courtroom.

**BBUSA'S INSTRUCTION NO. 3**

This is a civil case.  BBUSA has the burden of proving BBUSA's case by what is called the preponderance of the evidence.  That means BBUSA has to produce evidence which, considered in the light of all the facts, leads you to believe that what BBUSA claims is more likely true than not.  To put it differently, if you were to put BBUSA's and defendant's evidence on opposite sides of the scales, BBUSA would have to make the scales tip somewhat on BBUSA's side.  If BBUSA fails to meet this burden, the verdict must be for the defendant.

Those of you who have seen or participated in criminal trials will have heard of proof beyond a reasonable doubt.  That requirement does not apply to a civil case and you should therefore put it out of your mind.

**JOINT INSTRUCTION NO. 4**

You are the exclusive judges of the credibility of the witnesses and the weight of the evidence.  You may believe or disbelieve all or any part of any witness's testimony.  In judging the weight of the testimony and the credibility of the witnesses you have a right to take into consideration their bias, their interest in the result of the suit, their relationship to any of the parties in the case, or any probable motive or lack thereof to testify fairly, if any is shown.  You may consider the witnesses' demeanor upon the witness stand, the reasonableness of their statements, their apparent frankness or candor, or the lack of it, their opportunity to know, their ability to understand, their capacity to remember, and the extent to which their testimony has been either supported or contradicted by other credible evidence in the case.  You should consider these matters together with all of the other facts and circumstances that you may believe have a bearing on the truthfulness or accuracy of the witnesses' statements.

**JOINT INSTRUCTION NO. 5**

Next, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone, including fellow jurors, or permit anyone to discuss it with you.  Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case.  Not talking about this case means not talking about it in any way, including by Internet and instant communication devices or services, such as Blackberries, iPhones, Facebook, Twitter, and so on.

Second, do not read or listen to anything touching on this case in any way.  Do not watch or listen to any news reports concerning this trial on television or on the radio, and do not read any news accounts of this trial in a newspaper on the internet, or on any instant communication device, again including Facebook, Twitter, and so on.  If anyone should try to talk to you about it, bring it to the Court's attention promptly.

Third, do not try to do any research or make any investigation about the case on your own.  This means you must not consult any person or source, including internet resources, on subjects related to this case.

Finally, do not form any opinion until all the evidence is in.  Keep an open mind until you start your deliberations at the end of the case.

**JOINT INSTRUCTION NO. 6**

At the end of trial, you must make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.  I urge you to pay close attention to the testimony as it is given.

**JOINT INSTRUCTION NO. 7**

You will be permitted to take notes during the course of this trial.  But if you do, leave them in the jury room when you leave at night, and remember that they are for your own personal use.

You, of course, are not obligated to take notes.  If you do not take notes you should not be influenced by the notes of another juror, but rely upon your own recollection of the evidence.

Note-taking must not be allowed to interfere with the ongoing nature of the trial or distract you from what happens here in court.  Notes taken by any juror, moreover, are not evidence in the case and must not take precedence over the independent recollection of the evidence received in the case.  Notes are only an aid to recollection and are not entitled to any greater weight than the actual recollection or impression each juror has to the evidence actually presented.  Any notes taken by any juror concerning this case should not be disclosed to anyone other than a fellow juror and at no other time than during deliberation.

## JOINT INSTRUCTION NO. 8

BBUSA and the defendants have stipulated–that is they have agreed–to certain facts.  You must therefore treat those facts as conclusively proven.  I will now read the stipulated facts:

**JOINT INSTRUCTION NO. 9**

In this case, you may hear the testimony of an expert witness.  This term denotes a witness who, by education and experience, has become expert in some art, science, profession, or calling, and may state opinions as to relevant and material matters in which the witness is an expert, and may also state the reasons for the opinion.

You are not bound, however, by such an opinion. You should judge expert opinion testimony just as you judge any other testimony.  Give it the weight to which you deem it entitled, whether that be great or slight, and you may reject it, if in your judgment the reasons given for it are unsound.

**JOINT INSTRUCTION NO. 10**

During the trial it may be necessary for me to talk with the lawyers out of your hearing, either by having a bench conference here while you are present in the courtroom, or by calling a recess.  Please understand that while you are waiting, we are working.  The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence, and to avoid confusion and error.  We will, of course, do what we can to keep the number and length of these conferences to a minimum.

**JOINT INSTRUCTION NO. 11**

The trial will now begin.  First, each side may make an opening statement.  An opening statement is neither evidence nor argument; it is an outline of what that party intends to prove, offered to help you follow the evidence.

Next, BBUSA will call witnesses and defendant may cross-examine them.  Then defendant will call witnesses and BBUSA may cross-examine them.

At the close of the evidence, I will give you instructions on the law, after which the attorneys will make their closing arguments to summarize and interpret the evidence for you.

You will then retire to deliberate on your verdict.

## JOINT INSTRUCTION NO. 12

MEMBERS OF THE JURY:

Now that you have heard the evidence, it becomes my duty to give you the instructions as to the law applicable to this case.

It is your duty as jurors to follow the law as stated in these instructions, and to apply the rules of law to the facts as you find them from the evidence in the case.

You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole.

Neither are you to be concerned with the wisdom of any rule of law stated by these instructions. Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty to base a verdict upon any other view of the law than that given in these instructions; just as it would be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything but the evidence of the case.

You are to disregard any evidence offered at trial and rejected by me. You are not to consider questions of counsel as evidence. You are not to consider the opening statements and the closing arguments of counsel as evidence. Their purpose is merely to assist you in analyzing and considering the evidence presented at trial.

Nothing I have said during the trial or in these instructions should be interpreted by you as giving or intimating my opinion as to what has or has not been proven in this case or as to what are or are not the facts of this case.

## BBUSA'S INSTRUCTION NO.  13

BBUSA has the burden of proving BBUSA's claims by a preponderance of the evidence.

To prove by a preponderance of the evidence means to prove something is more likely than not.  It does not mean the greater number of witnesses or exhibits.  It means the evidence that has the more convincing force when taken on the whole compared to the evidence opposed to it.  It means the evidence that leads you, the jury, to find that the existence of the disputed fact is more likely true than not true.

Any finding of fact you make must be based on probabilities, not possibilities.  A finding of fact must not be based on speculation or conjecture.

When I say in these instructions that a party has the burden of proof on any proposition, or use the expression "if you find" or "if you determine," I mean that you must be persuaded, considering all the evidence in the case, that the proposition is more probably true than not true.

In determining whether any disputed fact has been proven by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits.

If a party fails to meet its burden of proof, or if the evidence weighs so evenly that you are unable to say that there is a preponderance on either side, you must resolve the question against the party who has the burden of proof on that issue and in favor of the opposing party.

**JOINT INSTRUCTION NO. 14**

You are to perform your duty as jurors without bias or prejudice as to any party.  Our system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion. Both the parties and the public expect that you will carefully and impartially consider all the evidence in the case, follow the law as stated by these instructions, and reach a just verdict, regardless of the consequences.

It would be improper for you to consider any personal feelings you may have about one of the parties or the nature of the claim asserted to influence you in any way..

The parties in this case are entitled to a trial free from prejudice.

Some of the parties in this case are corporations.  A corporation is entitled to the same treatment as a private individual.   You must consider and decide this case as a case between persons of equal rights, equal worth, and equal standing.  All persons, including corporations, stand equal before the law and are to be dealt with as equals in a court of justice.

## JOINT INSTRUCTION NO. 15

Unless you are otherwise instructed, the evidence in this case consists of the sworn testimony of the witnesses, regardless of who may have called them; all exhibits received in evidence regardless of who may have produced them; and all facts which may have been admitted or stipulated.

Any evidence as to which an objection was sustained, and any evidence ordered stricken by me, must be entirely disregarded.  Unless you are otherwise instructed, anything you may have seen or heard outside the courtroom is not evidence, and must be entirely disregarded.

## JOINT INSTRUCTION NO. 16

During this trial I have permitted you to take notes.  Many courts do not permit note-taking by jurors, and as I instructed you at the beginning of trial, a word of caution is in order.  There is always a tendency to attach undue importance to matters which one has written down.  Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceeding or a list of the highlights of the trial.  Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

If any reference by me or by the attorneys to matters of evidence does not coincide with your own recollection, it is your recollection which should control during your deliberations.

**JOINT INSTRUCTION NO. 17**

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony.  Two or more persons witnessing an incident or a transaction may simply see or hear it differently and innocent misrecollection, like failure of recollection, is not an uncommon experience.  In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves.

**JOINT INSTRUCTION NO. 18**

You may believe that a witness, on another occasion, made a statement inconsistent with that witness's testimony given here. That does not mean that you are required to disregard the testimony. It is for you to decide whether to believe the witness.

**JOINT INSTRUCTION NO. 19**

If you believe any witness has intentionally testified falsely about any important matter,

you may disregard the entire testimony of that witness, or you may disregard only the

intentionally false testimony.

**JOINT INSTRUCTION NO. 20**

It is the duty of the attorney on each side of the case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible.  You should not show prejudice against any attorney or the attorney's client because the attorney has made objection.

Upon allowing testimony or other evidence to be introduced over the objection of any attorney, I do not indicate any opinion as to the weight or effect of any such evidence.  As stated before, you the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When I have sustained an objection to a question addressed to a witness, you must disregard the question entirely, and may draw no inference from the wording of it or speculate as to what the witness would have said if he or she had been permitted to answer any question.

**JOINT INSTRUCTION NO. 21**

During the course of the trial, I may have occasionally asked questions of a witness in order to bring out facts not then fully covered in the testimony.  Do not assume that I hold any opinion on the matters to which my questions may have related.

## JOINT INSTRUCTION NO. 22

There are, generally speaking, two types of evidence from which a jury may properly find the truth as to the facts of a case.  One is direct evidence – such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence – the proof of a chain of circumstances pointing to the existence or nonexistence of certain facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts in accordance with the preponderance of all evidence in the case, both direct and circumstantial.

**BBUSA'S INSTRUCTION NO. 23**

**MISAPPROPRIATION OF TRADE SECRETS**

**ESSENTIAL ELEMENTS[1]**

BBUSA Bimbo Bakeries USA, Inc. ("BBUSA") claims that Leland Sycamore, Tyler Sycamore, Wild Grains, and US Bakery misappropriated BBUSA's recipe and process for making Grandma Sycamore's white bread.

To recover on its misappropriation of trade secret claim, BBUSA must prove *each* of the following elements by a preponderance of the evidence:

1. BBUSA's recipe and process is a trade secret;

2. Each defendant misappropriated BBUSA's trade secret

    (a) By acquiring the trade secret when that defendant knew or had reason to know that it was acquired by improper means; or

    (b) By disclosing or using the trade secret without express or implied consent

        (i) using improper means to acquire the trade secret; or

        (ii) when, at the time of disclosure or use, the defendant knew or had reason to know the trade secret was derived from or through a person who used improper means to acquire it, or acquired it under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from a person who owed a duty to BBUSA to maintain its secrecy or limit its use; or

---

[1] Reference: Utah Code Ann. § 13-24-2(2).

(iii) when the defendant knew or had reason to know that BBUSA's recipe and process was a trade secret and that they acquired knowledge of it by accident or mistake and used it anyway.

3. BBUSA suffered harm as a direct and proximate result of a defendant's use or disclosure of the trade secret, or a defendant obtained benefit from the use or disclosure of the trade secret.

## BBUSA'S INSTRUCTION NO. 24

## "TRADE SECRETS" -- DEFINED[2]

For purposes of BBUSA's claim, you must first decide whether BBUSA possessed protectable trade secrets.   A trade secret means information, including a formula, pattern, compilation, program, device, method, technique, or process that:

a.       Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

b.       Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

A compilation of information that is made up of known elements can be a trade secret, so long as the combination itself is outside the general knowledge and not ascertainable by proper means.   In determining whether a compilation of information is a trade secret, it is improper to analyze whether each individual component of the compilation is a trade secret in isolation.

Whether something is generally known or readily ascertainable does not mean that the information is generally known and readily ascertainable to the general public, but, based on the Defendants' knowledge and experience, whether the information was generally known or readily ascertainable in the industry.

---

[2] *Utah Code Ann.* § 13-24-2(4); *Cordell v. Berger,* 2001 U.S. Dist. LEXIS 20049 (D. Utah Nov. 27, 2001); *Brigham Young Univ. v. Pfizer, Inc.*, 861 F. Supp. 2d 1320, 1323 (D. Utah 2012); *Utah Med. Prods. Inc. v. Clinical Innovations Assocs., Inc.,* 79 F.Supp.2d 1290, 1311-12 (D. Utah 1999); *Rivendell Forest Prods., Ltd., v. Georgia-Pacific Corp*., 28 F.3d 1042, 1045 (10th Cir. 1994); *CDC Restoration & Constr. LC v. Tradesmen Contractors, LLC*, 274 P.3d 317, 325 (Utah Ct. App. 2012); *Microbial Research v. Muna*, 625 P.2d 690, 700 (Utah 1981); *Medspring Grp., Inc. v. Feng*, 368 F. Supp. 2d 1270, 1278-79 (D. Utah 2005); *Farm Bureau Life Ins. Co. v. Am. Nat'l Ins. Co.*, 505 F. Supp. 2d 1178, 1185 (D. Utah 2007); Order on Motion for Summary Judgment, March 29, 2017.

Whether information is generally known in the industry depends upon the Defendants' knowledge and experience, and whether a Defendant could have ascertained the alleged trade secret through proper means.

A former employee may use general knowledge, experience, and skill gained during his or her work for the former employer, as long as she or he does not disclose or use any the former employer's trade secrets.[3]

---

[3] *Microbial Research v. Muna*, 625 P.2d 690, 697 (Utah 1981); *Environtech Corp. v. Callahan*, 872 F.2d 487, 496-97 (Utah Ct. App. 1994).

## JOINT INSTRUCTION NO. 25

### SECRECY[4]

To determine that a claimed trade secret exists you must first decide whether the information was indeed secret.  Matters that are generally known to the public at large or to people in a trade or business are not trade secrets.  Nor can information be considered a trade secret if it would be ascertainable with reasonable ease from publicly available information.  In addition, a trade secret must possess enough originality so that it can be distinguished from everyday knowledge.

BBUSA must demonstrate that the information was known only to it or a few others who have also treated the claimed information as a trade secret.  Absolute secrecy is not necessary.

In determining whether BBUSA has proven by a preponderance of the evidence that it possessed specific, identifiable protectable trade secrets, you may consider the following factors:

    a.       The extent to which the information was known outside of BBUSA's business;

    b.       The extent to which the information was known by employees and other involved in BBUSA's business;

    c.       The extent of measures taken by BBUSA to guard the secrecy of the information;

    d.       The value of the information to BBUSA and its competitors;

    e.       The amount of effort or money expended in developing the information; and

    f.       The ease or difficulty with which the information could be properly acquired or duplicated by others.

---

[4] *Synthesis of ABA Model Instructions* §§ 8.3, 8.3.1 and *FJPI* § 127.11.

## JOINT INSTRUCTION NO. 26

## REASONABLE MEASURES TO PROTECT SECRECY[5]

BBUSA must prove that it took reasonable measures to protect the secrecy of its claimed

trade secrets.  Factors you may wish to consider in evaluating this point include:

1.      Whether BBUSA made it a practice to inform their employees or others involved

with their business, that the information was a trade secret and/or was to be kept

confidential;

2.      Whether BBUSA required employees or others involved with their business, to

sign confidentiality agreements regarding the claimed information;

3.      Whether BBUSA restricted access to the information on a "need to know" basis;

and

4.      Whether BBUSA generally maintained tight security to protect the alleged trade

secrets, including restrictions as to non-employee and employee access, and did

not voluntarily disclose it to others, except in confidence.

---

[5] *ABA Model Instructions* § 8.3.2  (modified by adding the term "claimed" in the first sentence, omitting the second
and last sentence in paragraph 1, and added the first clauses in the first and second paragraphs of the instructions and
the first clause in the fourth paragraph of the instruction.

**BBUSA'S/US BAKERY'S INSTRUCTION NO. 27**

**ACQUISITION BY DEFENDANTS[6]**

As indicated previously, one of the elements that BBUSA must prove in order to establish a claim for misappropriation of trade secrets is that one or more of the defendants acquired the claimed trade secrets in this case: (a) by using improper means or (b) under other circumstances where a duty not to use or disclose the claimed trade secrets is imposed by law.

---

[6] *Synthesis of Utah Code Ann.* § 13-24-2(a) and *ABA Model Instructions* § 8.4.

**JOINT INSTRUCTION NO. 28**

**IMPROPER MEANS**

"Improper means" includes theft, bribery, misrepresentation, breach or a duty to maintain secrecy, or inducement of a breach of duty to maintain secrecy, or espionage through electronic or other means.[7]

---

[7] Utah Code Ann. 13-24-2(1).

## BBUSA'S INSTRUCTION NO. 29

## OTHER CIRCUMSTANCES WHERE DUTY IMPOSED BY LAW[8]

There are times when a party acquires claimed trade secret information innocently, and only later comes under a duty to a BBUSA. One example would be when the claimed trade secret is acquired by mistake or accident, when a defendant does not have reason to believe it belongs to another. Another example would be when a defendant buys information from someone, without having any reason to know that the information does not belong to the seller. In situations such as these, a duty is only imposed on a defendant if and when the defendant either knows or has reason to know that the trade secret belongs to another and has been wrongfully acquired.

If you determine that one or more of the Defendants acquired the claimed trade secrets of BBUSA innocently, then you must next decide whether that Defendant ever learned or was put on notice that their acquisition of the claimed trade secrets occurred by mistake or by accident, or through a third party that had used improper means. If you determine that one or more of the Defendants either learned or should have known that the claimed trade secret information had come to them through improper means, then that Defendant's duty to BBUSA would begin on the date when that Defendant first acquired such knowledge.

---

[8] *ABA Model Instructions* § 8.4.3.

## BBUSA'S INSTRUCTION NO. 30

## DAMAGES FOR TRADE SECRET MISAPPROPRIATION[9]

If you should find by the preponderance of the evidence presented that one or more of the defendants have misappropriated BBUSA's trade secrets, you must then determine the amount of damages, if any, BBUSA is entitled to receive.

The fact that I am instructing you on the subject of damages does not mean that BBUSA is or is not entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you if you find from a fair preponderance of the evidence BBUSA is entitled to recover damages.

BBUSA has the burden of establishing the amount of actual damages, if any, that were suffered. Damages must be determined with reasonable certainty from the evidence presented. Mathematical precision need not be shown, but you are not to guess or speculate as to damages.

You may only award an amount that would fairly compensate BBUSA for damages proximately caused by a defendant's use of trade secrets. You may consider, in awarding such actual damages, the cost the defendant would have incurred in acquiring the same information or trade secrets through its own experimentation or through other lawful means.

If you decide that any defendant is liable for misappropriating BBUSA's recipe and process, then you should consider whether BBUSA has suffered monetary damages as a result of each defendant's misappropriation. If you determine a defendant caused BBUSA to suffer

---

[9] 3 FED. JURY PRAC. & INSTR. § 127:14 (6th ed.).

damages, you must determine the amount of damages that defendant individually caused BBUSA.

    As with liability, BBUSA has the burden to prove that it has suffered harm due to the wrongful conduct of one or more of the defendants and the amount of damages it has suffered due to the acts of each defendant individually.[10]

--------------------------------------------------

[10] Reference: Model Utah Jury Instructions, Second Edition (MUJI 2d) CV2001 (modified); Model Jury Instruction § 8.6 (ABA 2005) (modified).

## JOINT INSTRUCTION NO. 31

## DAMAGES FOR TRADE SECRET MISAPPROPRIATION – ACTUAL LOSSES[11]

BBUSA claims that it has suffered actual monetary loss from misuse of its trade secrets. This actual loss can include both out-of-pocket expenses and lost profits. If you find, for example, that BBUSA would have realized profits from using trade secrets in its business that it has lost due to the wrongful conduct of a defendant, then you may measure damages attributable to that defendant by the amount of such lost profits for the particular periods of time the trade secret was improperly used or disclosed.

---

[11] *ABA Model Instructions* § 8.6.1.

**JOINT INSTRUCTION NO. 32**

**DAMAGES FOR TRADE SECRET MISAPPROPRIATION –
DEFENDANTS' BENEFIT[12]**

In measuring BBUSA's damages, you may also consider what benefit a defendant may have gained from misuse of BBUSA's trade secrets. Regardless of whether you find that BBUSA itself suffered losses, if you find that a defendant benefited from using a trade secret belonging to BBUSA, then you may award (against that defendant) the monetary value that you attribute to those benefits as the measure of BBUSA's damage.

It may be that only one of these measures of damages (i.e., BBUSA's losses or defendants' benefit) is necessary to fully compensate BBUSA. However, you are also entitled to combine both BBUSA's losses and a defendant's gains in determining the measure of damages to award BBUSA, so long as you follow the guidelines I am about to give you.

These two approaches to damages—BBUSA's losses and a defendant's gains—while different in some respects, may overlap. That is, it may be that a defendant profited from particular sales that BBUSA would have made had defendant not competed using the trade secrets. In that situation, the two ways of approaching damages that I have just described would measure the identical damages--whether viewed as BBUSA's loss or a defendant's gain. The law does not permit a BBUSA to recover twice for the same damages. Thus, you may include as damages *both* BBUSA's lost profits *and* a defendant's gain *only* if and to the extent that they do not overlap in this way. Stated in other words, if you were to include lost sales in calculating

---

[12] *ABA Model Instructions* § 8.6.2.

BBUSA's losses because a defendant made the sales, then the value of those same sales should

be excluded from any calculation of any defendant's gains that you may make.

## BBUSA'S INSTRUCTION NO. 33

## DAMAGES FOR TRADE SECRET MISAPPROPRIATION -- PROFITS[13]

In addition to actual damages, BBUSA is entitled to any profits earned by Defendants that are attributable to the misappropriation.  However, you may not include in an award of profits any amount that you included in determining actual damages.

Profit is determined by deducting all appropriate expenses from gross revenue.

Gross revenue is all of the revenue received from the sale of bakery products which rely upon the trade secrets by Defendants.  BBUSA has the burden of proving the Defendants' gross revenue by a preponderance of the evidence.

Expenses to be deducted from gross revenue are all variable expenses which are relate to, and increase or decrease in connection with, sales of the bakery products at issue.  Expenses that are fixed, and that do not increase or decrease in connection with sales of the bakery products at issue, such as general overhead and operating expenses, should not be deducted from gross revenue in calculating profits.   The Defendants have the burden of proving any deductible expenses by a preponderance of the evidence.

---

[13] 3 FED. JURY PRAC. & INSTR. § 159:92 (6th ed.) (modified).

**BBUSA'S INSTRUCTION NO. 34**

**TRADE SECRET MISAPPROPRIATION – WILLFULNESS[14]**

BBUSA also claims that Defendants willfully committed trade secret misappropriation. A defendant commits "willful" trade secret misappropriation when that defendant knowingly and purposefully misappropriates a trade secret for itself, or when the defendant reasonably should have known that the information it used from BBUSA was a trade secret still used that information.

---

[14] Civil Pattern Jury Instructions, § 10.1 (11th Cir. 2013) (modified).

**JOINT INSTRUCTION NO. 35**

**DAMAGES FOR TRADE SECRET MISAPPROPRIATION –
TIME PERIOD FOR DAMAGES[15]**

BBUSA would be entitled to damages running only for as long as (1) you find that BBUSA's trade secret would be entitled to protection, plus (2) an additional period, if any, that you find that the trade secret afforded defendant a competitive advantage, such as providing defendant a head start in its business.

---

[15] *ABA Model Instructions* § 8.6.4.

**BBUSA'S INSTRUCTION NO. 36**

**THEORY OF FALSE ADVERTISING[16]**

In this case, BBUSA seeks to recover money damages from United States Bakery, Inc. ("US Bakery"), for what BBUSA claims to be unfair competition and false advertising (1) in the use of the word "local," in connection with the sale of its bakery products in states other than where the products were made; and (2) in the use of the term "Freshly Baked in Utah" in connection with products not made in Utah. The legal principles discussed in these instructions regarding the law of unfair competition and false advertising have evolved from attempts to balance the following conflicting policy objectives:

1. There is a need to protect the public from being misled about the nature and source of the goods and services they buy;

2. There is a need to protect the property rights of a business to identify itself and its goods and services to the public;

3. There is a need to try to achieve these goals without injury to the free-market economic system, which encourages fair competition among those providing goods and services.

Fair competition is encouraged, but unfair competition is destructive of the competitive process and is illegal.

Because of the conflicting policy objectives involved in cases of this type, each such case must be decided largely on its specific facts, and you, the jury, are the judge of the facts.

---

[16] *ABA Model Instructions* § 4.8.1.

### BBUSA'S INSTRUCTION NO. 37

### FALSE ADVERTISING -- ESSENTIAL ELEMENTS[17]

BBUSA claims that US Bakery is liable for false advertising.  To prove its claim, BBUSA must prove the following facts by a preponderance of the evidence:

1. US Bakery made material false or misleading representations of fact in connection with the advertising or promotion of its products;

2. the representations were made in commerce;

3. the representations are likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the products; and

4. BBUSA has been, or is likely to be, injured as a result of the representations.

There are two ways in which US Bakery's advertisements may be false or misleading:  it may be literally false, either on its face or be necessary implication, or it may be literally true or ambiguous and likely to mislead or confuse consumers.

When the statement in question is literally false, BBUSA need not show that the statement either actually confused customers or was likely to do so.  A representation is literally false when it states that a product has certain qualities that it in fact does not actually have.

However, if a statement is literally true or ambiguous, BBUSA must prove that the statement is misleading in context by demonstrating consumer confusion.  Consumer confusion

---

[17] Civil Pattern Jury Instructions, § 10.8 (11th Cir. 2013);*see also Intermountain Stroke Center, Inc. v. Intermountain Health Care, Inc*., 638 Fed. Appx. 778, 785 (10th Cir. 2016); *General Steel Domestic Sales, LLC v. Chumley*, 627 Fed. App'x. 682, 685-86 (10th Cir. 2015); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819-20 (7th Cir. 1999); *Zoller Laboratories, LLC, v. NBTY, Inc*., 111 Fed. Appx. 978, 982 (10th Cir. 2004); *Vitamins Online, Inc. v. Hartwise, Inc.*, 2016 WL 538458, at *5-8 (D. Utah Feb. 9, 2016); *Procter & Gamble Co. v. Haugen*, 627 F. Supp. 2d 1287, 1290-93 (D. Utah 2008).

may be shown by direct evidence, such as a diversion of sales or direct testimony from witnesses at trial, or by circumstantial evidence, such as consumer surveys.

**BBUSA'S INSTRUCTION NO. 38**

**MATERIALITY[18]**

In the context of a false advertising claim, "materiality" means that the false or misleading statement is likely to influence the purchasing decision of a customer.

If you find that US Bakery's advertisements were literally false, you are to presume that US Bakery's representations are material. US Bakery may rebut the presumption.

---

[18] *See Gen. Steel Domestic Sales, LLC v. Chumley*, 627 F. App'x 682, 685 (10th Cir. 2015); *Pizza Hut, Inc. v. Papa John's Int'l*, Inc. 227 F.3d 489, 495 (5th Cir. 2000); *see also Vincent v. Utah Plastic Surgery Soc.*, 621 F.App'x 546, 549 n. 6 (10th Cir. 2015) (citing Pizza Hut in noting that whether a statement is literally false or misleading is "relevant because a BBUSA proceeding under an implied falsity theory 'must also introduce evidence of the statement's impact on consumers'").

## BBUSA'S INSTRUCTION NO. 39

## DAMAGES FOR FALSE ADVERTISING[19]

If you should find by the preponderance of the evidence presented that US Bakery has committed false advertising, you must then determine the amount of damages, if any, BBUSA is entitled to receive.  These damages, if any, must be separated depending upon whether they came from the "Freshly Baked in Utah" shelf-liners or the "Fresh. Local. Quality." tagline.

The fact I am instructing you on the subject of damages does not mean that BBUSA is or is not entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you if you find from a fair preponderance of the evidence BBUSA is entitled to recover damages.

BBUSA can show actual damages by proving that US Bakery's advertisements confused consumers.  If you find that US Bakery's advertisements were literally false, there is a presumption of actual consumer confusion, and BBUSA does not need to show other evidence of actual confusion unless US Bakery rebuts the presumption.

BBUSA has the burden of establishing the amount of actual damages, if any, that were suffered. Damages must be determined with reasonable certainty from the evidence presented. Mathematical precision need not be shown, but you are not to guess or speculate as to damages.

You may only award an amount that would fairly compensate BBUSA for damages proximately caused by US Bakery's false advertisements. You may consider, in awarding such actual damages, the cost US Bakery would have incurred in using accurate advertisements or

---

[19] 3 Fed. Jury Prac. & Instr. § 127:14 (6th ed.) ); *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1161-62 (10th Cir. 2013); *Procter & Gamble Co. v. Haugen*, 627 F. Supp. 2d 1287, 1290-91 (D. Utah 2008); *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 525 (10th Cir. 1987); *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1241 (10th Cir. 2006)..

advertising through other lawful means, or you may consider the actual view of what BBUSA

was not able to sell due to US Bakery's false advertisement.

### BBUSA'S INSTRUCTION NO. 40

### DAMAGES FOR FALSE ADVERTISING – PROFITS[20]

In addition to actual damages BBUSA may be entitled to any profits earned by US Bakery that are attributable to the unfair competition and false advertising.  You may also consider the profits BBUSA claims it would have made but for US Bakery's false advertising.  However, you may not include in any award of profits any amount that you included in determining actual damages.

BBUSA must show either actual damages or willful action on the part of US Bakery before it may recover US Bakery's profits attributable to the false advertising.  BBUSA is not required to show an exact dollar amount of damages to obtain US Bakery's profits, so long as it shows it was injured in some way.  Profit is determined by deducting all appropriate expenses from gross revenue.

Gross revenue is all of the revenue received from the sale of bakery products using the advertising description "local" or "Freshly Baked in Utah."  BBUSA has the burden of proving US Bakery's gross revenue from each of these advertisements by a preponderance of the evidence.

Expenses to be deducted from gross revenue are all variable expenses which are relate to, and increase or decrease in connection with, sales of the bakery products at issue.  Expenses that are fixed, and that do not increase or decrease in connection with sales of the bakery products at

---

[20] 3 FED. JURY PRAC. & INSTR. § 159:92 (6th ed.) (modified); ); *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1161-62 (10th Cir. 2013); *Procter & Gamble Co. v. Haugen*, 627 F. Supp. 2d 1287, 1290-91 (D. Utah 2008); *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 525 (10th Cir. 1987); *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1241 (10th Cir. 2006).

issue, such as general overhead and operating expenses, should not be deducted from gross revenue in calculating profits.  US Bakery has the burden of proving any deductible expenses by a preponderance of the evidence.

If you elect to award BBUSA the profits it would have made but for BBUSA's false advertisement, BBUSA has the burden of proving what its profits would have been absent the false advertisement.

**JOINT INSTRUCTION NO. 41**

**FALSE ADVERTISING – WILLFULNESS[21]**

BBUSA also claims that US Bakery's false advertising was willful.  US Bakery denies that claim.  A defendant commits "willful" false advertising when that defendant knowingly and purposefully made the statements constituting false advertising, or when the defendant reasonably should have known that the statements constituted false advertising.

---

[21] Civil Pattern Jury Instructions, § 10.1 (11th Cir. 2013) (modified).

## JOINT INSTRUCTION NO. 42

The fact that I have instructed you on damages does not mean that I am indicating that you should award any – that is entirely for you, the Jury, to decide.

When you deliberate, do not flip a coin, speculate or choose one juror's opinions at random.  Evaluate the evidence and come to a decision that is supported by the evidence.

If you decide that BBUSA is entitled to recover damages, you must then agree upon the amount of money to award.  Each of you should state your own independent judgment on what the amount should be.  You must thoughtfully consider the amounts suggested, evaluate them according to these instructions and the evidence, and reach an agreement on the amount.  You must not agree in advance to average the estimates.

BBUSA bears the burden of proving by a preponderance of the evidence that he not only suffered damages but the amount of damages as well.  If you find BBUSA has failed to produce evidence to establish that he suffered damages, you may not award BBUSA damages.

**JOINT INSTRUCTION NO. 43**

Damages must be reasonable. You are not permitted to award speculative damages, which means compensation for a detriment which, although possible, is remote, or conjectural.

Damages that you award must be fair and reasonable, neither inadequate nor excessive. You should not award compensatory damages for speculative injuries, but only for those injuries that BBUSA has actually suffered or which he is reasonably likely to suffer in the near future.

In awarding compensatory damages, if you decide to award them, you must be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require a BBUSA to prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

**JOINT INSTRUCTION NO. 44**

In this case you may not include in any award of actual damages to BBUSA, any sum for the purpose of punishing Defendants, or to make an example of them for the public good or to prevent other incidents.

## JOINT INSTRUCTION NO. 45

Upon retiring to the jury room you must elect one of your members to act as your foreperson.  The foreperson will preside over your deliberations and will be your spokesperson here in court.

The verdict must represent the collective judgment of the Jury.  In order to return a verdict, it is necessary that each juror agree to it.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors for the mere purpose of returning a unanimous verdict.

Remember at all times, you are not partisans.  You are judges - judges of the facts.  Your sole interest is to seek the truth from the evidence in the case

Your verdict must be based solely upon the evidence received in the case.  Nothing you have seen or read outside of court may be considered.  Nothing that I have said or done during the course of this trial is intended in any way to somehow suggest to you what I think your verdict should be.  Nothing said in these instructions and nothing in any form of verdict prepared for your convenience is to suggest or convey to you in any way or manner any intimation as to what verdict I think you should return.  What the verdict shall be is the exclusive duty and responsibility of the Jury.  As I have told you many times, you are the sole judges of the facts.

I have prepared a verdict form for your convenience.  You are instructed that your answers to the interrogatories on the verdict form must be consistent with the instructions I have given you and with each other.

When you have reached a unanimous agreement as to your verdict, your foreperson will fill in, date and sign the verdict form upon which you have unanimously agreed.  When you have reached unanimous agreement as to your verdict, the foreperson shall inform the court security officer and you shall return to the courtroom.

If it becomes necessary during your deliberations to communicate with the court, you may send a note by the court security officer signed by your foreperson, or by one or more members of the jury.  No member of the jury should attempt to communicate with the court by any means other than a signed writing, and the court will never communicate with any member of the jury on any subject touching the merits of the case, other than in writing or orally here in open court.

But bear in mind that you are not to reveal to me or to any person how the jury stands, numerically or otherwise, on the question before you, until after you have reached a unanimous agreement.

You will note from the oath about to be taken by the court security officer that he, as well as all other persons, is forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

**JOINT INSTRUCTION NO. 46**

A copy of these instructions will also accompany you to the jury room.  Do not write on the instructions.  Do not concern yourselves with the numbering of the instructions, their sequence, or any gap in numbering.  Instructions are numbered only for clerical convenience while the court prepares the instructions.

**JOINT INSTRUCTION NO. 47**

The attitude and conduct of jurors at the outset of their deliberations are matters of considerable importance.  It is rarely productive or good for a juror, upon entering the jury room, to make an emphatic expression of opinion on the case or to announce a determination to stand for a certain verdict.  When one does that at the outset, a juror's sense of pride may be aroused, and the juror may hesitate to recede from an announced position if shown that it is wrong.

**JOINT INSTRUCTION NO. 48**

During your deliberations, you are able as a group to set your own schedule for deliberations.  You may deliberate as late as you wish or recess at an appropriate time set by yourselves.  You may set your own schedule for lunch and dinner breaks.

However, I do ask that you notify the court by a note when you plan to recess for the evening.

Respectfully submitted this 24th day of August, 2017.

> /s/ Juliette P. White
> _____
> Raymond J. Etcheverry
> Margaret Niver McGann
> Juliette P. White
> PARSONS BEHLE & LATIMER
> 201 South Main Street
> Suite 1800
> Salt Lake City, Utah  84111
>
> Charles A. Burke (Admitted *pro hac vice*)
> David R. Boaz (Admitted *pro hac vice*)
> WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
> One West Fourth Street
> Winston-Salem, North Carolina 27101
>
> *Attorneys for Plaintiff Bimbo Bakeries USA, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that August 24, 2017, the foregoing **Plaintiff's Proposed Jury Instructions** was served by filing a copy using the Court's ECF filing system, which will send notice of the filing to all counsel of record.

/s/ Juliette P. White
_____