IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BIMBO BAKERIES USA, INC.,<br><br>                  Plaintiff,<br>v.<br><br>LELAND SYCAMORE, TYLER SYCAMORE, WILD GRAINS BAKERY, LLC, AND UNITED STATES BAKERY, INC.,<br>                  Defendants. | **COURT'S PROPOSED JURY INSTRUCTIONS AND SPECIAL VERDICT FORM**<br><br>Case No. 2:13-cv-00749-DN-DBP<br><br>District Judge David Nuffer |

Comments of counsel on the Preliminary Instructions must be filed on or before 12:00 Noon (MDT) on September 22, 2017, using the event Notice of Filing. Comments on the balance of the instructions and verdict form must be filed before September 25, 2017.

Counsel should carefully examine and suggest changes if necessary to Instructions Nos. 44 and 45 dealing with damages for false advertising. In the absence of clear Tenth Circuit case law, we have done our best.

The following language proposed in Bimbo Bakeries' Instruction No. 39—borrowed from a form instruction on trade secret damages and used for an instruction on false advertising damages—did not seem helpful or well supported.

> You may consider, in awarding such actual damages, the cost US Bakery would have incurred in using accurate advertisements or advertising through other lawful means . . .

Therefore, we removed it.

After careful review of authorities, including 6 Callmann on Unfair Comp., Tr. & Mono. § 23:65 (4th Ed.)), it appears that damages for false advertising may be very broad:

> In a false advertising case actual damages  can include profits lost by the plaintiff on sales actually diverted to the defendant, profits lost by the plaintiff as a result of delayed or lost

market entry, profits lost by the plaintiff on sales made at prices reduced as a result of the false advertising, the cost of corrective advertising, regardless of whether such advertising undertook expressly to rebut the defendant's false claim, and quantifiable harm to the plaintiff's goodwill, to the extent that corrective advertising has not repaired that harm.[1]

But we do not know what proof will be made other than Bimbo Bakeries' lost profits and disgorgement of US Bakery's profits, so those are the only categories we described in Instructions 44 and 45.

"[T]he law is not clear"[2] as to when disgorgement of profits is appropriate, but the court has an obligation to exercise a unique type of equitable control before awarding such damages.[3] The disgorgement of US Bakery's profits seems to be unavailable unless Bimbo Bakeries has lost profits or US Bakery took willful action.[4] The first part of this rule seems to be founded in a policy that a plaintiff should not recover damages unrelated to any loss of its own—to hold otherwise would allow a recovery due the general public or government as an enforcer when the plaintiff has no special position or interest. But a personally damaged plaintiff is allowed to make its own recovery, as well as a general recovery (equity). Alternatively, disgorgement can be allowed if defendant's actions were willful, justifying a departure from the requirement that a plaintiff have injury before being allowed to penalize a defendant.

---

[1] 6 Callmann on Unfair Comp., Tr. & Mono. § 23:65 (4th Ed.).
[2] *HipSaver Co., Inc. v. J.T. Posey Co.*, 497 F.Supp.2d 96, 109 (D. Mass. 2007).
[3] 15 U.S.C. § 1117(a) (cited at *id.*).
[4] *Id.*

Therefore, we are including separate findings of damages for false advertising for Bimbo

Bakeries' losses and for US Bakeries profits in the verdict form.

Signed September 18, 2017.

BY THE COURT

David Nuffer
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BIMBO BAKERIES USA, INC., <br><br> Plaintiff, <br> v. <br><br> LELAND SYCAMORE, TYLER SYCAMORE, WILD GRAINS BAKERY, LLC, AND UNITED STATES BAKERY, INC., <br><br> Defendants. | **PRELIMINARY JURY INSTRUCTIONS** <br><br><br> Case No. 2:13-cv-00749-DN-DBP <br><br> District Judge David Nuffer |

INSTRUCTION NO. 1

MEMBERS OF THE JURY:

I will now read some preliminary instructions about the process we will follow.  At the end of the trial, I will provide more instructions about the law that governs the issues.  During the trial you should focus your attention on the facts of this case, as shown by the evidence presented.

It will be your duty to find the facts from the evidence presented in court.  You, and you alone, are the judges of the facts.  You will then have to apply the law as I will later instruct you to those facts.  It will be my responsibility to instruct you on the applicable law, while it is your duty to find the facts.  You must follow the instructions on the law whether you agree with them or not.

Nothing I may say or do during the course of the trial is intended to indicate that I have any opinion about the facts of the case, nor should anything I say or do be taken as indicating what your verdict should be.

Justice through trial by jury always depends upon the willingness of each individual juror to seek the truth as to the facts from the same evidence presented to all the jurors, and to arrive at a verdict by applying the rules of law as given in the instructions.

INSTRUCTION NO. 2

Next, a few words about your conduct as jurors. These instructions may seem odd, but they are critically important, because if you violate these rules the trial will be invalid. We don't want to get a verdict and then find out later that one of you considered evidence from outside the courtroom. The rules are clear that if any of you are influenced by something other than evidence presented in court, the case must be tried again.

First, if anyone should try to talk to you about the subject of this case, bring it to the attention of the jury administrator promptly.

Second, do not read or listen to anything touching on this case in any way. Do not watch or listen to any news reports concerning this trial on television or on the radio, and do not read any news accounts of this trial in a newspaper, on the internet, or on any instant communication device or service, including smartphones, email, texts, Facebook, Twitter, and other devices and services.

Third, do not try to do any research or make any investigation about the case on your own. This means you must not consult any person or source, including internet resources, on subjects related to this case.

Fourth, until this trial is over, the only time that you may discuss the evidence is when you are all together so that (1) each of you is present during the discussion, (2) in the jury room, (3) with no one else present. If one of those three conditions is not met, you may not discuss the case. That means that under any other circumstances you are not to discuss the case with fellow jurors or anyone else or permit anyone to discuss it with you.

Fifth, when you go home tonight and family and friends ask what the case is about, remember you cannot speak with them about the case. All you can tell them is that you are on a

jury, the estimated schedule for the trial, and that you cannot talk about the case until it is over.

Sixth, to avoid even the appearance of improper conduct, do not talk to any of the parties, the lawyers, or witnesses about anything until the case is over, even if your conversation with them has nothing to do with the case. The lawyers and parties have been given the same instruction about not speaking with you jurors, so do not think they are being unfriendly to you.

Seventh, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case. If you discuss the case with your fellow jurors in the jury room when all are present, remember you must not form opinions or make decisions about any fact or about the outcome of the case until you have heard and considered all of the evidence, the closing arguments, and the rest of the instructions I will give you on the law. Both sides have the right to have the case fully presented and argued before you decide any of the issues. Evidence can only be presented one piece at a time. Therefore, you must keep an open mind throughout the trial. While you may have some initial impressions, do not form any final opinions until after you have discussed them thoroughly with your fellow jurors during your deliberations at the end of the trial.

Finally, your smartphones, email, texts, Facebook, Twitter, and other devices and services should not be used in any way with regard to this case.

After the trial is over and I have released you from the jury, you may then discuss the case with anyone, but you are not required to do so. I will give you more instructions about this when you have returned your verdict.

Again, we want to avoid the case where a juror did some internet research and thought that Google Street View showed the intersection looked differently than the photos in court – and that research voided the verdict. Please play by these rules during the trial.

INSTRUCTION NO. 3

Plaintiff Bimbo Bakeries, USA Inc. will be referred to in these instructions as Bimbo Bakeries. Defendant Wild Grains Bakery, LLC, will be called Wild Grants. United States Bakery, Inc., will be called US Bakery.

Bimbo Bakeries claims that each of the defendants — Leland Sycamore, Tyler Sycamore, Wild Grains Bakery and US Bakery, — misappropriated a bread recipe which Bimbo Bakeries claims is its trade secret. Each of the defendants denies this claim.

Bimbo Bakeries also claims that US Bakery engaged in false advertising.  US Bakery denies this claim.

At the end of the trial, you will be asked to determine whether the claims have been proven and, if so, if any damages should be awarded to Bimbo Bakeries. You will receive further instructions on the law to help you make that decision.

INSTRUCTION NO. 4

The evidence from which you will find the facts will consist of the sworn testimony of witnesses, documents and other things received into the record as exhibits, and any facts the lawyers agree or stipulate to, or that I may instruct you to find.

In your consideration of the evidence, you are not limited to the statements of the witnesses. On the contrary, you are permitted to draw reasonable inferences from the facts which you find have been proven. An inference is a deduction or conclusion which reason and common sense would lead you to draw from facts which are established by the evidence.

Certain things are not evidence and must not be considered by you. These include:

1. Statements, arguments and questions by lawyers are not evidence. However, when the attorneys on both sides stipulate or agree as to the existence of a fact and that stipulation is presented to you by the court, you must accept the stipulation and regard that as a conclusively proven fact.

2. Objections to questions are not evidence. Lawyers have an obligation to make an objection when they believe evidence being offered is improper under the rules of evidence. You should not be influenced by an objection or by my ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

3. Testimony that I have excluded or told you to disregard is not evidence and must not be considered.

4. Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in the courtroom.

INSTRUCTION NO. 5

This is a civil case.  The plaintiff has the burden of proving the plaintiff's case by what is called a preponderance of the evidence.  That means the plaintiff has to produce evidence which, considered in the light of all the facts, leads you to believe that what plaintiff claims is more likely true than not.  To put it differently, if you were to put plaintiff's and defendant's evidence on opposite sides of the scales, plaintiff would have to make the scales tip somewhat on the plaintiff's side.  If the plaintiff fails to meet this burden, the verdict must be for the defendant.

Some facts in this case must be proved by a higher level of proof called "clear and convincing evidence." I will instruct you separately on the clear and convincing evidence standard. [Awaiting briefing and decision.]

Those of you who have seen or participated in criminal trials will have heard of proof beyond a reasonable doubt.  That requirement does not apply to a civil case and you should therefore put it out of your mind.

INSTRUCTION NO. 6

You are the exclusive judges of the credibility of the witnesses and the weight of the evidence.  You may believe or disbelieve all or any part of any witness's testimony.  In judging the weight of the testimony and the credibility of the witnesses you have a right to take into consideration their bias, their interest in the result of the case, their relationship to any of the parties, or any probable motive or lack thereof to testify fairly, if any is shown.  You may consider the witnesses' demeanor on the witness stand; the reasonableness of their statements; their apparent frankness or candor, or the lack of it; their opportunity to know; their ability to understand; their capacity to remember; and the extent to which their testimony has been either supported or contradicted by other credible evidence.  You should consider these matters together with all the other facts and circumstances that you may believe have a bearing on the truthfulness or accuracy of the witnesses' statements.

INSTRUCTION NO. 7

At the end of trial, you must make your decision based on what you recall of the evidence and the exhibits received into evidence.  You will not have a transcript of the trial.  I urge you to pay close attention to the testimony as it is given. You will have the exhibits which are received into evidence. I urge you to pay close attention to the testimony as it is given.

INSTRUCTION NO. 8

You will be permitted to take notes during this trial.  But if you do, leave them in the jury room when you leave at night, and remember that they are for your own personal use.

You, of course, are not obligated to take notes.  If you do not take notes you should not be influenced by the notes of another juror, but rely upon your own recollection of the evidence.

Note-taking must not be allowed to interfere with the ongoing nature of the trial or distract you from what happens here in court.  Notes taken by any juror are not evidence and must not take precedence over the independent recollection of the evidence received.  Notes are only an aid to recollection and are not entitled to any greater weight than the actual recollection or impression each juror has of the evidence actually presented.  Any notes taken by any juror concerning this case should not be disclosed to anyone other than a fellow juror and at no other time than during deliberation.

INSTRUCTION NO. 9

The plaintiff and the defendants have stipulated–that is they have agreed–to certain facts.

You must therefore treat those facts as conclusively proven.  I will now read the stipulated facts:

INSTRUCTION NO. 10

You may hear the testimony of an expert witness.  This term denotes a witness who, by education and experience, has become expert in some art, science, profession, or calling, and may state opinions as to relevant and material matters in which the witness is an expert, and may also state the reasons for the opinion.

You are not bound, however, by such an opinion. You should judge expert opinion testimony just as you judge any other testimony.  Give it the weight to which you deem it entitled, whether that be great or slight, and you may reject it, if in your judgment the reasons given for it are unsound.

INSTRUCTION NO. 11

During the trial it may be necessary for me to talk with the lawyers out of your hearing, either by having a bench conference here while you are present in the courtroom, or by calling a recess.  Please understand that while you are waiting, we are working.  The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence, and to avoid confusion and error.  We will, of course, do what we can to keep the number and length of these conferences to a minimum.

INSTRUCTION NO. 12

The trial will now begin.  First, each side may make an opening statement.  An opening statement is neither evidence nor argument; it is an outline of what that party intends to prove, offered to help you follow the evidence.

Next, plaintiff will call witnesses and defendant may cross-examine them.  Then defendant will call witnesses and plaintiff may cross-examine them.

At the close of the evidence, I will give you instructions on the law, after which the attorneys will make their closing arguments to summarize and interpret the evidence for you.

You will then retire to deliberate on your verdict.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BIMBO BAKERIES USA, INC., | **FINAL JURY INSTRUCTIONS** |
| Plaintiff, | |
| v. | Case No. 2:13-cv-00749-DN-DBP |
| LELAND SYCAMORE, TYLER SYCAMORE, WILD GRAINS BAKERY, LLC, AND UNITED STATES BAKERY, INC., | District Judge David Nuffer |
| Defendants. | |

General Instructions              13–18

Witnesses                         19–24

Trade Secret                      25–33

    Damages             34–39

    Willfulness          40

False Advertising                 41–43

    Damages             44–45

    Willfulness          46

Damages Generally                 47–49

Deliberations and Decision Making  50–53

INSTRUCTION NO. 13

MEMBERS OF THE JURY:

Now that you have heard the evidence, it becomes my duty to give you instructions as to the law applicable to this case.

It is your duty as jurors to follow the law as stated in these instructions, and to apply the rules of law to the facts as you find them from the evidence.

You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole.

Neither are you to be concerned with the wisdom of any rule of law stated by these instructions. Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty to base a verdict upon any other view of the law than that given in these instructions; just as it would be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything but the evidence of the case.

You are to disregard any evidence offered at trial and rejected by me. You are not to consider questions of counsel as evidence. You are not to consider the opening statements and the closing arguments of counsel as evidence. Their purpose is merely to assist you in analyzing and considering the evidence presented at trial.

Nothing I have said during the trial or in these instructions should be interpreted by you as giving or intimating my opinion as to what has or has not been proven or as to what are or are not the facts of this case.

INSTRUCTION NO. 14

Plaintiff has the burden of proving the Plaintiff's claims by a preponderance of the evidence.

To prove by a preponderance of the evidence means to prove something is more likely than not.  It does not mean the greater number of witnesses or exhibits.  It means the evidence that has the more convincing force when taken on the whole compared to the evidence opposed to it.  It means the evidence that leads you, the jury, to find that the existence of the disputed fact is more likely true than not true.

Any finding of fact you make must be based on probabilities, not possibilities.  A finding of fact must not be based on speculation or conjecture.

When I say in these instructions that a party has the burden of proof on any proposition, or use the expression "if you find" or "if you determine," I mean that you must be persuaded, considering all the evidence, that the proposition is more probably true than not true.

In determining whether any disputed fact has been proven by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits.

If a party fails to meet its burden of proof, or if the evidence weighs so evenly that you are unable to say that there is a preponderance on either side, you must resolve the question against the party who has the burden of proof on that issue and in favor of the opposing party.

INSTRUCTION NO. 15

You are to perform your duty as jurors without bias or prejudice as to any party.  Our system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion. Both the parties and the public expect that you will carefully and impartially consider all the evidence, follow the law as stated by these instructions, and reach a just verdict, regardless of the consequences.

It would be improper for you to consider any personal feelings you may have about one of the parties' race, religion, national origin, gender, orientation, or age.

It would be equally improper for you to allow any feelings you might have about the nature of the claim asserted to influence you in any way.

The parties are entitled to a trial free from prejudice.

The plaintiff and two of the defendants are business entities.  A corporation or other company is entitled to the same treatment as a private individual.   You must consider and decide this case as a case between persons of equal rights, equal worth, and equal standing.  All persons, including business entities, stand equal before the law and are to be dealt with as equals in a court of justice.

INSTRUCTION NO. 16

Unless you are otherwise instructed, the evidence consists of the sworn testimony of the witnesses, regardless of who may have called them; all exhibits received in evidence regardless of who may have produced them; and all facts which may have been admitted or stipulated.

Any evidence as to which an objection was sustained, and any evidence ordered stricken by me, must be entirely disregarded.

Unless you are otherwise instructed, anything you may have seen or heard outside the courtroom is not evidence, and must be entirely disregarded.

INSTRUCTION NO. 17

The plaintiff and the defendant have stipulated–that is they have agreed–to certain facts.

You must therefore treat those facts as having been conclusively proven.

INSTRUCTION NO. 18

During this trial I have permitted you to take notes.  Many courts do not permit note-taking by jurors, and, as I instructed you at the beginning of trial, a word of caution is in order. There is always a tendency to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory. Your notes are not evidence, and are by no means a complete outline of the proceeding or a list of the highlights of the trial.  Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision.

If any reference by me or by the attorneys to matters of evidence does not coincide with your own recollection, it is your recollection which should control during your deliberations.

INSTRUCTION NO. 19

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony.  Two or more persons witnessing an incident or a transaction may simply see or hear it differently, and innocent misrecollection, like failure of recollection, is not an uncommon experience.  In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves.

INSTRUCTION NO. 20

You may believe that a witness, on another occasion, made a statement inconsistent with that witness's testimony given here. That does not mean that you are required to disregard the testimony. It is for you to decide whether to believe the witness.

INSTRUCTION NO. 21

If you believe any witness has intentionally testified falsely about any important matter,

you may disregard the entire testimony of that witness, or you may disregard only the

intentionally false testimony.

INSTRUCTION NO. 22

It is the duty of the attorney on each side of the case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible.  You should not show prejudice against any attorney or the attorney's client because the attorney has made an objection.

Upon allowing testimony or other evidence to be introduced over the objection of any attorney, I do not indicate any opinion as to the weight or effect of any such evidence.  As stated before, you the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When I have sustained an objection to a question addressed to a witness, you must disregard the question entirely, and may draw no inference from the wording of it or speculate as to what the witness would have said if the witness had been permitted to answer any question.

INSTRUCTION NO. 23

During the trial, I may have occasionally asked questions of a witness to bring out facts not then fully covered in the testimony.  Do not assume that I hold any opinion on the matters to which my questions may have related.

INSTRUCTION NO. 24

There are, generally speaking, two types of evidence from which a jury may properly find the truth as to the facts of a case.  One is direct evidence—such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence—the proof of a chain of circumstances pointing to the existence or nonexistence of certain facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence.  Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence.  You should weigh all the evidence and give it the appropriate weight you determine it deserves.

INSTRUCTION NO. 25

ELEMENTS OF A TRADE SECRET MISAPPROPRIATION CLAIM

Bimbo Bakeries claims that Leland Sycamore, Tyler Sycamore, Wild Grains, and US Bakery misappropriated Bimbo Bakeries' recipe and process for making Grandma Sycamore's white bread.

To recover against a defendant on its trade secret misappropriation claim, Bimbo Bakeries must prove *each* of the following elements by a preponderance of the evidence:

1. Bimbo Bakeries' recipe and process is a trade secret;

2. The defendant misappropriated Bimbo Bakeries' trade secret; and

3. Bimbo Bakeries suffered harm as a direct and proximate result of that defendant's use or disclosure of the trade secret, or that defendant obtained benefit from the use or disclosure of the trade secret.

INSTRUCTION NO. 26

DEFINITION OF TRADE SECRET

To evaluate Bimbo Bakeries' trade secret claim, you must first decide whether Bimbo Bakeries possessed protectable trade secrets. A trade secret means information, including a formula, pattern, compilation, program, device, method, technique, or process that:

1.      Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

2.      Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Whether something is generally known or readily ascertainable under this definition concerns whether information was generally known and readily ascertainable to the defendant based on the defendant's knowledge and experience, not whether the information is generally known and readily ascertainable to the general public.

If a defendant could reverse-engineer the components of a formula or process by performing basic research, or if the information is available from public sources, the information cannot constitute a trade secret.

INSTRUCTION NO. 27

COMPILATIONS OF INORMATION AS TRADE SECRETS

A unique combination of generally known elements or steps can qualify as a trade secret, so long as the combination itself is outside the general knowledge and not readily ascertainable by proper means.  In determining whether a compilation of information is a trade secret, it is improper to consider only whether each individual component of the compilation is a trade secret in isolation.

INSTRUCTION NO. 28

DEFINITION OF MISAPPROPRIATION

For a trade secret claim, "misappropriation" means any one of the following four acts:

    a.      acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

    b.      disclosure or use of a trade secret of another by a person who used improper means to acquire knowledge of the trade secret; or

    c.      disclosure or use of a trade secret of another by a person who, at the time of the disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

        (i)      derived from or through a person who had utilized improper means to acquire it;

        (ii)     acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

        (iii)    derived from or through a person who owed a duty to the trade secret's owner to maintain its secrecy or limit its use; or

    d.      disclosure or use of a trade secret of another by a person who knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

INSTRUCTION NO. 29

DEFINITION OF IMPROPER MEANS

For a trade secret claim, "improper means" includes theft, bribery, misrepresentation, breach of a duty to maintain secrecy, or inducement of a breach of duty to maintain secrecy, or espionage through electronic or other means.

INSTRUCTION NO. 30

AN EMPLOYEE'S GENERAL KNOWLEDGE, SKILL, OR EXPERIENCE

A former employee may use general knowledge, experience, and skill gained during work for the former employer, as long as the former employee does not disclose or use any of the former employer's trade secrets. The general knowledge and experience of US Bakery, Wild Grains, Tyler Sycamore, and Leland Sycamore must be distinguished from Bimbo Bakeries' confidential trade secret information, if any.

INSTRUCTION NO. 31

SECRECY

To determine that a claimed trade secret exists you must first decide whether the information was indeed secret.  Matters that are generally known to the public at large or to people in a trade or business are not trade secrets.  In addition, a trade secret must possess enough originality so that it can be distinguished from everyday knowledge.

Bimbo Bakeries must demonstrate that the information it seeks to protect was known only to it or a few others who have also treated the claimed information as a trade secret. Absolute secrecy is not necessary.

In determining whether Bimbo Bakeries has proven that it possessed specific, identifiable protectable trade secrets, you may consider the following factors:

a.      The extent to which the information was known outside of Bimbo Bakeries' business;

b.      The extent to which the information was known by employees and other involved in Bimbo Bakeries' business;

c.      The extent of measures taken by Bimbo Bakeries to guard the secrecy of the information;

d.      The value of the information to Bimbo Bakeries and its competitors;

e.      The amount of effort or money expended in developing the information; or

f.      The ease or difficulty with which the information could be properly acquired or duplicated by others.

INSTRUCTION NO. 32

REASONABLE MEASURES TO PROTECT SECRECY

Bimbo Bakeries must prove that it took reasonable measures to protect the secrecy of its claimed trade secrets.  Factors you may wish to consider in evaluating this point include:

a.      Whether Bimbo Bakeries made it a practice to inform their employees or others involved with their business, that the information was a trade secret and/or was to be kept confidential;

b.      Whether Bimbo Bakeries required employees or others involved with their business, to sign confidentiality agreements regarding the claimed information;

c.      Whether Bimbo Bakeries restricted access to the information on a "need to know" basis; or

d.      Whether Bimbo Bakeries generally maintained tight security to protect the alleged trade secrets, including restrictions as to non-employee and employee access, and did not voluntarily disclose it to others, except in confidence.

INSTRUCTION NO. 33

INNOCENTLY ACQUIRED TRADE SECRETS

A person may acquire claimed trade secret information innocently, and only later come to know the information is a trade secret.  One example would be when the claimed trade secret is acquired by mistake or accident, when a person does not have reason to believe it belongs to another.  Another example would be when a person buys information from someone, without having any reason to know that the information does not belong to the seller.  In situations such as these, a duty is only imposed on a person if and when the defendant either knows or has reason to know that the trade secret belongs to another and has been wrongfully acquired.

If you determine that a defendant—US Bakery, Leland Sycamore, Wild Grains, or Tyler Sycamore—acquired the claimed trade secrets of Bimbo Bakeries innocently, then you must next decide whether and when that defendant ever learned or should have known that the claimed trade secret information had come to it through improper means. That defendant's duty to Bimbo Bakeries would begin on the date when that defendant first acquired or should have had such knowledge.

INSTRUCTION NO. 34

DAMAGES FOR TRADE SECRET MISAPPROPRIATION

If you should find that one or more of the defendants have misappropriated Bimbo Bakeries' trade secrets, you must then determine the amount of damages, if any, Bimbo Bakeries is entitled to receive.

The fact that I am instructing you on the subject of damages does not mean that Bimbo Bakeries is or is not entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you if you find that Bimbo Bakeries is entitled to recover damages.

Bimbo Bakeries has the burden of establishing the amount of actual damages, if any, that were suffered. Damages must be determined with reasonable certainty from the evidence presented. Mathematical precision need not be shown, but you are not to guess or speculate as to damages.

You may only award an amount that would fairly compensate Bimbo Bakeries for damages proximately caused by a defendant's use of trade secrets. You may consider, in awarding such actual damages, the cost the defendant would have incurred in acquiring the same information or trade secrets through its own experimentation or through other lawful means.

If you decide that a defendant is liable for misappropriating Bimbo Bakeries' recipe and process, then you should consider whether Bimbo Bakeries has suffered monetary damages as a result of each defendant's misappropriation. If you determine a defendant caused Bimbo Bakeries to suffer damages, you must determine the amount of damages that defendant individually caused Bimbo Bakeries.

INSTRUCTION NO. 35

DAMAGES FOR TRADE SECRET MISAPPROPRIATION—ACTUAL LOSSES

Bimbo Bakeries claims that it has suffered actual monetary loss from misuse of its trade secrets. This actual loss can include both out-of-pocket expenses and Bimbo Bakeries' lost profits. If you find, for example, that Bimbo Bakeries would have realized profits from using trade secrets in its business but lost profits due to the wrongful conduct of a defendant, then you may measure damages attributable to that defendant by the amount of such lost profits for the particular periods of time the trade secret was improperly used or disclosed.

INSTRUCTION NO. 36

CALCULATING PROFITS

Profit is determined by deducting all appropriate expenses from gross revenue, as this formula shows:

*Profits = Gross Revenue –Expenses*

*Gross revenue* is all of the revenue received by a defendant from the sale of bakery products which rely upon the trade secrets.  Bimbo Bakeries has the burden of proving a defendant's gross revenue.

*Expenses* to be deducted from gross revenue are all variable expenses which are related to, and increase or decrease in connection with, sales of the bakery products at issue.  Expenses that are fixed, and that do not increase or decrease in connection with sales of the bakery products at issue, such as general overhead and operating expenses, should not be deducted from gross revenue in calculating profits.  Each defendant has the burden of proving any deductible expenses.

INSTRUCTION NO. 37

DAMAGES FOR TRADE SECRET MISAPPROPRIATION—DEFENDANTS' BENEFIT

In measuring Bimbo Bakeries' damages, you may also consider what benefit a defendant may have gained from misuse of Bimbo Bakeries' trade secrets. For example, Bimbo Bakeries is entitled to any profits earned by a defendant that are attributable to misappropriation. Regardless of whether you find that Bimbo Bakeries itself suffered losses, if you find that a defendant benefited from using a trade secret belonging to Bimbo Bakeries, then you should consider whether that defendant should pay the monetary value of those benefits to Bimbo Bakeries.

INSTRUCTION NO. 38

DAMAGES FOR TRADE SECRET MISAPPROPRIATION—NO DOUBLE RECOVERY

It may be that only one of these measures of damages (i.e., Bimbo Bakeries' losses or defendants' benefit) is necessary to fully compensate Bimbo Bakeries. Or you may combine both Bimbo Bakeries' losses and a defendant's gains in determining the measure of damages to award Bimbo Bakeries. However, Bimbo Bakeries may not recover twice for the same damages.

Bimbo Bakeries' losses and a defendant's gains may overlap.

It may be that a defendant profited from particular sales that Bimbo Bakeries would have made had a defendant not competed using the trade secrets. In that situation, the two ways of approaching damages would measure the identical damages—whether viewed as Bimbo Bakeries' loss or a defendant's gain. In this situation, you would include as damages either Bimbo Bakeries' lost profits or a defendant's gain  because those amounts are actually the same.

But you may find that a defendant' profits are not identical to Bimbo Bakeries' lost profits. For example, if you find that Bimbo Bakeries lost profits due to a defendant's improper use of trade secrets, and find that that same defendant obtained even greater profits from its use of trade secrets, Bimbo Bakeries is entitled to recover its lost profits as well as the profits of the defendant, to the extent they do not overlap.

INSTRUCTION NO. 39

DAMAGES FOR TRADE SECRET MISAPPROPRIATION—TIME PERIOD

Bimbo Bakeries would be entitled to damages running only for as long as (1) you find that Bimbo Bakeries' trade secret would be entitled to protection, plus (2) an additional period, if any, that you find that the trade secret afforded a defendant a competitive advantage, such as providing a defendant a head start in its business.

INSTRUCTION NO. 40

TRADE SECRET MISAPPROPRIATION—WILLFULNESS

Bimbo Bakeries also claims that each defendant engaged in "willful and malicious misappropriation."

Trade secret misappropriation is *willful* when that defendant knowingly and purposefully misappropriates a trade secret for itself, or when the defendant reasonably should have known that the information it used from Bimbo Bakeries was a trade secret still and used that information. An act is willful if done voluntarily and intentionally and with the specific intent to commit such an act.

An act is *malicious* if prompted or accompanied by ill will or such gross indifference to the rights of others as to amount to a willful act done intentionally without just cause or excuse.

Bimbo Bakeries must prove willful and malicious misappropriation by "clear and convincing evidence." Clear and convincing evidence means that the party must persuade you, by the evidence, to the point that there remains no serious or substantial doubt as to the truth of the fact.  Proof by clear and convincing evidence requires a greater degree of persuasion than proof by a preponderance of the evidence but less than proof beyond a reasonable doubt (the standard in criminal trials). [Awaiting briefing and decision.]

INSTRUCTION NO. 41

FALSE ADVERTISING—ESSENTIAL ELEMENTS

Bimbo Bakeries claims that US Bakery is liable for false advertising.  To prove its claim, Bimbo Bakeries must prove the following facts:

1.      US Bakery made material false or misleading representations of fact in connection with the advertising or promotion of its products;

2.      the representations were made in commerce;

3.      the representations are likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the products; and

4.      Bimbo Bakeries has been, or is likely to be, injured as a result of the representations.

INSTRUCTION NO. 42

FALSE OR MISLEADING REPRESENTATIONS

There are two ways in which US Bakery's advertising may be false or misleading:

    a.      it may be literally false, either on its face or by necessary implication; or

    b.      it may be literally true or ambiguous and likely to mislead or confuse

            consumers.

If the statement in question is literally false, Bimbo Bakeries need not show that the statement either actually confused customers or was likely to do so.  A representation is literally false when it states that a product has certain qualities that it in fact does not actually have.

If the statement in question is misleading in context, but literally true or ambiguous, Bimbo Bakeries must prove actual consumer confusion.  Consumer confusion may be shown by direct evidence, such as a diversion of sales or direct testimony from witnesses at trial, or by circumstantial evidence, such as consumer surveys.

INSTRUCTION NO. 43

MATERIALITY

In the context of a false advertising claim, "materiality" means that the false or misleading statement is likely to influence the purchasing decision of a customer.

If you find that USB's advertisements were literally false, you are to presume that USB's representations are material for those statements only, unless USB rebuts the presumption. For statements that are not literally false but are misleading in context and result in consumer confusion, there is no such presumption of materiality.

INSTRUCTION NO. 44

DAMAGES FOR FALSE ADVERTISING

If you decide that US Bakery has engaged in false advertising, you must then determine the amount of damages, if any, Bimbo Bakeries is entitled to receive.  The fact that I am instructing you on the subject of damages does not mean that Bimbo Bakeries is or is not entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you if you find Bimbo Bakeries is entitled to recover damages for false advertising.

You must separately consider whether damages, if any, resulted from the "Freshly Baked in Utah" shelf-liners or the "Fresh. Local. Quality." tagline.

Bimbo Bakeries has the burden of establishing the amount of actual damages, if any, that it suffered. Damages must be determined with reasonable certainty from the evidence presented. Mathematical precision need not be shown, but you are not to guess or speculate as to damages.

You may only award an amount that would fairly compensate Bimbo Bakeries for damages proximately caused by US Bakery's false advertising. This may include profits Bimbo Bakeries lost as a result of the false advertising. Instruction No. 36 guides you in calculating profits. Bimbo Bakeries has the burden of proving what its profits would have been absent the false advertising.

INSTRUCTION NO. 45

DAMAGES FOR FALSE ADVERTISING – US BAKERY'S PROFITS

In addition to actual damages, Bimbo Bakeries may be entitled to any profits earned by US Bakery that are attributable to the false advertising.  However, you may not include in any award of US Bakery's profits any amount of Bimbo Bakeries' lost profits that you included in determining actual damages.

Bimbo Bakeries must show either actual damages or willful action on the part of US Bakery before it may recover US Bakery's profits attributable to the false advertising. Bimbo Bakeries is not required to show an exact dollar amount of actual damages to obtain US Bakery's profits, so long as it shows it was injured in some way.

Instruction No. 36 guides you in calculating profits. Bimbo Bakeries has the burden of proving US Bakery's gross revenue from false advertising. US Bakery has the burden of proving any deductible expenses.

INSTRUCTION NO. 46

FALSE ADVERTISING—WILLFULNESS

Bimbo Bakeries also claims that US Bakery's false advertising was willful.  US Bakery denies that claim.

A defendant commits "willful" false advertising when that defendant knowingly and purposefully made the statements constituting false advertising, or when the defendant reasonably should have known that the statements constituted false advertising.

INSTRUCTION NO. 47

The fact that I have instructed you on damages does not mean that I am indicating that you should award any damages—that is entirely for you, the Jury, to decide.

Bimbo Bakeries bears the burden of proving by a preponderance of the evidence that it not only suffered damages but the amount of damages as well.

When you deliberate, do not flip a coin, speculate or choose one juror's opinions at random.  Evaluate the evidence and come to a decision that is supported by the evidence.

If you decide that Bimbo Bakeries is entitled to recover damages, you must then agree upon the amount of money to award.  Each of you should state your own independent judgment on what the amount should be.  You must thoughtfully consider the amounts suggested, evaluate them according to these instructions and the evidence, and reach an agreement on the amount.  You must not agree in advance to average the estimates.

INSTRUCTION NO. 48

Damages must be reasonable. You are not permitted to award speculative damages, which means compensation for a detriment which, although possible, is remote, or conjectural.

Damages that you award must be fair and reasonable, neither inadequate nor excessive. You should not award compensatory damages for speculative injuries, but only for those injuries that the Plaintiff has actually suffered or for which it is reasonably likely to suffer in the near future.

In awarding compensatory damages, if you decide to award them, you must be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require a plaintiff to prove the amount of its losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

INSTRUCTION NO. 49

You may not include in any award to Bimbo Bakeries, any sum for the purpose of punishing the defendants, to make an example of them for the public good, or to prevent other incidents.

INSTRUCTION NO. 50

Upon retiring to the jury room you must elect one of your members to act as your foreperson.  The foreperson will preside over your deliberations and will be your spokesperson here in court.

The verdict must represent the collective judgment of the Jury.  Each juror must agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors for the mere purpose of returning a unanimous verdict.

Remember at all times, you are not partisans.  You are judges—judges of the facts.  Your sole interest is to seek the truth from the evidence

Your verdict must be based solely upon the evidence received.  Nothing you have seen or read outside of court may be considered.  Nothing that I have said or done during the course of this trial is intended in any way to somehow suggest to you what I think your verdict should be. Nothing said in these instructions and nothing in any form of verdict prepared for your convenience is to suggest or convey to you in any way or manner any intimation as to what verdict I think you should return.  What the verdict shall be is the exclusive duty and responsibility of the Jury.  As I have told you many times, you are the sole judges of the facts.

I have prepared a verdict form for your convenience.  You are instructed that your

answers to the interrogatories on the verdict form must be consistent with the instructions I have given you and with each other.

When you have reached a unanimous agreement as to your verdict, your foreperson will fill in, date and sign the verdict form upon which you have unanimously agreed.  When you have reached unanimous agreement as to your verdict, the foreperson shall inform the court security officer and you shall return to the courtroom with the verdict form.

If it becomes necessary during your deliberations to communicate with the court, you may send a note by the court security officer signed by your foreperson, or by one or more members of the jury.  No member of the jury should attempt to communicate with the court by any means other than a signed writing, and the court will never communicate with any member of the jury on any subject touching the merits of the case, other than in writing or orally here in open court.

But bear in mind that you are not to reveal to me or to any person how the jury stands, numerically or otherwise, on the question before you, until after you have reached a unanimous agreement.

You will note from the oath about to be taken by the court security officer that he, as well as all other persons, is forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

INSTRUCTION NO. 51

These original instructions will accompany you to the jury room.  Do not write on the original instructions.  Write only on the original verdict form.  Do not concern yourselves with the numbering of the instructions, their sequence, or any gap in numbering.  Instructions are numbered only for clerical convenience while the court prepares the instructions.

INSTRUCTION NO. 52

The attitude and conduct of jurors at the outset of their deliberations are matters of considerable importance.  It is rarely productive or good for a juror, upon entering the jury room, to make an emphatic expression of opinion on the case or to announce a determination to stand for a certain verdict.  When one does that at the outset, a sense of pride may be aroused, and the juror may hesitate to recede from an announced position if shown that it is wrong.

INSTRUCTION NO. 53

During your deliberations, you are able as a group to set your own schedule for deliberations.  You may deliberate as late as you wish or recess at an appropriate time set by yourselves.  You may set your own schedule for lunch and dinner breaks.

However, I do ask that you notify the court by a note when you plan to recess for the evening and when you intend to reconvene in the morning.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BIMBO BAKERIES USA, INC.,<br><br>                             Plaintiff,<br>v.<br><br>LELAND SYCAMORE, TYLER SYCAMORE, WILD GRAINS BAKERY, LLC, AND UNITED STATES BAKERY,<br><br>                        Defendants. | **SPECIAL VERDICT**<br><br>Case No. 2:13-cv-00749-DN-DBP<br><br>District Judge David Nuffer |

MEMBERS OF THE JURY:

When filling out this Special Verdict form, please follow the directions provided throughout the form. Read the questions and directions carefully. They explain the sequence in which the questions should be answered.

**Your answer to each question must be unanimous.**

**Except where indicated, your findings are by a preponderance of the evidence.** [Awaiting briefing and decision.]

Some of the questions contain legal terms that are defined and explained in the Jury Instructions. Please refer to the Jury Instructions if you are unsure about the meaning or usage of any legal term that appears in the questions.

**FALSE ADVERTISING**

1. **Has US Bakery engaged in false advertising by using the words "Fresh. Local. Quality" or by using the words "Freshly Baked in Utah" in connection with the advertising or promotion of its products?**

   Answer "Yes" or "No" _____

   If your answer is "Yes," then go to Questions No. 2 and 3. If your answer is "No," then continue to the questions under "Trade Secret Misappropriation."

2. **If you answered "Yes" to Question No. 1, what amount of actual damages did Bimbo Bakeries suffer as a result of the false advertising?**

   Amount _____

3. **If you answered 'Yes" to Question No. 1, do you find that US Bakery's false advertising was willful?**
   Answer "Yes" or "No" _____

   If your answered "No" to Question No. 2 and to Question No. 3, then continue to the questions under "Trade Secret Misappropriation." If you answered "Yes" to either Question No. 2 or Question No. 3, then go to Question No. 4.

4. **If you answered "Yes" to either Question No. 2 or Question No. 3, what amount of profits did US Bakery receive as a result of its false advertising?**

   Amount _____

Continue on to answer the questions under Trade Secret Misappropriation.

**TRADE SECRET MISAPPROPRIATION**

1. **Does Bimbo Bakeries have a protectable trade secret?**

   Answer "Yes" or "No" _____

   If your answer is "Yes," then go to Question 2.  If you answered "No," go to the Certification at the end of this form and have the foreperson sign and date this form.

2. **Have the defendants misappropriated a trade secret of Bimbo Bakeries?**

   Answer as to each of the defendants:

   **UNITED STATES BAKERY**

   Answer "Yes" or "No" _____

   **LELAND SYCAMORE**

   Answer "Yes" or "No" _____

2

**TYLER SYCAMORE**

Answer "Yes" or "No" _____

**WILD GRAINS BAKERY, LLC**

Answer "Yes" or "No" _____

If your answer is "Yes" for any defendant, then go to Questions Nos. 3 and 4. If you answered "No" for all defendants, go to the Certification at the end of this form and have the foreperson sign and date this form.

3. **For each defendant to which you answered "Yes" in Question No. 2, what amount of damages do you award?**

   Answer as to each of the defendants:

   **UNITED STATES BAKERY**

   Amount _____

   **LELAND SYCAMORE**

   Amount _____

   **TYLER SYCAMORE**

   Amount _____

   **WILD GRAINS BAKERY, LLC**

   Amount _____

4. **For each defendant to which you answered "Yes" in Question No. 2, do you find <mark>by clear and convincing evidence</mark> [awaiting briefing and decision] that the trade secret misappropriation was willful?**

   Answer as to each of the defendants:

   **UNITED STATES BAKERY**

   Answer "Yes" or "No" _____

   **LELAND SYCAMORE**

   Answer "Yes" or "No" _____

3

**TYLER SYCAMORE**

Answer "Yes" or "No" _____

**WILD GRAINS BAKERY, LLC**

Answer "Yes" or "No" _____

After you have completed the questions as directed above, the Jury Foreperson is to date and sign this Special Verdict Form on behalf of the jury and notify the Court Security Officer that you have reached a verdict.

**CERTIFICATION**

We, the jury, unanimously agree to the answers to the foregoing questions and return this form as our verdict in this case.

***The verdict is not final until accepted by the court.***

DATED this _____ of October 2017.

_____
Jury Foreperson

4