RAYMOND J. ETCHEVERRY (1010)
MARGARET NIVER MCGANN (7951)
JULIETTE P. WHITE (9616)
PARSONS BEHLE & LATIMER
One Utah Center
201 South Main Street, Suite 1800
Salt Lake City, UT  84111
Telephone:  (801) 532-1234
Facsimile:   (801) 536-6111

CHARLES A. BURKE (Admitted *pro hac vice)*
DAVID R. BOAZ (Admitted *pro hac vice*)
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
555 Fayetteville St., Suite 1100
Raleigh, NC 27601
Telephone:  (336) 721-3625
Facsimile:   (336) 733-8416

*Attorneys for Plaintiff Bimbo Bakeries USA, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BIMBO BAKERIES USA, INC.,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>LELAND SYCAMORE, TYLER SYCAMORE, WILD GRAINS BAKERY LLC, and UNITED STATES BAKERY, INC.,<br><br>　　　　　　　　Defendants. | **PRETRIAL ORDER**<br><br>Case No. 2:13-cv-00749-DN-DBP<br><br>District Judge David Nuffer |

　　　　This matter came before the court on September 5, 2017 at a pretrial conference held before the Honorable David Nuffer, pursuant to Federal Rules of Civil Procedure, Rule 16. Juliette White and Charles Burke, appeared as counsel for plaintiff Bimbo Bakeries USA, Inc.; Steven Wilker, Christopher Hill, and Christopher Pallanch appeared as counsel for defendant United States Bakery, LLC; Andrew Deiss and Diana Bradley appeared as counsel for

defendants Tyler Sycamore and Wild Grains Bakery, LLC; and Sean Egan appeared as counsel for defendant Leland Sycamore. The following action was taken:

1.  JURISDICTION. This is an action for Trade Secret Misappropriation under the Utah Uniform Trade Secrets Act and False Advertising and Unfair Competition under the Lanham Act. Jurisdiction of the court is invoked under 28 U.S.C. §§ 1331, 1332, & 1367. The jurisdiction of the court is not disputed and is hereby determined to be present.

VENUE. Venue was determined by the court to be proper pursuant to 28 U.S.C. § 1391. Venue is laid in the Central Division of the District of Utah.

2.  GENERAL NATURE OF THE CLAIMS OF THE PARTIES
    (a)  Plaintiff's claims:

**False Advertising**

Plaintiff Bimbo Bakeries USA, Inc. ("Bimbo Bakeries") seeks to recover money damages and injunctive relief from Defendant U.S. Bakery, Inc. ("U.S. Bakery") arising from U.S. Bakery's use of the "Fresh. Local. Quality." ("FLQ") tagline and "Freshly Baked in Utah." Specifically, Bimbo Bakeries claims that the following constitute false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a): (1) U.S. Bakery's use of the word "local," in connection with the sale of its bakery products in states other than where the products were made; and (2) U.S. Bakery's use of the term "Freshly Baked in Utah" in connection with products not made in Utah. U.S. Bakery used the FLQ tagline on a variety of media in commerce in connection with sales of dozens of bakery products in multiple states, including on delivery trucks, online, packaging, and point of sale displays. Further, Bimbo Bakeries claims U.S. Bakery used "Freshly Baked in Utah" on bread packaging and point of sale displays in connection with sales of bakery products in numerous stores in Utah.

Bimbo Bakeries will argue that the U.S. Bakery's advertising is literally false. However,

Bimbo Bakeries will also that show through consumer confusion surveys that even the advertising was not literally false, consumers were in fact confused by the advertising. To prove literal falsity of the U.S. Bakery's advertising, Bimbo Bakeries will show that U.S. Bakery's products were neither "Freshly Baked in Utah" nor "local." The "Freshly Baked in Utah" advertising is literally false because the products at issue were not baked in Utah. The use of "local" in the FLQ tagline is literally false because the products at issue were not baked in the same state in which they were sold. Products not produced in the state in which they were sold traveled the following average distances: 1506 miles to Alaska, 716 miles to California, 468 miles to Idaho, 556 miles to Montana, 302 miles to Oregon, 675 miles to Utah, 248 miles to Washington, and 852 miles to Wyoming. The total average distance traveled from the place of production to a different state for sale was approximately 665 miles.

In addition, Bimbo Bakeries will present extrinsic evidence showing that even if the use of "local" in the FLQ tagline was not literally false, it was impliedly false because it had the tendency to mislead or deceive consumers about the characteristics of the products with which U.S. Bakery used the advertising. Bimbo Bakeries will present consumer confusion surveys through its expert, Dr. Glenn Christensen, that show even if these advertisement were not literally false, consumers were nevertheless mislead or deceived as to the "local" characteristics of the bakery products at issue.

Regarding materiality, Bimbo Bakeries will show that U.S. Bakery's false and misleading statements are likely to influence the purchasing decisions of consumers of the products associated with the false advertising. If the jury finds that the use of "local" in the FLQ tagline and/or "Freshly Baked in Utah" was literally false, then there is a presumption of materiality.

Bimbo Bakeries will further present evidence that the use of "local" was material through survey evidence from Dr. Christensen showing that respondents stated that it would influence purchasing decisions. Finally, the evidence will show that U.S. Bakery's use of "local" in the FLQ tagline and "Freshly Baked in Utah" are likely to cause confusion or mistake as to the origin of U.S. Bakery's products—that they did not come from a local source because and were not baked in Utah. The advertisements also have a tendency to mislead or cause confusion as to the characteristics of the products—they are not "local," and they were not baked fresh in Utah.

**Trade Secret Misappropriation**

Bimbo Bakeries seeks monetary damages and injunctive relief for all four of the Defendants' misappropriation of Bimbo Bakeries' trade secret recipe and process for producing Grandma Sycamore's Home-Maid Bread. Bimbo Bakeries' trade secret is a compilation of four elements – two unique ingredients and two proprietary production steps – the combination of which is critical to the look, taste, and feel of Grandma Sycamore's and its position as the leading brand of bread sold in Utah. Leland invented the recipe and process – including the combination of the trade secret – in 1979. Enjoying immense success and a "cult-like" following, he sold the rights to the trade secret, among other items, to Bimbo Bakeries' predecessor for $9.5 million in 1998. Bimbo Bakeries has taken reasonable steps to maintain the secrecy of the trade secret, including by limiting access to and securing the facility where the bread is made, requiring visitors to sign confidentiality agreements, requiring employees to sign confidentiality and nondisclosure agreements, and limiting employees' access to the trade secret on a need-to-know basis.

In violation of his promises, Leland, while working at Sycamore Family Bakery, and later

4

at Wild Grains, disclosed the trade secret to Tyler, Jeremy Faull, and Wild Grains.  Leland also used the trade secret while at Wild Grains to produce Grandma Emilie's for U.S. Bakery.  Tyler worked in his father's bakery and learned the Grandma Sycamore's trade secret for producing the bread.  Tyler and Wild Grains used and disclosed the trade secret in producing Grandma Emilie's bread for U.S. Bakery.  U.S. Bakery acquired the trade secret from Jeremy Faull, who received it from Leland in violation of Leland's confidentiality obligations while Faull worked for Sycamore Family Bakery.  Faull knew or should have known that he had a duty not to acquire or use the trade secret by virtue of Leland's obligations.  Faull knew or should have known that he had a duty to keep the trade secret confidential but wrongfully disclosed it to U.S. Bakery.  U.S. Bakery knew or should have known that Faull acquired the trade secret by improper means or under a duty to keep the trade secret confidential.  U.S. Bakery knew or should have known that the information Faull gave them was a trade secret but used and disclosed it anyway to produce Grandma Emilie's and BreadLover's.

      (b)    Defendant's claims:

**United States Bakery**

United States Bakery denies the allegations of Bimbo Bakeries and disputes the characterization of the facts set forth above.  With respect to the trade secret claim, the purported "combination" of the two purportedly unique ingredients and the two purportedly proprietary processes are in fact not secret, alone or in combination.  The information is all known or ascertainable by people in the commercial baking industry.  Moreover, contrary to Bimbo Bakeries' assertion, Jeremy Faull did not have any obligation to Leland Sycamore or Bimbo Bakeries not to share his knowledge and experience in the industry and, in any event, did not disclose to U.S. Bakery the allegedly unique combination of information that Bimbo Bakeries

5

claims is a secret. Accordingly, even if there could be a trade secret (and there is not), U.S. Bakery has not "misappropriated" the trade secret.

With respect to the false advertising claim, U.S. Bakery disputes that it used its "Fresh. Local. Quality" tagline in connection with individual products; rather, the tagline was a company tagline that always used the three words – fresh, local, quality—together. Accordingly, it is improper to try to focus solely on the word "local" in isolation or in connection with a single product. In all events, the word "local" is not subject to a true-false determination and cannot be literally false, and Bimbo Bakeries' survey is not scientifically reliable and does not support its claim for consumer confusion.

The "Freshly Baked in Utah" shelf-liners and stickers were used for a period of approximately six months in connection with products that were baked in Utah. When U.S. Bakery ceased operating its bakery in Utah, it stopped using those shelf-liners and stickers. A Bimbo Bakeries employee found one instance in which a "Freshly Baked in Utah" shelf-liner was seen below products that were not made in Utah. There is no evidence, however, about how that product came to be shelved over that shelf-liner. There are a number of ways that that could have occurred. The shelf-liner could have been underneath a subsequent shelf-liner that then got removed; the product could have been moved by a store employee or an employee of another bread supplier to the store after its initial placement on the shelf; or Bimbo Bakeries could have moved the product in order to take a photograph. There is no evidence that U.S. Bakery placed non-Utah produced products over "Freshly Baked in Utah" shelf-liners. Moreover, Bimbo Bakeries has no survey evidence of any consumer confusion with respect to the shelf-liners and will be unable to prove that any consumer actually was confused by the shelf-liner.

**Tyler Sycamore and Wild Grains Bakery**

Tyler Sycamore and Wild Grains Bakery deny the allegations of Bimbo Bakeries and disputes the characterization of the facts set forth in section (a) above. Tyler Sycamore and Wild Grains dispute that the four components identified by Bimbo Bakeries as the process and formula for baking Grandma Sycamores constitute a legally protectable trade secret because each component is in the public domain and combining the components is readily ascertainable. Further, even if the four elements could qualify as a trade secret, it is not worthy of protection because Bimbo failed to take reasonable steps to maintain its secrecy. Tyler Sycamore and Wild Grains further dispute that either was under any obligation to maintain the secrecy of the alleged secret. Tyler Sycamore and Wild Grains dispute either used or disclosed the alleged trade secret. Further, Tyler Sycamore further disputes that he, as an individual, produced bread for U.S. Bakery. Finally, Bimbo Bakeries has failed to attribute any of its damages to Tyler Sycamore or Wild Grains nor has it identified any unjust enrichment to Tyler Sycamore.

**Leland Sycamore**

Leland denies the allegations of Bimbo Bakeries against him and disputes the characterization of the facts set forth above. Specifically, Leland disputes that he had a specific duty to maintain the confidentiality of the recipe for Grandma Sycamore's Home-Maid Bread because the recipe was widely known. In addition, Leland was not involved in the operation of Wild Grains Bakery and none of the damages claimed by Bimbo Bakeries are attributable to any act of Leland. Leland expressly joins in all other defenses asserted by the other defendants as may be applicable.

      (c)    All other parties' claims: **N/A**

(d)     Statement of the Case:

This case involves Bimbo Bakeries' claims against US Bakery for false advertising. This case additionally involves Bimbo Bakeries' claims against US Bakery, Leland Sycamore, Tyler Sycamore, and Wild Grains Bakery for trade secret misappropriation.

Bimbo Bakeries claims that US Bakery is liable for false advertising and unfair competition based on (1) US Bakery's use of a company tagline saying "Fresh. Local. Quality."; and (2) US Bakery's use of the term "Freshly Baked in Utah." US Bakery denies that its use of the "Fresh. Local. Quality." tagline was false or misleading under the law. US Bakery denies that it used "Freshly Baked in Utah" in connection with products that were not freshly baked in Utah and denies that its use of "Freshly Baked in Utah" was false or misleading under the law.

Bimbo Bakeries also alleges the defendants have misappropriated a trade secret related to the recipe and process for making Grandma Sycamore's Home-Maid Bread. Bimbo Bakeries contends that its trade secret is a compilation of four components—two ingredients and two production steps. All of the defendants deny that the four components involved in producing Grandma Sycamores constitute a legally protectable trade secret. Bimbo Bakeries claims that Leland, Tyler, and Wild Grains produced a brand of bread called Grandma Emilie's for US Bakery and unlawfully acquired, used, and disclosed the alleged trade secret. Tyler Sycamore denies he produced bread for US Bakery. Tyler Sycamore and Wild Grains Bakery deny they wrongfully acquired, used, or disclosed the alleged trade secret. Bimbo Bakeries alleges that US Bakery wrongfully acquired, disclosed, and used the trade secret by making and selling Grandma Emilie's, as well as another brand of bread named BreadLover's. US Bakery denies that it wrongfully acquired, used, or disclosed any supposed trade secret.

3.     UNCONTROVERTED FACTS.  The following facts are established by admissions in the pleadings, by order pursuant to Fed. R. Civ. P. 56(d), or by stipulation of counsel:  *Briefly set forth, including admitted jurisdictional facts and all other material facts that are not at issue.*

The parties agree that there are no issues with jurisdiction or venue in dispute, meaning that it has been determined that all of the parties and claims are properly before this court.

4.     CONTESTED ISSUES OF FACT.  The contested issues of fact remaining for decision are:  *Briefly set forth each contested issue.*

**Trade Secret Misappropriation**
- Whether Bimbo Bakeries' claimed trade secret is sufficiently defined or otherwise entitled to protection.
- Whether any or all of the defendants misappropriated that trade secret.
- Amount of any unjust gains realized by any or all of the defendants through the misuse of that trade secret.
- Amount of any financial damage suffered by Bimbo Bakeries through the defendants' misuse of that trade secret.

**False Advertising**
- Whether any of U.S. Bakery's advertisements were, or were capable of being, literally false.
- Whether any of U.S. Bakery's advertisements were materially misleading, likely to cause confusion amongst consumers, or did cause confusion amongst consumers.
- Amount of unjust enrichment, if any, gained by U.S. Bakery through its false or deceptive advertising.
- Amount of financial damages, if any, suffered by Bimbo Bakeries from U.S. Bakery's use of false or misleading advertising.

5. CONTESTED ISSUES OF LAW. The contested issues of law, in addition to those implicit in the foregoing issues of fact, are: *Either set forth each issue or indicate that no special issues of law other than those implicit in the foregoing issues of fact were reserved.*

There are no special issues of law other than those implicit in the foregoing issues of fact, which the parties expressly reserve the right to contest at trial and on any appeal.

6. WITNESSES.
   (a) In the absence of reasonable notice to opposing counsel to the contrary:
   (i) plaintiff <u>will</u> call as witnesses:
   - Christopher Smith
   - Joseph Robinson
   - Randee Muhlestein
   - Richard Hoffman
   - Russell C. Hoseney, Ph.D.
   - Glenn Christensen, Ph.D.
   (ii) plaintiff <u>may</u> call as witnesses:
   - Sarah Dunn
   - Kara Reddy
   - Jeremy Faull
   - Tyler Sycamore
   - Leland Sycamore
   - Michael Petitt
   - Marc Albers
   - Todd Cornwell
   - Robert Robinson
   - Aaron Whalen
   - Jessica Larson
   - Ken Waltos
   - Himanshu Mishra

10

- Larry Soter
- Shawn Boten
- Gil Miller
- Merrill Norman

(iii) plaintiff will use the following depositions:

- Jeremy Faull, taken January 14, 2014 in the contempt proceedings in Case No. 2:09-cv-523 and December 1, 2015 in this case.
- Marc Albers, taken January 14, 2014 in the contempt proceedings in Case No. 2:09-cv-523 and May 18, 2015 in this case.
- Shawn Boten, taken October 7, 2015.
- Jessica Larson, taken April 29, 2015.
- Ken Waltos, taken September 15, 2015.

(b) **United States Bakery, Inc.**: In the absence of reasonable notice to opposing counsel to the contrary:

(i) U.S. Bakery will call as witnesses:

- Robert Robinson
- Aaron Whalen
- Todd Cornwell
- Mike Petitt
- Jeremy Faull
- Larry Soter
- Himanshu Mishra
- Gil. A Miller

(ii) U.S. Bakery may call as witnesses:

- Christopher Tyler Sycamore
- Leland Sycamore
- Jessica Larson (if available)
- Ken Waltos

11

- Shawn Boten

(iii) U.S. Bakery will use the following depositions:

- Marc Albers, taken January 14, 2014 in connection with the contempt proceedings in Case No. 2:09-cv-523 and May 18, 2015 in this case
- Jessica Larson, taken April 29, 2015, in this case (if she is not available to testify).
- Jeremy Faull, taken December 1, 2015, in this case.

(c) **Tyler Sycamore & Wild Grains Bakery, LLC**: In the absence of reasonable notice to opposing counsel to the contrary:

(i) Tyler Sycamore and Wild Grains <u>will</u> call as witnesses:

- Tyler Sycamore
- Jeremy Faull
- Merrill Norman

(ii) Tyler Sycamore and Wild Grains <u>may</u> call as witnesses:

- Leland Sycamore
- Marc Albers
- Ken Waltos
- Todd Cornwell
- Robert Robinson
- Aaron Whalen
- Jessica Larson
- Michael Petitt
- Christopher Smith
- Joseph Robinson
- Kara Reddy
- Randee Muhlstein
- Himanshu Mishra

- Larry Soter
- Gil Miller
- Russell Carl Hoseney
- Shawn Boten
- Richard Hoffman
- Glenn Christensen
- Justin Erickson
- Tam Huyn
- Javier Rodriguez
- Dagoberto Zendejas
- Kim Colindres
- Ashley Rodriguez
- Andrew Lyon
- Jose Munoz
- Ken Rosand
- Shawn Bentley
- Anna Reyes
- William Beifuss
- Megan Murri

(d) **Leland Sycamore**: In the absence of reasonable notice to opposing counsel to the contrary:

    (i)    defendant <u>will</u> call as witnesses:

- Leland Sycamore;
- Tyler Sycamore;
- Jeremy Faull; and
- Joseph Robinson.

13

(e) In the event that witnesses other than those listed are to be called to testify at the trial, a statement of their names, addresses, and the general subject matter of their testimony will be served upon opposing counsel and filed with the court at least seven (7) business days prior to trial. This restriction shall not apply to rebuttal witnesses whose testimony, where required, cannot reasonably be anticipated before the time of trial.

7. REQUESTS FOR INSTRUCTIONS. The parties have submitted requests for jury instructions and supplemental juror questionnaires to the Court. Counsel may supplement requested instructions during trial on matters that could not reasonably be anticipated prior to trial.

8. AMENDMENTS TO PLEADINGS

Bimbo Bakeries filed a motion to amend its Complaint on November 17, 2014. Dkt. No. 29. The Court granted the motion to amend on December 15, 2014, and Bimbo Bakeries filed the Amended Complaint the same day.

9. DISCOVERY. Discovery has been completed.

10. TRIAL SETTING. *Complete either a. or b.*

a. The case was set for a jury trial beginning on September 25, 2017 at 8:00 am at Salt Lake City. Estimated length of trial is ten (10) days.

12. POSSIBILITY OF SETTLEMENT. Possibility of settlement is considered low.

The foregoing proposed (prior to execution) pretrial order is hereby APPROVED, ADOPTED, and ORDERED.

Dated September 21, 2017.

BY THE COURT:

_____
David Nuffer
United States District Judge